IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

_____
                                       )
Fluxo-Cane Overseas Ltd.,              )
                                       )
                  Plaintiff,           )
     v.                                )
                                       )   Case No. 08-cv-356 (WDQ)
E.D. & F. Man Sugar Inc., et al.,      )
                                       )
                  Defendants.          )
_____)

**FLUXO-CANE OVERSEAS LTD.'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Plaintiff Fluxo-Cane Overseas Ltd. ("Fluxo-Cane") respectfully submits that the material facts of this matter are not in dispute and that Fluxo-Cane is entitled to judgment as a matter of law. Fluxo-Cane agreed to sell a cargo of raw sugar (the "Cargo") to Defendant E.D. & F. Man Sugar Inc. ("Man Sugar"), with payment expressly stated to be "cash against presentation of original shipping documents." The agreement further incorporated terms providing for the termination of the contract in the event of a payment default. Fluxo-Cane delivered the Cargo and the shipping documents as agreed, but Man Sugar failed to pay, and upon termination of the contract, failed to return the Cargo or the shipping documents.

Although Man Sugar did not dispute its obligation to make payment for the Cargo, it sent an e-mail claiming that Fluxo-Cane was indebted to an affiliated but legally separate entity, E.D.&F. Man Commodity Advisors Limited ("MCA"), that MCA had "equitably assigned" to Man Sugar a part of that alleged "debt," and that Man Sugar "hereby set-off our Contractual Indebtedness" by such assignment.

Man Sugar's purported "set-off" was not permitted by the contract and was contrary to law. When Man Sugar failed to pay cash for the Cargo, it defaulted under its contract; when it failed to return the Cargo, Man Sugar tortiously converted the Cargo. Accordingly, Plaintiff asks this Court to grant summary judgment against Defendant Man Sugar.

## I.  UNDISPUTED MATERIAL FACTS

1. Man Sugar contacted Fluxo-Cane via e-mail on or about January 5, 2008 with a firm offer to purchase approximately 26,000 metric tons of raw sugar. Affidavit of Jose Luiz P. Cipriani ¶ 6 & Ex. 3; Answer ¶ 9.

2. In response to that firm offer from Man Sugar, Fluxo-Cane offered to supply the requested sugar in the amount of 23,428.91 metric tons. Cipriani Aff. ¶ 8 & Ex. 4.

3. Man Sugar sent a "business confirmation" dated January 7, 2008 to Fluxo-Cane for the purchase of 23,428.91 metric tons of sugar. *Id.* ¶ 9 & Ex. 5. That "business confirmation" stated as follows:  "PAYMENT: 100 pct shall be paid cash against presentation of the original shipping documents in Miami in the offices of E.D. & F. Man Sugar Inc." [sic] *Id.*

4. Responding to Man Sugar's requests for Fluxo-Cane to procure additional sugar, Fluxo-Cane increased its shipment for Man Sugar to 25,209.99 MT. *Id.* ¶ 10 & Ex. 6 & 7.

5. Man Sugar subsequently signed and sent to Fluxo-Cane a document entitled Purchase Contract No. P01688.000 dated January 7, 2008 as amended January 11, 2008 (which by administrative error of Man Sugar appears in the contract under its prior name of Cane International Corp., Ltd.) for Man Sugar's purchase of 25,209.99 metric tons of sugar for delivery at Baltimore, Maryland. *Id.* ¶ 11 & Ex. 8 (hereinafter the "Purchase Contract"); Answer ¶ 11.

6. The Purchase Contract stated that it was "subject to the rules of Domino Terms as if the same has been expressly inserted herein." Ex. 8.

7. The Payments clause of the Domino Terms states that "pro forma payment for the sugar shall be made to Seller . . . in New York in New York funds on the tenth day . . . following the day of arrival of vessel." Cipriani Aff. ¶ 14 & Ex. 10. However, the Domino Terms also provide that they are "general contract provisions" with regard to several terms, including price and payment. *Id*. ¶ 14 & Ex. 10.

8. In accordance with Man Sugar's initial "firm offer" and "business confirmation," Purchase Contract No. P01688.000 included an express "Payments" provision that set express payment terms for Fluxo-Cane's delivery of sugar to Man Sugar, requiring that payment be "Cash against presentation of original shipping documents." *Id.* ¶ 15 & Ex. 8.

9. As set out in the ICE Futures U.S., Inc. Sugar No. 14 Rules, and the Sugar Association of London Rules & Regulations, payments in conjunction with the purchase of raw sugar are most generally made without any set-off or deduction. *Id.* ¶¶ 16, 17 & Ex. 1, 9.

10. On or about January 26, 2008, the M/V TINA LITRICO completed loading the Cargo at Maceio, Brazil, at which time the vessel sailed for Baltimore with the Cargo on board. *Id.* ¶ 19 & Ex. 13.

11. On or about January 28, 2008, Fluxo-Cane issued to Man Sugar Commercial Invoice No. 319/08 in accordance with the Purchase Contract, requiring Man Sugar to pay the amount of $6,135,867.28 in partial payment for the Cargo, with the final total to be settled after quality and quantity results to be determined following discharge. *Id.* ¶ 19 & Ex. 14; Answer ¶ 17.

12. On January 30, 2008, Fluxo-Cane sent the original shipping documents (bills of lading) for the Cargo to Man Sugar by overnight World Courier, which original shipping documents were delivered to Man Sugar's Miami office on January 31, 2008. Cipriani Aff. ¶ 20 & Ex. 15; Answer ¶¶ 18 & 19.

13. On February 1, 2008, Fluxo-Cane sent three e-mail requests to Man Sugar requesting that Man Sugar confirm receipt of the documents and payment of the amount due for the Cargo. Cipriani Aff. ¶ 21 & Ex. 15; Answer ¶ 20.

14. On February 1, 2008, Ms. Elizabeth Alper of Man Sugar responded to Fluxo-Cane stating that "I have submitted payment to London. I am doing everything I can to get this paid today, but I have to wait for their approval as all of our Treasury functions are handled by our London office. I will advise as soon as I get confirmation." Cipriani Aff. ¶ 21 & Ex. 15.

15. On February 4, 2008, Fluxo-Cane sent an e-mail to Ms. Alper requesting information concerning the swift number for the payment to permit Fluxo-Cane to trace the missing payment. *Id.* ¶ 21 & Ex. 15. Ms. Alper responded by e-mail, apologizing for the delay and promising that she was following up on the payment. *Id.*

16. Later that night, Mr. Carlos E. Machado, Controller of Man Sugar, sent an e-mail dated February 4, 2008 at approximately 8 pm. In that e-mail, Man Sugar acknowledged that it was obligated to make a payment of US$6,013,149.93 (which it identified as its "Contractual Indebtedness"). However, Man Sugar stated that it considered its obligation to pay the Contractual Indebtedness to be discharged due to an alleged debt of Fluxo-Cane to Man Sugar's affiliate MCA having been "equitably assigned" earlier that day by MCA to Fluxo-Cane. *Id.* ¶ 22 & Ex. 16. Man Sugar stated:

> We refer to purchase contract no PO1688.000. [sic] Pursuant to our obligation to make payment to you in the sum of US$6,013,149.93 (our

4

> Contractual Indebtedness) kindly note as follows: As of 4th February you are indebted to ED&F Man Commodity Advisers Limited in the sum of US$41,961,982.07 (the MCA Debt) in respect of unpaid margin. On 4 February 2008 MCA equitably assigned to ED&F Man Sugar Inc [sic] (MSI) part of this debt in the amount of US$6,013,149.14 (Partial Assigned Debt). We hereby give you notice that we hereby set-off our Contractual Indebtedness against the Partial Assigned Debt which discharges our obligation to may any further payment for the shipping documents presented pursuant to purchase contract PO1688.000 [sic].

*Id.*; Answer ¶ 21.

17. In an electronic mail exchange on February 7, 2008, Fluxo-Cane demanded payment or, alternatively, return of the original shipping documents standing for the Cargo. Man Sugar refused to return the bills of lading, reiterating that it had decided to take the Cargo as partial satisfaction of a debt allegedly owed by Fluxo-Cane to Man Sugar's affiliate MCA. Cipriani Aff. ¶ 23 & Ex. 17-18; Answer ¶¶ 24 & 25.

18. Fluxo-Cane has strongly contested the alleged debt to MCA that Man Sugar claims as set-off excusing its obligation to make cash payment under Purchase Contract No. P01688.000. Cipriani Aff. ¶ 24 & Ex. 19.

19. On June 2, 2008, Fluxo-Cane, through its bank, issued a final invoice to Man Sugar for the total amount due and owing with respect to the Cargo. *Id.* ¶ 25 & Ex. 20. The final invoice included the contracted-for final 2%, which according to standard practice had been withheld from the preliminary invoice pending satisfactory testing and measurement of the Cargo at outturn. *Id.* The final amount due for from Man Sugar to Fluxo-Cane as payment for the Cargo under such invoice is $6,597.456,62. *Id.*

## II.     ARGUMENT

### A.     The standards for summary judgment are well-established.

Under Federal Rule of Civil Procedure 56(c), "summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Steiner v. County Comm'rs*, 490 F. Supp. 2d 617, 622 (D. Md. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Further, "a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id*. (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In deciding a summary judgment motion, "the court must view the facts and reasonable inferences drawn therefrom 'in the light most favorable to the party opposing the motion.'" *Id*. (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)). Moreover, the burden on the party opposing the motion is to "produce evidence upon which a reasonable fact finder could rely. The mere existence of a 'scintilla' of evidence is insufficient to preclude summary judgment." *Id*. (citing *Celotex*, 477 U.S. at 317; *Anderson*, 477 U.S. at 252). Disputes regarding irrelevant or unnecessary facts are insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 248.

The United States Supreme Court has encouraged the use of summary judgment to resolve disputes and to simplify issues before trial:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action.

*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### B. Man Sugar's purported set-off of MCA's claim does not satisfy its Contractual Indebtedness.

#### 1. *Man Sugar's purported set-off was not permitted under the plain language of the contract.*

Under the Purchase Contract, Man Sugar was required to pay for the Cargo in cash, upon presentation of the shipping documents associated with the cargo. The Purchase Contract expressly states payment terms as "100 pct shall be paid cash against presentation of the original shipping documents in Miami in the offices of E.D.&F Man Sugar Inc [sic]." Cipriani Aff. ¶ 15 & Ex. 8.

The interpretation of a contract is a matter of law, decided by the court. *Wash. Metro. Area Transit Auth. v. Potomac Inv. Props., Inc.*, 476 F.3d 231, 234 (4th Cir. 2007) (the interpretation of a contract is a question of law); *VKK Corp. v. NFL*, 244 F.3d 114, 129 (2d Cir. 2001) ("Under New York law, the initial interpretation of a contract is a matter of law for the court to decide.").

The law is well-established that unambiguous provisions of a contract must be given their plain and ordinary meaning. *See Lasalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 205 (2d Cir. 2005); *White v. Continental Cas. Co.*, 878 N.E.2d 1019, 1020 (N.Y. 2007). When a court is called upon to interpret the meaning of a contract, "the test is what meaning a reasonably prudent layperson would attach to the term." *7-Eleven, Inc. v. McEvoy*, 300 F. Supp. 2d 352, 360 (D. Md. 2004) (citing *Pacific Indemnity Co. v. Interstate Fire & Casualty*, 488 A.2d 486 (Md. 1985)); s*ee also Wash. Metro. Area Transit Auth. v. Potomac Inv. Props., Inc.*, 476 F.3d 231, 235 (4th Cir. 2007) ("the purpose of contract interpretation is to determine and effectuate the intent of the parties, and the primary source for identifying this intent is the language of the contract itself" (quoting *Gresham v. Lumbermen's Mut. Cas. Co.*, 404 F.3d 253, 260 (4th Cir. 2005)). In short, "[w]here the language of the contract is

unambiguous, its plain meaning will be given effect." *USAA Cas. Ins. Co. v. Mummert*, 213 F. Supp. 2d 538, 541 (D. Md. 2002) (citing *Aetna Cas. & Sur. Co. v. Ins. Comm'r*, 445 A.2d 14 (Md. 1982)).

That the agreement between Man Sugar and Fluxo-Cane required payment in cash is not surprising. The ICE Sugar No. 14 Rules, under which Fluxo-Cane and Man Sugar have previously conducted business, require that payments be made "without any set-off or deduction whatsoever." Cipriani Aff. ¶¶ 5, 16 & Ex. 1. Similarly, the Rules & Regulations of the Sugar Association of London, of which Man Sugar is a member and on whose council a representative of Man Sugar sits, also require that payments be made "without any deduction and/or set-off whatsoever." *Id.* ¶ 17 & Ex. 9. Against that background, the contractual provision that payment be made in "cash against presentation of original shipping documents" is unambiguous, and subject to only one reasonable interpretation: that "cash" means "cash," without set-off or deduction. *See, e.g.*, *Atl. Textiles v. Avondale Inc. (In re Cotton Yarn Antitrust Litig.)*, 505 F.3d 274, 279 (4th Cir. 2007); *Aceros Prefabricados, S.A. v. TradeArbed, Inc.*, 282 F.3d 92, 102 (2d Cir. 2002).

Accordingly, Man Sugar's purported off-set of its agreed Contractual Indebtedness was a default under the Purchase Contract.

### 2. *Man Sugar's purported set-off is not permitted by law.*

Even in the absence of the Purchase Contract's express requirement that payment be made in cash against the presentation of documents, Man Sugar would still lack any basis in law to withhold payment on the basis of an alleged "set-off." Under well-established law, the exercise of a right of set-off is limited to narrow circumstances not present here.

The law requires that debts subjected to set-off must be: (i) mutual and (ii) based on a liquidated claim. *Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138, 149 (2d Cir. 2002). As the Second Circuit

noted, "In setoff, the debts may arise from different transactions, but they must be mutual. Debts are mutual when they are due to and from the same persons in the same capacity." *Id. See also Coppage v. Maryland Thrift Sav. & Loan Co.*, 252 A.2d 869, 877 (Md. 1969) ("for there to be set-off the debts to be off-set must be mutual"). Moreover, a party cannot set-off a mere assertion of a claim; rather, a set-off is only valid if the debt to be set-off is final, due and payable. *Ferguson v. Lion Holding, Inc.*, 312 F. Supp. 2d 484, 503 (S.D.N.Y. 2004) ("Because debts must be due to the claimant for setoff to apply, there is no right to set-off a possible, unliquidated liability against a liquidated claim that is due and payable.") (citing *Willett v. Lincolnshire Mgmt.*, 756 N.Y.S.2d 9, 10 (N.Y. App. Div. 2003)).

The alleged claim of Man Sugar's affiliate MCA against Fluxo-Cane is neither mutual nor liquidated. Man Sugar as buyer of the Cargo owes the purchase price of the Cargo to Fluxo-Cane as seller of the Cargo. However, the claim of Man Sugar's affiliate MCA with which it seeks to set-off that debt is allegedly from Fluxo-Cane as trader-customer to Man Sugar's affiliate MCA as a commodities broker. Plainly, the alleged debts are not to and from the same persons in the same capacity, and therefore the alleged debts cannot be set-off.

Further, the alleged claim of MCA is strongly disputed by Fluxo-Cane. Cipriani Aff. ¶ 24 & Ex. 19. Thus, the alleged claim of MCA against Fluxo-Cane is not liquidated, and therefore cannot serve as the basis for a claim of set-off against the admitted debt of Man Sugar to Fluxo-Cane.

This case presents facts somewhat similar to those in *Willet*. In *Willet*, the defendant LMI, acting as agent for an equity fund, withheld fund distributions due to plaintiff and claimed that the payments would be set-off against obligations owed by plaintiff to LMI. *Willett*, 756 N.Y.S.2d at 10. The court held that:

> LMI's affirmative defense, that it properly withheld the distributions due plaintiff to offset a substantial obligation owed from plaintiff to LMI, was

>properly dismissed. The obligation purportedly owing from plaintiff to LMI is currently being disputed and there is no right to set-off a possible, unliquidated liability against a liquidated claim that is due and payable.

*Id*. (internal citations and quotation omitted).

### C. Man Sugar's failure to pay for the Cargo was a payment default under the Contract.

Man Sugar does not dispute that it owes Fluxo-Cane for the cost of the Cargo. Indeed, in its claim of set-off, Man Sugar referred to the debt as its "Contractual Indebtedness." Cipriani Aff. ¶ 22 & Ex. 16. Because Man Sugar's purported set-off of its Contractual Indebtedness to Fluxo-Cane by the alleged claim of MCA against Fluxo-Cane is not valid under either the Purchase Contract or the law, Man Sugar committed a payment default under the Purchase Contract.

### D. Man Sugar tortiously converted the Cargo.

Under maritime law, the tort of conversion has been defined as "the unlawful and wrongful exercise of dominion, ownership or control over the property of another, to the exclusion of the same rights by the owner." *Goodpasture, Inc. v. M/V Pollux*, 602 F.2d 84, 87 (5th Cir. 1979) (internal quotations and citation omitted). Conversion of goods placed onboard a ship has been found where the buyer under a contract has failed to pay for the goods as agreed under the contract. *Id*. at 85. Similarly, the failure of a party to return goods to a person who becomes entitled to their return also constitutes the tort of conversion under maritime law. *See, e.g., Port Welcome Cruises, Inc. v. S.S. Bay Belle*, 215 F. Supp. 72, 86 (D. Md. 1963) ("That the failure to return property, possession of which was acquired lawfully, when the owner is entitled to its return and makes demand therefor, involves a tortious conversion seems clear").

In this case, there is no dispute that Fluxo-Cane owned the Cargo and agreed to transfer that interest to Man Sugar only pursuant to the contract requiring as consideration Man Sugar's cash

payment of the price set out in the Purchase Contract. Cipriani Aff. ¶¶ 6-11 & Ex. 3-8. In an act of good faith reflecting the long-standing business relationship between the Parties, Fluxo-Cane sent the bills of lading representing the Cargo to Man Sugar, which repeatedly reassured Fluxo-Cane over the ensuing days that it was working to expedite payment for the Cargo. *Id.* ¶¶ 20-21 & Ex. 15. Only then, after Cargo was loaded onto the vessel and shipping documents had been delivered to Man Sugar, did Man Sugar announce its intention to set-off its Contractual Indebtedness by a portion of MCA's alleged claim against Fluxo-Cane. *Id.* ¶ 22 & Ex. 16.

Man Sugar's payment default resulted in the termination of the contract. As a result of that payment default, Fluxo-Cane was entitled to the return of the Cargo or the associated shipping documents, and demanded their return. However, Man Sugar refused to honor those rights of Fluxo-Cane, compelling Fluxo-Cane to exercise its right to assert its *in rem* claim against the Cargo.

## III.   CONCLUSION

This matter presents no genuine dispute of material fact. Man Sugar has acknowledged its Contractual Indebtedness to Fluxo-Cane. Man Sugar's attempt to set-off that Contractual Indebtedness against a non-mutual and unliquidated claim of MCA against Fluxo-Cane is not permitted by the contract or by law. As a result of Man Sugar's payment default, Fluxo-Cane is entitled to the termination of the contract and the return of the Cargo and/or its shipping documents, or the value of the misappropriated Cargo.

Accordingly, Plaintiff Fluxo-Cane respectfully requests that its Motion for Summary Judgment be granted, that this Court order Man Sugar to pay to Fluxo-Cane the full value of the Cargo, plus attorneys' fees, costs and expenses, and grant such further relief as the interests of justice require.

Dated: June 10, 2008

        Respectfully submitted,


        By: /s/_____
        H. Allen Black, III (No. 024542)
        Bryant E. Gardner (*pro hac vice*)
        WINSTON & STRAWN LLP
        1700 K Street, N.W.
        Washington, DC  20006
        hblack@winston.com
        bgardner@winston.com
        (202) 282-5821
        (202) 282-5100 (Facsimile)

        *Counsel for Fluxo-Cane Overseas, Ltd.*

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing Motion and Memorandum In Support of Summary Judgment and Proposed Order were served on this 10th day of June, 2008, on Robert A. Gaumont of DLA Piper, counsel of record for Defendant, by the Court's Electronic Filing System.

_____/s/_____
Bryant E. Gardner