IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| Fluxo-Cane Overseas, Ltd., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 08-CV-0356 (WDQ) |
| ) | |
| E.D. & F. Man Sugar, Inc., ) | |
| ) | |
| Defendant *in personam* ) | |
| ) | |
| and ) | |
| ) | |
| Cargo of 17,727 Metric Tons, More or ) | |
| Less of Raw Sugar Laden on Board the ) | |
| M/V TINA LITRICO and related bills ) | |
| of lading, *in rem* ) | |
| ) | |
| Defendants. ) | |

**MAN SUGAR'S MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR
SUMMARY JUDGMENT AND IN OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT FILED BY FLUXO-CANE**

Defendant ED & F Man Sugar, Inc. ("Man"), through undersigned counsel, submits this memorandum in support of its cross-motion for summary judgment and in opposition to the motion for summary judgment by plaintiff Fluxo-Cane Overseas, Ltd. ("Fluxo-Cane"). Man also submits the declaration of Christian Bouet which explains relevant documents and events. Mr. Bouet is the Chief Operating Officer of ED & F Man Commodity Advisers, Ltd. ("MCA"), a London-based options and futures broker that, like Man, is part of the London-based ED & F Man Holdings Ltd. group of companies that trade in commodities markets around the world. References to exhibits are to those appended to Mr. Bouet's declaration.

## INTRODUCTION

This is a simple case concerning the doctrine of set-off—a well-established doctrine that avoids "the absurdity of making A pay B when B owes A." *See Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995).

Man is a sugar merchant in Miami, Florida. Fluxo-Cane is a sugar merchant in the British Virgin Islands. From time to time Fluxo-Cane has sold to Man raw sugar consignments sourced in Brazil. At all material times, Fluxo-Cane also traded in commodity futures contracts with MCA.

This case arises because Fluxo-Cane owes MCA $22,056,154.62 due to the liquidation of all positions in Fluxo-Cane's futures-trading accounts following its failure to meet MCA's margin calls. To partially satisfy that obligation MCA has equitably assigned to Man a portion of that debt—amounting to $6,611,952.83—so that Man might in turn set-off that debt against the balance of the purchase price ($6,597,456.62) for a shipment of Brazilian sugar that Man bought from Fluxo-Cane under a purchase-and-sale contract dated January 7, 2008.

Under that sale contract Fluxo-Cane in January 2008 delivered to Man approximately 7,500 metric tons of sugar in Recife, Brazil and a further 17,700 metric tons in Maceio, Brazil. The sugar was loaded on the M/V TINA LITRICO, a vessel chartered by Man, which shipped the sugar to Baltimore for sale to a third party. The $6,597,456.62 claimed by Fluxo-Cane represents the final purchase price of the sugar delivered to Man in Maceio.

Fluxo-Cane has moved for summary judgment on its amended complaint claiming that Man cannot set off the debt assigned by MCA against the purchase price owed to Fluxo-Cane under the sugar-sale contract. Man now cross-moves for summary judgment dismissing Fluxo-

Cane's amended complaint because Man's valid set-off precludes Fluxo-Cane's claim for the unpaid price of the sugar.

As we explain, the matter is ripe for summary judgment. MCA has assigned to Man a liquidated debt owed by Fluxo-Cane, that assigned debt exceeds the purchase price claimed by Fluxo-Cane for the sugar sold to Man, and nothing in the sale contract prohibits the common-law set-off right lawfully exercised by Man. The Court should therefore deny Fluxo-Cane's motion and grant Man's cross-motion.

## BACKGROUND

**A.   The MCA Customer Agreement.**

On or about February 1, 2005, MCA entered into a contract with Cane International Corp., Ltd. ("Cane"), the predecessor of Fluxo-Cane (the "Customer Agreement"), under which MCA agreed to act as Cane's options and futures broker. The Customer Agreement notes that the transactions to be executed by MCA on behalf of Cane include, among others, options and futures contracts relating to coffee, cocoa and sugar. *See* Customer Agreement, attached hereto as Exhibit A, at ¶ 5(a).

The Customer Agreement authorizes MCA to set-off any amount that is due or owing by Cane against any amount that MCA may owe Cane "without prior reference" to Cane. Specifically, Section 10.4 of the Customer Agreement (titled "Set Off") states:

> Any amounts owed to [MCA] in connection with this Agreement may be set off against amounts we owe [Cane], without prior reference to [Cane]. We may deduct any funds of [Cane's] held by [MCA] our fees and any other amounts due to [MCA] from [Cane] (whether under this Agreement or otherwise).

Customer Agreement, Ex. A, at § 10.4.

3

The Customer Agreement also authorizes MCA to assign its rights under the Agreement. *See* Customer Agreement, Ex. A, at § 24.8.1 ("Right to Assign"). In the event of assignment, "[t]he obligations under this Agreement bind, and the rights will be enforceable by [Cane] and [MCA] and our respective successors, permitted assigns and personal representatives." *Id.* at § 24.8.2 ("Successors and assigns").

In addition, the Customer Agreement affords MCA the right to margin and, if Cane is unable to pay the required margin, to elect among several default remedies, including liquidating Cane's brokerage accounts. Customer Agreement, Ex. A, at §§ 14, 16, 17. Specifically, Cane must pay MCA "on demand ... such sums of money by way of deposit or initial margin or margin or maintenance" as required by MCA. *Id.* § 14.1. Further, if Cane "fail[s] to provide margin when required to do so [then] MCA (or any applicable exchange, clearing house or counterparty) may close out [Cane's] positions," as well as execute other default remedies. *Id.* § 14.4 ("Failure to provide margin"). Likewise, any failure on Cane's part to pay any sum due MCA under the Customer Agreement or any debt balance in its accounts constitutes default, *id.* §§ 16.1.2 and 16.1.3, authorizing MCA, at its discretion and without prior notice, to liquidate and close out any account and call any credit guaranty made on Cane's behalf. *Id.* § 17 ("Consequences of default"). The Customer Agreement further provides that when liquidating any account MCA "shall be entitled to choose the time of closing out at [its] absolute discretion." *Id.* § 18.1.

In addition to the Customer Agreement, Cane furnished a Guarantee whereby an affiliated company, Fluxo-Comercio E Assessoria Internacional ("Fluxo-Comercio"), agreed unconditionally and irrevocably to pay MCA all money owed by Cane. *See* Guarantee, attached as Ex. B. Cane also executed a Credit Facility "to be used for the purpose of furnishing margin

against open positions." *See* Credit Facility, attached as Ex. C. And Cane signed a Statement accepting the Credit Facility. *See* Statement – Acceptance of Credit Facility, attached as Ex. D.

**B.     The Merger of Cane Into Fluxo-Cane Overseas, Ltd.**

In December 2006, Cane notified MCA that it had merged with its parent company, Fluxo Overseas Ltd., and that the surviving company was renamed Fluxo-Cane Overseas, Ltd ("Fluxo-Cane"). *See* Plan of Merger, attached as Ex. E. Under the merger documents Fluxo-Cane agreed to "(i) become the owner, without other transfer, of all the rights and property of [Cane and Fluxo Overseas]; and (ii) become subject to all liabilities, obligations and penalties" of both Cane and Fluxo Overseas. *Id.* at ¶ 5.

From December 2006 to the present, Fluxo-Cane has assumed the now-merged Cane's obligations under the Customer Agreement. As Fluxo-Cane's broker, Man continued to execute futures transactions on Fluxo-Cane's behalf under the Customer Agreement. These transactions were largely made through the New-York-based "ICE Futures US", the world's leading soft commodities exchange ("Exchange").

**C.     The Margin Calls On Fluxo-Cane.**

In early 2008, the Exchange became concerned that Fluxo-Cane had significantly exceeded its trading limits. On January 16, 2008, Fluxo sent MCA a copy of the letter that the Exchange had sent that day informing Fluxo of action taken by the Exchange as a result of a special meeting of the Exchange's board of directors the day before. *See* Ex. F. The action taken by the Exchange is also generally explained in the affidavit of John Daniel Whittaker, of Clyde & Co. in London, MCA's and Man's London solicitors, submitted to the High Court of Justice in London in connection with actions by MCA and Man against Fluxo in that court (further explained below). *See* Ex. R ¶¶ 32-36. At the time, Fluxo-Cane was using numerous

5

futures brokers in addition to MCA. The Exchange among other things ordered MF Global (MCA's clearing broker) to collect an additional 20 percent margin (a "super margin") on all positions held by MCA on the Fluxo-Cane account. This information was relayed to MCA on or about January 16, 2008. *Id.* ¶ 34.

On January 17, 2008, MCA notified Fluxo-Cane of a margin call in the amount of $9,468,847.79. *See* Ex. G. Fluxo-Cane failed to meet that margin call. Bouet Decl. ¶ 8. On January 18, 2008, Fluxo-Cane's margin call had increased to $27,808,358.39. *See* Ex. H. MCA informed Fluxo-Cane that its "[f]ailure to meet this margin call today may result in [Fluxo-Cane's] positions being liquidated." *Id.* Fluxo-Cane also failed to meet that margin call. Bouet Decl. ¶ 9. Due to Fluxo-Cane's failure to pay any part of the outstanding margin MCA sent Fluxo-Cane a letter noting that "[d]ue to [its] failure to make the required margin payments [MCA] ha[s] exercised, are now exercising, and shall continue to exercise [MCA's] right to liquidate all of [Fluxo-Cane's] accounts with [MCA]." *See* Ex. I.

Over the next two months MCA proceeded to liquidate all open positions in Fluxo's account. *See* Ex. R ¶ 48. During that period market prices caused MCA to incur substantial additional liabilities in Fluxo-Cane's futures-trading accounts and to demand additional margin. In early February, for example, the unpaid margin in respect of Fluxo-Cane's accounts with MCA exceeded $41 million. *See* Ex. R ¶¶ 18-22. By liquidating Fluxo-Cane's accounts, MCA was able to mitigate the losses caused by Fluxo-Cane's failure to pay the margin owed to MCA. As of April 14, 2008, the liquidation had been completed. Due to that liquidation, Fluxo-Cane owes MCA a final principal sum of $22,056,154.62, exclusive of interest. *See* Ex. M.

### D.   MCA Assigns a Portion of Fluxo-Cane's Debt to Man Sugar.

Meanwhile, on February 4, 2008, approximately two weeks after notifying Fluxo-Cane that it was liquidating its accounts, MCA assigned a portion of the debt owed by Fluxo-Cane to Man. *See* Ex. J. On February 4, 2008, Man notified Fluxo-Cane that MCA had assigned to Man part of Fluxo-Cane's debt to MCA under the Customer Agreement. *See* Ex. K.

The assigned debt ($6,013,149.93) matched the pro forma price that Fluxo-Cane had invoiced Man on January 28, 2008 for the sugar lifted in Maceio. *See* Affidavit of Jose Luiz P. Cipriani, ¶ 19 and Ex. 14 (submitted by Fluxo-Cane). It also matches the damages claimed in Fluxo-Cane's amended complaint. *See* Amended Complaint ¶ 47. On June 2, 2008, Fluxo-Cane invoiced Man for a further $584,306.69 based on certain quality adjustments. *See* Cipriani Aff. ¶ 25 and Exhibit 20. On April 4, 2008, MCA then executed a second assignment in favor of Man in the amount of $598,802.90 to cover any additional sums invoiced by Fluxo-Cane in respect of the sugar. *See* Ex. L. Notice of this assignment was also provided to Fluxo-Cane.

As a result, the part of Fluxo-Cane's debt under the Customer Agreement assigned to Man exceeds the amount that Man owes Fluxo-Cane for the sugar lifted in Maceio. Whereas Fluxo-Cane now claims $6,597,456.62 as owing (*see* Fluxo-Cane's Memorandum in Support of Motion for Summary Judgment at p. 5 (Docket No. 31)) (hereafter "Fluxo-Cane Mem."), the two assignments total $6,611,952.83.

### E.   MCA's and Man's Action in the United Kingdom.

On March 20, 2008, MCA and Man filed Particulars of Claim against Fluxo-Cane and Fluxo-Comercio in the High Court of Justice in London. *See* Ex. N. MCA and Man now seek damages in that English action in the principal sum of $22,056,154.62, *i.e.*, the amount representing the final liquidation of the positions in Fluxo-Cane's accounts, less any set-off by which Man satisfies the portion of the debt assigned to it. *See* Ex. R, ¶¶ 23, 29, 31. On May 19, 2008,

7

Fluxo-Cane and Fluxo-Comercio joined issue in the English action by filing a Defence and a Counterclaim against MCA alleging that MCA had wrongfully closed Fluxo-Cane's accounts. *See* Ex. O. In its Defence Fluxo-Cane alleges among other things that any liability to MCA and Man should be set off against any money that MCA may owe to Fluxo-Cane's and Comercio's counterclaim against MCA. *Id.* ¶ 44(3) at 13. On June 17, MCA and Man filed a Reply and MCA a Defence to the Counterclaim. *See* Ex. P.

In the English action MCA and Man Sugar sought a freezing injunction on Fluxo-Cane's assets. To obtain that injunction MCA and Man Sugar had the burden of proving, among other things, that there was a substantial risk that Fluxo-Cane would be unable to satisfy a judgment and that any available assets would be dissipated before a judgment could be enforced. MCA and Man Sugar submitted the affidavit of Mr. Whittaker, who averred among other things that Fluxo-Cane's principal, Mr. Manoel Garcia, had described Fluxo-Cane as an insolvent company. *See* Ex. R. ¶¶ 53-55. Fluxo-Cane's principal had likewise averred that Fluxo-Commercio (the company that served as Fluxo-Cane's guarantor) was undercapitalized and might not continue active operations. *Id.* at ¶ 56.

Based on those submissions the High Court issued a freezing injunction on Fluxo-Cane's and Fluxo-Comercio's assets. *See* Freezing Order, attached as Ex. Q. That Freezing Order has practical effect only in the United Kingdom unless it were recognized and enforced by a foreign court having jurisdiction over the defendants' assets. It has nonetheless led to a series of directions by which Fluxo-Cane and Fluxo-Comercio are required to identify assets owned by them. *See* Ex. S. MCA and Man have also applied for summary judgment in respect of their claims against Fluxo-Cane and Fluxo-Comercio. The English court has listed that summary

8

judgment application (along with the defendants' application for relief from the Freezing Order) for hearing on August 6, 2008. *See* Ex. T (proposed Order).

## ARGUMENT

A.  **Standard of Review**

A motion for summary judgment should not be granted unless "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987).

Where, as here, a claim turns on the interpretation of a contract, summary judgment may be granted if the relevant terms are clear and unambiguous and entitle the movant to judgment. *See World-Wide Rights Ltd. P'ship v. Combe Inc.*, 955 F.2d 242, 245 (4th Cir. 1992). When the contract is ambiguous, however, then "the trier of fact must determine the intent and purpose of the parties, taking into account the circumstances and conditions surrounding the subject-matter of the agreement at the time the agreement was made." *Auslander v. Helfand*, 988 F. Supp. 576, 581 (D. Md. 1997) (citing *Anne Arundel County v. Crofton Corp.*, 286 Md. 666, 673 (1980)). "An ambiguous contract that cannot be resolved by … unambiguous, extrinsic evidence discloses genuine issues of material fact." *Sempione v. Provident Bank of Maryland*, 75 F. 951, 959 (4th Cir. 1996). In such instances, not relevant here, summary judgment is "inappropriate." *Id.*

B.  **Man May Set-Off Fluxo-Cane's Claims By The Portion of Fluxo-Cane's Debt Assigned to It.**

The Court should grant summary judgment dismissing Fluxo-Cane's amended complaint because Fluxo-Cane's assigned debt to Man exceeds the amount that Man would otherwise owe

9

Fluxo-Cane under the sugar-sale contract. Set-off is a "diminution or a complete counterbalancing of [an] adversary's claim based upon circumstances arising out of a transaction other than that on which the adversary's claim is based." *See Imbesi v. Carpenter Realty Corp.*, 357 Md. 375, 380 (2000). *See also First Nat'l Bank of Louisville v. Master Auto Serv. Corp.*, 693 F.2d 308, 310 n. 1 (4th Cir. 1982) (defining set-off as counterbalancing by parties of unrelated claims); *Miller v. U.S. Foodservice, Inc.*, 405 F. Supp. 2d 607, 620 (2005) (same). Set-off should be applied where, as here, Fluxo-Cane's assigned debt to Man "completely counterbalance[es]" Man's debt to Fluxo-Cane for the sugar.[1]

Fluxo-Cane makes two arguments for why set-off should not apply—both unavailing. First, Fluxo-Cane argues that the sugar-sale contract prohibits set-off. *See* Fluxo-Cane Mem. at 7-8. Not only does the sugar-sale contract say nothing about set-off, but the Customer Agreement specifically authorizes MCA to set-off Fluxo-Cane's obligations and to assign MCA's contractual rights (including the set-off right) to a third party such as Man. Second, Fluxo-Cane argues that Man's set-off is not permitted by law because Fluxo-Cane's debt to MCA is neither "mutual" nor "liquidated". But the assignments (Exs. K and L)—which Fluxo-Cane notably does not challenge—render Man's and Fluxo-Cane's obligations mutual. And Fluxo-Cane's

---

[1] "Setoff is a creature of the common law, and therefore in most cases a question of state law under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938)," *In re Calore Express Co., Inc.*, 288 F.3d 22, 43 (1st Cir. 2002). The sugar-sale contract provides that "[t]his contract shall be governed and construed in accordance with United States law." *See* Cipriani Ex. 8. As there is no "United States law," one must look to the choice-of-law provision in the incorporated Domino Rules which provides for New York law. *Id.* Ex. 10, § 13. New York recognizes the traditional common-law set-off right that applies as a matter of federal common law. For an expression of that general right *see, e.g., In re Chateaugay Corp.*, 94 F.3d 772, 780 (2d Cir. 1996) (federal common law) ("The right of setoff is a 'common right, which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him'" (quoting *Gratiot v. United States*, 40 U.S. 336 (1841)). The cases from jurisdictions other than New York cited herein are consistent with New York law.

obligation to MCA under the Customer Agreement is plainly liquidated because it is a certain sum owed as of a certain date due to the final liquidation of all positions in Fluxo-Cane's futures accounts with MCA. *See* Ex. L. That Fluxo-Cane may be contesting its underlying liability to MCA in the English action does not mean the assigned debt is not liquidated for purposes of set-off.

1. <u>Man Has A Contractual Right to Set-Off Fluxo-Cane's Claims.</u>

The Customer Agreement expressly authorizes MCA (a) to set-off any claims by Fluxo-Cane with any money due to MCA from Fluxo-Cane "whether under this [Customer] Agreement or otherwise" (Customer Agreement, Ex. A, at § 10.4), and (b) to assign its rights under the Customer Agreement (*id.* at § 24.8). Fluxo Cane is bound by the set-off right expressly conferred on MCA and hence on Man by virtue of the assignment.

The sugar-sale contract does not address much less prohibit a right of set-off. According to Fluxo-Cane, the sale contract precludes set-off because it states that payment shall be "[c]ash against presentation of original shipment document." *See* Cipriani Aff. Ex. 8 ("Payment"). That wording, however, simply governs when payment would be due, *i.e.*, when Fluxo-Cane presented to Man the endorsed order bills of lading and other shipping documents itemized in the sale contract. *Id.* ("Documents"). Like any contractual term that prescribes a manner of payment, it does not, without more, manifest any intent by the parties to forgo or waive common law rights such as a set-off right.

Fluxo-Cane nonetheless attempts to suggest that the "cash against documents" wording unambiguously precludes set off because the payment provisions of the "ICE Sugar No. 14 Rules" and the "Rules & Regulations of the Sugar Association of London" ("SAL Rules") purport to preclude set-off. *See* Fluxo-Cane Mem. at 7 and Cipriani Aff. ¶ 16 (referring to ICE

11

Rule 14.06(c)(1) (Cipriani Ex. 1) and ¶ 17 (referring to SAL Rule 222 (Cipriani Ex. 9).[2] The assertion borders on the frivolous. Fluxo-Cane cannot show that the contract wording agreed by the parties unambiguously precludes set off by referring to payment provisions in *other* contracts that the parties did *not* incorporate into their sugar-sale contract. The parties incorporated a different set of rules, *i.e.*, the "Domino Rules," which Fluxo-Cane does not suggest bar set-off. *See* Cipriani Aff. Ex. 8 ("Rules & Arbitration"). (The matter is not subject to arbitration because the Domino Rules do not provide for arbitration.)

Had Fluxo-Cane wanted to import into the sugar-sale contract the payment provisions of either the Exchange's "Sugar No. 14" Rules or the SAL Rules, then it must have incorporated either of those Rules into the sale contract. But it did not do so. Nor does Fluxo-Cane plead that the contract was the product of mistake that must be rectified. Man's common-law set-off right is therefore wholly unimpaired by the "cash against documents" terms of the sugar-sale contract.

2.  Man Has A Common Law Right to Set-Off Fluxo-Cane's Claims.

Even if the Customer Agreement did not expressly authorize set-off, Man would still have a common law right of set-off. "The set-off right is available to the creditor as a common-law right. … and can be created by contract, although a contractual right is unnecessary." *See* Hon. Wm. Houston Brown, *The Law of Debtors and Creditors*, § 5:11; *see also Midland Ins. Co. v. Corcoran*, 167 A.D. 2d 75, 78 (N.Y. App. Div. 1991) ("[T]his right of offset would apply even in the absence of an agreement or [statute]" so long as debts are mutual and liquidated.). Fluxo-Cane nonetheless argues that its claim is not subject to set-off because the assigned debt is

---

[2]  The so-called "ICE Rules" (Cipriani Ex. 1) are those of ICE Futures U.S. Inc. that govern the "Sugar No. 14" futures contract for U.S.-origin sugar traded on the Exchange. The SAL Rules (Cipriani Ex. 9) are a private set of rules promulgated by the SAL for the benefit of sugar merchants wanting to trade based on its rules.

"neither mutual nor liquidated." *See* Fluxo-Cane Mem. at 9. Fluxo-Cane is wrong on both points.

The debts between Fluxo-Cane and Man are "*mutual*" because MCA assigned the debt to Man (an assignment to which Fluxo-Cane consented in the Customer Agreement). Fluxo-Cane simply ignores the assignments. (Exs. J and K.) When MCA assigned Fluxo-Cane's debt, the parties' respective obligations—Man to Fluxo-Cane under the sugar-sale contract and Fluxo-Cane to Man as assignee under the Customer Agreement—became mutual. Nothing in the law of set off prevents an assignee from grounding a set-off defense in an assigned claim. Doing so is consistent with the rule that in set-off the mutual debts arise from different transactions, whereas in recoupment the claims arise out of the same transaction or set of transactions. *See In Re Malinowski*, 156 F.3d 131, 133 (2d Cir. 1998); *accord Miller v. U.S. Foodservice, Inc.*, 405 F. Supp. 2d 607, 620 (D. Md. 2005).

Fluxo-Cane cites *Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138,149 (2nd Cir. 2002) for the proposition that "debts are mutual when they are due to and from the same persons in the same capacity" (internal citations omitted) (*see* Fluxo-Cane Mem. at 8-9). That principle, however, supports Man's set-off right. In *Westinghouse*, the defendant was denied a set-off right because its adversary Westinghouse was asserting claims as a trust beneficiary, not on its own behalf. The court noted that "obligations lack mutuality where one party is a trust beneficiary asserting his or her rights against a trustee, and the other is a creditor exercising his or her contractual rights" (278 F.3d at 149) (citing *In re Consol Indem. & Ins. Co.*, 287 N.Y. 34, 38-39 (1941)).

"Courts have also held that when the liability of the party seeking set-off arises from either a fiduciary duty or a trust, there is a lack of mutuality, and set-off will not be permitted."

13

*Allegaert v. Perot*, 466 F. Supp. 516, 517 (S.D.N.Y. 1978) (citing *Western Tie & Timber Co. v. Brown*, 196 U.S. 502 (1904); *Bayliss v. Road*, 424 F.2d 142 (4th Cir. 1970)). As the assignee of part of the debt that Fluxo-Cane owes MCA, however, Man is acting on its own behalf, not in any representative capacity. The debts between Fluxo-Cane and Man, each owed directly to the other, are therefore mutual.

Also unavailing is Fluxo-Cane's second argument – that Man's claim is not "liquidated". Without support, Fluxo-Cane suggests that a claim is "not liquidated" for set-off purposes when the existence of the claim is "strongly disputed." *See* Fluxo-Cane Mem. at 9. Courts have rejected the argument that claims are "liquidated" merely because they are "disputed." In *United States v. Verdunn*, 89 F.3d 799 (11th Cir. 1996), for example, the court held that a debtor's federal income tax liability was a "liquidated debt" for the purpose of eligibility requirements under Chapter 13 of the Bankruptcy Code even though portions of the debt were "vigorously disputed" by the debtor. *Id.* at 802-03. The debt was liquidated because it was "easily ascertainable [and] computed through the application of fixed legal standards." *Id.* The court noted that "the concept of a liquidated debt relates to the *amount of liability* not the *existence of liability*." *Id.* at 802 (emphasis added). That the debtor disputed the debt did not change the liquidated status of the claim. *Id.*

Instead, courts have held that a debt is "*liquidated*" where, as here, the amount owed may be determined by reference to an agreement, by mathematical calculation, or by operation of law. *See In re Mazzeo*, 131 F.3d 295, 304 (2d Cir. 1997) (in the context of Chapter 13 of the Bankruptcy Code); *Printers II, Inc. v. Professionals Pub'g, Inc.*, 615 F. Supp. 767, 774 (S.D.N.Y. 1985) (to determine whether prejudgment interest is owed). A claim is liquidated when it is "fixed and determined or readily ascertainable by computation." *Transit Cas. Co. v. Selective*

*Ins. Co.*, 137 F.3d 540, 546 (8th Cir. 1998) (in the context of prejudgment interest); *see also Wilkerson v. Ingalls Shipbuilding, Inc.*, 125 F.3d 904, 907 n.5 (5th Cir. 1997) (same) (holding that "[l]iquidated claims – for example, where contract payments are wrongfully withheld"—are claims "in which the precise amount of damages is ascertainable").[3] Here, Fluxo's obligation to MCA has been calculated to the penny. *See* Bouet Decl. ¶ 14 and Ex. M.

This same definition of "liquidated debts" applies in determining whether a claim can be used by the defendant as a set off. In *John H. Maclin Peanut Co. v. Pretlow & Co.*, 11 S. E. 2d 607 (Va. 1940), for example, the Supreme Court of Virginia considered whether a jury could consider a set-off claim that was readily determinable by simply calculating the difference between the sales price of the good and the market price. *Id.* at 612. The court held that "if the damages do not lie in mere opinion but can be readily ascertained by calculation or by computation," then a set-off can apply because the claim is liquidated. *Id*; *cf. Odessky v. Monterey Wine Co.*, 49 S.E. 2d 330 (Va. 1948) (unliquidated damages from breach of warranty claim rest on opinion only and cannot be asserted as a set-off); *ITT Residential Capital Corp. v. Cheuk*, 656 So. 2d 747 (La. Ct. App. 1995) (no set off because the amount of damages from claim is not capable of ascertainment by "mere calculation" and is therefore unliquidated).

Further, in instances when a creditor and debtor are involved in multiple transactions using different types of financial accounts, courts repeatedly have allowed the creditor to set-off any claim brought by the debtor with respect to one account with the amount that is owed by the

---

[3] In *In re Bradley Smith*, 365 B.R. 770 (Bankr. S.D. Ohio 2007), the court surveyed the cases in all jurisdictions that interpreted "liquidated debts" in the context of Chapter 13 eligibility. *Id.* at 782-85. The court concluded that claims where the debts were unliquidated involved either tort claims or statutory claims that required a fact finder "to exercise discretion – rather than simply make a mechanical calculation – in order to assess damages." *Id.* at 785. In those cases, "discretion or opinion—as distinguished from mathematical computation"—was required to determine the amount of the claim. *Id.* at 783.

debtor on the other account. *See, e.g., Sullivan Bank v. Central Bank of the South*, 601 So.2d 985, 986 (Ala. 1992) (affirming summary judgment in favor of bank who set-off portion of debtor's savings account after debtor defaulted on automobile loan); *Rosa v. Colonial Bank*, 542 A.2d 112, 117 (Conn. 1981) (bank could set-off funds in general purpose savings account to recover funds due from overdue note); *Crisler v. Citizens Fidelity Bank & Trust Co.*, 723 S.W. 2d 857 (Ky. Ct. App. 1986) (affirming the trial court's granting of a motion to dismiss by bank that had properly set off balance of mortgage indebtedness from the savings account of a house purchaser who agreed to assume and pay mortgage upon default of note).

Fluxo-Cane cites only one relatively obscure case purportedly supporting its position – *Willett v. Lincolnshire Mgmt.*, 302 A.D. 2d 271 (N.Y. App. Div. 2003). *See* Fluxo-Cane Mem. at 9. While Fluxo-Cane describes *Willett* as "somewhat similar" to this case, the court in *Willett* provided virtually no detail as to the nature of the claim being sought as a set-off and whether the damages were readily ascertainable, as they are in this case. The court's citation in *Willett*, moreover, to *Spodek v. Park Property Dev. Assocs.*, 263 A.D. 2d 478, 478-79 (N.Y. App. 1999), for the proposition that "there is no right to set-off a possible, unliquidated liability against a liquidated claim that is due and payable," suggests that the claim upon which the set-off was based in *Willett* was unliquidated. *Spodek* involved a purported set-off claim based on a theory of breach of fiduciary duty due to the defendants' alleged "mismanagement of assets." *Id.* at 478. Because damages from this type of claim cannot be determined by reference to an agreement, by mathematical calculation or by operation of law, the claim in *Spodek* was not

16

liquidated. That the court in *Willett* found *Spodek* persuasive indicates it was not addressing a readily ascertainable claim.[4]

Here, Fluxo-Cane's debt to Man is liquidated because the deficiency resulting from the liquidation of Fluxo-Cane's futures accounts with MCA is readily calculable and has been calculated. *See* Ex. M; Ex. R ¶ 23. Man's assertion of a set-off in this case is analogous to the assertion of a set-off by a bank of a debtor's account when the debtor has defaulted on a mortgage or note. Because the amount of Man's claim is readily ascertainable, Man can use it to set-off it obligations under the sugar-sale contract.

### C.    Fluxo-Cane's Claim for Conversion Fails As a Matter of Law.

Fluxo-Cane argues that, in addition to breach, it is entitled to damages for conversion. A claim for conversion does not exist, however, when all a party is alleging that the other party did not pay money under a contract. "A conversion claim may only succeed if the party alleges a wrong that is distinct from any contractual obligations." *Command Cinema Corp. v. VCA Labs, Inc.*, 464 F.Supp. 2d 191, 1999 (S.D.N.Y. 2006). A conversion claim that is merely duplicative of a breach of contract claim should be dismissed. *See Wechsler v. Hunt Health Sys. Ltd.*, 330 F. Supp. 2d 383, 431 (S.D.N.Y. 2004). It will "be deemed redundant when damages are merely being sought for breach of contract." *Rolls-Royce Motor Cars, Inc. v. Schuddroff*, 929 F. Supp. 117, 124 (S.D.N.Y. 1996); *see also Wolf v. Natural Council of Young Israel*, 264 A.D. 2d 416, 417 (N.Y. App. Div. 1999) ("Since the appellant's conversion counterclaim does not stem from a wrong which is independent of the alleged breach of the mortgage agreements, it was properly

---

[4]    Likewise, it is purposeless for Fluxo-Cane to cite *Ferguson v. Lion Holdings, Inc.*, 312 F. Supp. 2d 484, 503 (S.D.N.Y. 2004) for the proposition that "[b]ecause debts must be due to the claimant for setoff to apply, 'there is no right to set off a possible, unliquidated liability against a liquidated claim that is due and payable'" (quoting *Willett*, 756 N.Y.S. 2d at 10) (quoting *Spodek*, 693 N.Y.S.2d at 200. Fluxo-Cane's liquidated $22,056,154.62 debt to MCA is not "a possible, unliquidated liability," but rather a meticulously calculated contractual obligation.

dismissed."); *Hutchings v. Torrey*, 203 Misc. 1038, 1040 (N.Y. Sup Ct. 1953) ("The failure to pay it over was simply a breach of contract, and the plaintiff cannot, by changing the form of the action, change the nature of the defendant's obligation, and convert into a tort that which the law deems a simple breach of an agreement.").

Fluxo-Cane alleges that Man Sugar should not have applied a set-off and should have paid the money due under the sugar-sale contract. This is a classic instance of a plaintiff alleging conversion when all it is really alleging is breach of contract. Fluxo-Cane's count for conversion should be dismissed.

## CONCLUSION

For these reasons, Man respectfully requests that this Court grant summary judgment in its favor and dismiss all claims in the amended complaint.

Respectfully submitted,

/s/
Robert A. Gaumont
DLA Piper US LLP
6225 Smith Avenue
Baltimore, MD 21209

Stanley McDermott III
(admitted *pro hac vice*)
DLA Piper US LLP
1251 Avenue of the Americas
New York, NY 10020-1104

Attorneys for Defendant, E.D. & F. Man Sugar Inc.