EXHIBIT A

*1 February 2005*

# ED & F MAN COMMODITY ADVISERS LIMITED

and

## Cane International Corp. Ltd.

# TERMS OF BUSINESS

Mca_termsof business_oct02

1   Our particulars

We are regulated by the Financial Services Authority ("FSA") and are therefore an authorised person under the Financial Services and Markets Act 2000.

Our registered office in the UK is Cottons Centre, Hay's Lane, London SE1 2QE. Our telephone number is 020 7089 8000.

2   Interpretation

The definitions set out in Schedule 1 to these Terms of Business will apply except where the context otherwise requires.

3   Classification

For the purposes of FSA's rules, we will treat you as a market counterparty.

4   Services; Investment objectives and restrictions

4.1   Nature of our services

We may give investment advice to you and may deal for you upon your instructions.

4.2   Investment Objectives and Restrictions

Except as set out in this Agreement there are no restrictions on the types of designated investments in which you wish to invest or the markets on which you wish transactions to be executed.

Unless you notify us in writing of any investment objectives, restrictions or limits, we will assume that you do not intend any to apply and accordingly we may advise in relation to and deal in any investment which falls within any of the categories set out in Clause 5 (Permitted Investments) below.

4.3   Amendment to investment objectives or restrictions

It is important that you should contact us as soon as possible if you would like to discuss or change your investment objectives. Any changes to your investment objectives must be in writing and must be accepted by us before they become effective.

4.4   Clearing

Where transactions are introduced to us on your behalf by another broker for us to clear then unless the transaction is also executed by us, we will not have any duties to you in relation to the execution of those transactions. Our sole responsibilities will relate to the clearance and settlement of the transaction. We will not be responsible for advising you in relation to the transaction, warning you of risks involved or determining whether it is suitable for you or whether your trading is too frequent in the circumstances. You should look to the introducing firm rather than us for advice in relation to the transaction. Where the other broker is an overseas broker then only our services, and not those of the overseas broker, will be regulated under the Financial Services and Markets Act 2000.

4.5   **Affiliates**

We may in our absolute discretion and without prior disclosure to you arrange for any transaction for which an instruction is received from you to be effected with or by us or such affiliate as we shall decide.

## 5   Permitted Investments

Unless otherwise agreed in writing, the type of transaction and/or investment we may advise you about or enter into with or for you may include the following:

(a)   future and options transactions in coffee, cocoa and sugar, and other commodities of any description;

(b)   investments including derivatives relating to the foregoing;

(c)   foreign exchange contracts; and

(d)   such other investments as agreed by us from time to time.

## 6   Permitted Activities

6.1   **Transactions in contingent liability transactions**

We may, subject to your investment objectives and restrictions, effect derivative contracts which include futures and options.

There is no limit on the amount of such contingent liabilities.

6.2   **Borrowing**

Unless otherwise agreed in writing, we will not have authority to commit you to supplement the funds in your account, including borrowing on your behalf.

6.3   **Off-Exchange Transactions**

Unless otherwise stated in the Statement of Investment Objectives and Restrictions, we may deal for you in circumstances in which the relevant deal is not regulated by the rules of any stock exchange or investment exchange (nor by an exchange which is recognised or designated for the purposes of the FSA's rules). Such transactions may, accordingly, not be subject to the same investor protection standards as transactions executed on such an exchange.

6.4   **Short Positions**

We may establish short positions on your behalf, that is to say sell on your behalf investments which you do not own at the time, leaving you with an open exposure related to any increase in the price of those investments before settlement. We may cover your settlement obligations by borrowing for you the relevant investments. We may require you to sign appropriate documentation covering such borrowing.

7   Dealing

## 7.1   No obligation to deal

We are not obliged to execute or otherwise enter into any particular transaction, or to accept any order or act in accordance with instructions, nor need we give any reasons for declining to do so.

## 7.2   Notification of refusal of an order

If we decline an order we will notify you promptly but will not be liable for any expense, loss or damage incurred by you if we fail to notify you unless this is as a result of our gross negligence, bad faith, wilful default or fraud. Even then, we will not be liable for any consequential or special damage.

## 7.3   Advice

Unless we have specifically advised you to carry out a transaction, the service we will provide to you is an execution-only dealing service and we will not advise you in respect of that transaction. Accordingly, in giving orders or instructions to us, you do so in reliance on your own judgement. You should bear in mind that merely explaining the terms of an investment or its performance characteristics does not of itself amount to advice on the merits of the investment.

Should we provide you with advice, such advice will, unless otherwise agreed in writing, be confined to the investment merits of the relevant transaction and we will not be responsible for giving you tax, legal or accountancy advice and shall not be required to take into account the taxation, legal or accountancy consequences of investments for you and you should take independent tax, legal or accountancy advice where you consider it appropriate to do so.

## 7.4   Manner of giving advice

Where we give advice, such advice may be given orally, in writing, or in any other manner as we shall determine in our discretion unless a specific manner of giving such advice has been agreed with you.

## 7.5   Acceptance and Execution of Transactions

### 7.5.1   Our capacity

We will usually deal with you as principal and no other person will have an interest in respect of any specific transaction which is entered into between us. We will inform you if Clause 7.5.4 applies.

### 7.5.2   Your Capacity

You will deal with us as principal and no other person will have an interest in respect of any transaction which is entered into between us.

### 7.5.3   Identification

You shall provide, on our request, evidence reasonably satisfactory to us of your identity, your owners or anyone with an interest in you, your directors, officers, employees and agents and such other matters as we may require in

order to comply with applicable law or any of our policies relating to such law, including (but not limited to) applicable law concerning money laundering.

7.5.4   Our responsibilities when acting as agent

Where Clause 7.5.1 does not apply and we have acted as your agent, it is the other party to the transaction and not us who is responsible for settling the trade with you and delivery or payment (as the case may be) will be at your entire risk. Our obligation is only to pass on to you (or as you direct), or to credit to your account, such deliverable documents or sale proceeds (as the case may be) as we actually receive.

## 7.6   Best Execution

We do not owe you a duty of best execution under FSA's rules or otherwise in any circumstances.

## 7.7   Delegation

We shall be entitled to delegate the performance of any of our services to any associate of ours or to such other person or persons as we think fit.  Such delegation may be in respect of your account generally, or may relate to specified investments or types of investment.

# 8   Instructions

## 8.1   Giving of instructions

You may give oral or written instructions to us.  Unless otherwise agreed, we will not be obliged to give or make any other acknowledgement of such oral or written instructions.

## 8.2   Reliance on instructions

We will rely on, and treat as fully authorised and binding on you, any order, instruction or communication which purports to be given by you or on your behalf, and which is accepted by us in good faith. We will not be liable for any actions taken or omitted to be taken in good faith pursuant to orders, instructions or communications nor shall we be under any obligation to confirm orders or instructions before they are executed or the accuracy or completeness of any such information before it is acted or otherwise relied upon.  You will be responsible for and bound by all contracts, obligations, costs and expenses properly entered into or assumed by us on your behalf in reliance on instructions which we have received from you.

## 8.3   Obligation to send Contract Notes

Where we execute a sale or purchase of a designated investment with or for you, we shall, where so required by FSA's rules or as otherwise agreed with you send to you (or to any agent nominated by you in writing) with due despatch a contract note containing the essential details of the transaction unless it would duplicate a confirmation containing the essential details of the transaction to be promptly provided to you by someone else.

You may at your initiative agree with us the information to be included in contract notes and/or the period within which contract notes must be despatched. We are not, however, obliged to agree to any requests you may make in that regard.

You hereby request us not to supply contract notes to the extent that the transactions concerned will be reflected in the periodic statements to be sent to you.

### 8.4    Account statements

We shall prepare statements of your account on a monthly basis.

The basis of valuation of your account will be determined by the relevant exchange.

### 8.5    Research and Recommendations

#### 8.5.1    Receipt

Our associates may from time to time provide research reports and recommendations to you (but are under no obligation to do so or to send any such reports and recommendations to all our customers). Where they do so, they need not see that any advice or information they give is given either before or at the same time as it is made available to our other associates or to our or their employees, officers or directors. Further, you may not receive them at the same time as our other customers.

#### 8.5.2    Prior internal use

Our associates and our and their employees, officers and directors may receive, have knowledge of, act upon or use such research reports and recommendations (or any conclusions expressed thereon or research or analysis upon which they are based) prior to publication or after they have been published but before they are received by our customers (e.g. because of postal delays);

#### 8.5.3    No obligation to take account of research recommendations

We will be under no obligation to take account of any reports and recommendations published to our customers when we advise or deal with or for you. Further, we need not see that our advice or dealings for you takes account of any research which has been carried out for our or our associates market makers or otherwise with a view to assisting our or their own activities.

### 8.6    Telephone taping

All telephone conversations between you and us may be recorded by us and may, to the fullest extent permitted by law, be used in evidence. We shall have complete discretion as to our policy for the retention or destruction of such recordings.

We may act upon telephone instructions before receipt of any written confirmations and our records of telephone conversations shall be conclusive evidence of all such instructions.

**9   Holding of your money**

In this Clause, the terms **client money** and **"Client Money Rules"** have the same meanings as in FSA's rules.

Unless we agree otherwise, you acknowledge that we will not treat your money as client money for the purposes of FSA's Client Money Rules and your money will not be subject to the protections conferred by those rules. As a consequence, your money will not be segregated from our money in accordance with the Client Money Rules and (unless otherwise agreed) may be used by us in the course of our business, and you may therefore rank only as a general creditor of ours.

We will notify you as to whether interest is payable on your money.

**10   Settlement of transactions and amounts due;  Charges**

The arrangements for accounting to you for any transaction effected on your behalf are as follows:

**10.1   Payments and Deliveries**

You will deliver all certificates and other documents required to settle your transactions, which shall be free of any liens, encumbrances or charges in time to enable us to complete settlement promptly.

**10.2   Method of Settlement**

Unless otherwise agreed between us or as required by any applicable law, all amounts which are payable between us will be made on a delivery versus payment basis. However, we may at our discretion effect settlement with you on a net basis.

**10.3   Our Charges**

We shall provide you with our current schedule of fees showing the amount and basis for our charges, which may vary from time to time.  Any alteration will be provided to you.

**10.4   Set Off**

Any amounts owed to us in connection with this Agreement may be set off against amounts we owe you, without prior reference to you.  We may deduct from any funds of yours held by us our fees and any other amounts due to us from you (whether under this Agreement or otherwise).

**11   Taxes**

**11.1   Taxes additional**

All sums payable by you under this Agreement are exclusive of all applicable taxes, which taxes will be payable by you to us at the same time as the sums to which they relate.

## 11.2 Your responsibilities

You will at all times be fully responsible for payment of all other taxes due and for the making of all claims in relation thereto whether for exemption from withholding taxes or otherwise, for filing any and all tax returns and for providing any relevant tax authorities with all necessary information in relation to any services we carry on for or with you or any assets which we hold on your behalf.

## 11.3 Forwarding of tax documents

We will use all reasonable endeavours to forward to you any tax documents which we may receive relating to you or any monies or assets held by us on your behalf.

## 12 Material Interests

### 12.1 Interests

You acknowledge that we are part of a group ("ED & F Man Holdings Limited") which is involved in research and trading. Accordingly, we and/or any associate have or may have a material interest or conflict of interest in services or transactions with or for you. We are required to treat you fairly in relation to such conflicts of interest or material interest. We propose to do this by ensuring that you are aware of the possibility of such conflict and consent to us acting notwithstanding such conflict or material interest. We may also decline to act where we believe there is no other practicable way of ensuring that you and our other clients are treated fairly.

If you object to our acting, on the basis set out in this Clause, notwithstanding that we have a material interest or conflict of interest you should notify our compliance officer in writing. Unless so notified, we will assume that you do not object to our so acting.

### 12.2 No fiduciary duties

The relationship between you and us is as described in this Agreement. Neither that relationship, nor the services we provide nor any other matter, will give rise to any fiduciary or equitable duties on our part or on the part of our associates which would prevent or hinder us or any associate in doing business with or for you, acting as both market maker and broker, principal and agent, or in doing business with associates, connected customers and other investors whether for our own account, your account or for the account of associates, connected customers and other investors, and generally acting as provided in this Agreement.

### 12.3 Our duty of disclosure to you

In providing our services to you, we shall not be obliged to disclose to you or take into consideration any information, fact, matter or thing (together information) unless:

(a)   the information is not held solely on the other side of a Chinese Wall from the individual making the decision or taking the step in question; and

(b)   disclosure or use of the information would not breach a duty of confidence to any other person or result in a breach of any applicable law or regulation; and

(c)   the information has come to the actual notice of the individual making the decision or taking the step in question (whether or not such information comes

to the notice of any officer, director, employee or agent of ours or any associate).

No further disclosure to, or consent from, you is required in relation to or as a result of any matter referred to in this Clause 12.

### 12.4   Retention of payments, benefits, etc

We and our associates shall be entitled to retain any payment, remuneration, profit or benefit which arises in relation to, or as a result of, any matter referred to in this Clause 12 or otherwise disclosed to you in this Agreement and shall not be required to disclose the same to you (except as required by FSA's rules or as expressly stated herein).

## 13   Aggregation and allocation

### 13.1   Aggregation

We may combine your transactions and our own (in-house) transactions, transactions for our associates, connected customers and/or other customers. The effect of aggregation may operate to the disadvantage of individual customers.

We may complete allocation within 5 business days (as that term is defined in FSA's rules) of the transaction where so permitted by FSA's rules.

### 13.2   Averaging

Market conditions may not permit your aggregated order to be executed at once or in a single transaction. We may therefore execute it over such period as we deem appropriate and we may report to you a volume weighted average price for a series of transactions so executed instead of the actual price of each transaction.

### 13.3   Allocation

Where the relevant clearing house, intermediate broker or settlement agent (as the case may be) does not allocate open purchase contracts on maturity direct to specific own account or client account open sale contracts, or vice versa, we will where required allocate them randomly or on an equitable basis at our discretion.

## 14   Deposits, margins and Payments

You will pay to us on demand:

### 14.1   in relation to all Customer Contracts (other than one for the purchase by you of a non margined option, the premium for which is payable in full immediately on purchase) such sums of money by way of deposit or initial margin or margin or maintenance as we require and will supplement that payment from time to time on demand;

### 14.2   such sums of money as we may require at any time in or towards clearance of any debit balance on any of your accounts with us;

### 14.3   on a full indemnity basis, any costs, claims, liabilities, expenses, fines, penalties or losses from time to time suffered or incurred by us by reason of any breach of the Customer Agreement or as a result of entering into any Customer Contract or any

matching contract with an intermediate broker or settlement agent (as the case may be) or matching exchange traded contract, or any failure by you duly to perform a Customer Contract fully in accordance with its terms or of us taking steps pursuant to Clause 17 to 19 below.

### 14.4 Failure to provide margin

If you fail to provide margin when required to do so we (or any applicable exchange, clearing house or counterparty) may close out your positions and exercise the rights described in Clause 17.

We will additionally have the right to close out your positions in any other circumstances provided in this Agreement.

## 15 Collateral

15.1 With our prior agreement in writing but not otherwise, you shall be entitled to deposit assets or provide security in a form other than cash with us by way of security for any obligation arising from time to time ("Collateral") (notwithstanding its face value) shall have such additional security cover percentage as we shall notify to you in writing.

15.2 Collateral may include, but without limitation, documentary credit, bank guarantees, securities, debt instruments including bonds and notes, physical commodities including warrants and certificates and documents of title thereto in a form acceptable to us, or a corporate guarantee or indemnity in favour of us in substance and form acceptable to us.

15.3 Any Collateral provided to us will not be registered in your name. We reserve the right to register any Collateral in the name of a nominee company or any bank for whose performance we do not accept liability.

15.4 We will assume responsibility for claiming and receiving dividends, interest payments and any other rights associated with the Collateral. In the event of conversion or subscription rights, take-over, other offers or capital reorganisations we will only act on your instructions. In addition we will not exercise any voting rights except on your express instruction.

15.5 Where you have opted to have your monies segregated from ours, the proceeds of the sale of any Collateral which exceeds the amount owed by you to us will, upon our failure, be subject to the pooling rules under the FSA's client money distribution rules (or as may be amended). You acknowledge that this action could result in you receiving less than the value of the surplus amount owed to you.

15.6 In exceptional circumstances we may have to return Collateral other than the original Collateral deposited with us. In all such circumstances we will make best endeavours to ensure there is no material difference.

## 16   Default

16.1   You are warned that, if at any time:

16.1.1   you have not provided any deposit, margin or other payment due in respect of any Customer Contract by the close of business on the Business Day next following the demand, or you have failed to comply with a request made by us; or

16.1.2   you have failed:

(i)   to make or take delivery of any property in respect of any Customer Contract at or by any the time such delivery is due under the terms of the Customer Contract or otherwise; or

(ii)   to pay any sums due under the Customer Contract at or by the time such payment is due; or

(iii)   to observe or perform any of the other provisions of any Customer Contract; or

(iv)   to meet, observe or perform any obligations, duties or provisions arising under any credit facility or similar arrangement granted by us to you; or

16.1.3   you have not, within two Business Days of us requesting that you do so, liquidated any debit balance on any of your accounts with us; or

16.1.4   an application for an interim order, where a voluntary arrangement is proposed, pursuant to section 253 of the Insolvency Act 1986 (or such other provision as may be from time to time in force) is made in respect of you, or if a bankruptcy petition is presented in respect of you or (if a partnership) in respect of one or more of the partners, or (if a company) a receiver, trustee, administrative receiver or similar officer is appointed over your undertaking or assets or any part of them, or an administration order is made with respect to you on the whole or any part of your assets (or any act analogous to any of those events occurs in any jurisdiction in which you are incorporated or resident); or

16.1.5   a petition is presented for the winding up of your business; or

16.1.6   an order is made or a resolution is passed for the winding up of your business (other than for the purposes of a bona fide reconstruction or amalgamation); or

16.1.7   you convene a meeting for the purpose of making or proposing or entering into any arrangement or composition for the benefit of your creditors (other than for the purposes of a bona fide reconstruction or amalgamation); or

16.1.8   any distress, execution or other process is levied against any of your property and is not removed, discharged or paid out within 7 days; or

16.1.9   any security by way of mortgage or charge created by you becomes enforceable and the mortgagee or the chargee takes steps to enforce the security; or

16.1.10   any indebtedness of you or any of your associates becomes immediately due and payable and is not extinguished within two Business Days of us serving notice on you pursuant hereto, or any indebtedness as aforesaid becomes

capable of being declared so due and payable, prior to its stated maturity, by reason of default and such default is not cured within two Business Days of us serving notice on you pursuant hereto, or you or any of your associates fail to discharge any indebtedness on its due date whether with you or any of our affiliated companies (other than a liability which you or any of your associates are then contesting in good faith) and such indebtedness is not discharged within two Business Days of us serving notice on you pursuant hereto; or

16.1.11   you are in breach of any representation or warranty made to, or any covenant entered into with us; or

16.1.12   you are in breach of any of the provisions of this Agreement; or

16.1.13   you are declared a defaulter for the purposes of the default rules of any exchange or clearing house; or

16.1.14   we reasonably consider it necessary or desirable for our own protection,

then we may without prejudicing any other rights we might have, take any one or more of the steps out in Clauses 17 to 19.

16.2    Any act effected in connection with or pursuant to a Customer Contract by us at a time at which any of the events specified in Clauses 16.1.1 to 16.1.14 inclusive above has occurred (whether or not we have knowledge thereof) shall be entirely without prejudice to our right to refuse any further performance thereafter, and shall not in any circumstances be considered as a waiver of that right or as a waiver of any other of our rights should any such event have occurred.

## 17    Consequences of default

If any of the events of default specified in Clause 16 above (except for the event of default specified in Clause 16.1.6) occurs we shall be entitled at our discretion and with or without prior notice to you to do any of the following: -

17.1    to close out all or any unperformed Customer Contracts notwithstanding that any date fixed for performance of all or any of you Contracts to be closed out may not have arrived; or

17.2    to invoice back all or part of any property standing to your credit or debit on any account with us; or

17.3    to realise or sub-pledge any securities or other of your assets held by us; or

17.4    to exercise or, if possible, abandon any option the subject of an open Customer Contract; or

17.5    to call any documentary credit, guarantee or indemnity provided by you or on your behalf; or

17.6    to retain (whether before or after the exercise of the right of set-off conferred upon us) on any current or other account with us monies standing to your credit until such time as all amounts you owe us have been ascertained, such amounts including, without limitation, any sum which is required to be certified by a recognised investment

exchange or recognised clearing house under Part VII of the Companies Act 1989, and pending the exercise or further exercise by us of our rights of set-off.

## 18   Exercise of Remedies

18.1   Where we exercise our right under Clause 17.1 to close out an unperformed Customer Contract we shall effect the closing out by making a matching (save as to price) but opposite Customer Contract with you for an amount of property equal to the amount bought or sold being closed out. The amounts payable under you Contract being closed out and the matching Customer Contract shall then be netted off and the only obligation thereafter of either us or you in respect of the closed out Customer Contract shall be our obligation or your obligation, as the case may be, immediately to pay the net amount. The price of the matching Customer Contract shall be the prevailing price for delivery of the property at the same time as delivery was due under the unperformed Customer Contract as of the date when we choose to effect the relevant closing out. We shall be entitled to choose the time of closing out at our absolute discretion.

18.2   Where we exercise our right under Clause 17.2 to invoice back property due to be delivered or transferred by or to your standing to your debit or credit in our books, we may commute our or your obligation (as the case may be) to make delivery of or transfer property, into an obligation to pay an amount in the currency in which payment is due from you to us or vice versa, equal to the market value (as determined by us in our absolute discretion) expressed in such currency of the relevant amount of property as at the date when we choose to effect the relevant invoicing back. We shall be entitled to choose the time of the invoicing back at our absolute discretion.

18.3   Where we exercise our right under Clause 17.3 hereof to realise any securities or other of your assets held by us we shall be entitled to sell or purchase those securities at the market price (as determined by us in our absolute discretion) at the time the sale or purchase takes place, and to convert any currency realised on such sale or purchase. We shall have the right to choose the time, place and method of such sale or purchase at our absolute discretion. Any costs of the sale will be borne by you.

## 19   Early Settlement

19.1   If any of the events of default specified in Clauses 16.1.4 or 16.1.5 occurs, we may by notice in writing to you require settlement of all open Customer Contracts to take place in accordance with Clause 19.2 below on the settlement date which for this purpose shall be the date on which such notice is given.

If the event of default specified in Clause 16.1.6 occurs, we and you will automatically become obliged to settle all open Customer Contracts in accordance with Clause 19.2 below on the settlement date which for this purpose shall be the first Business Day after the date of the order or resolution referred to in Clause 16.1.6.

19.2   Where settlement of all open Customer Contracts is to be made under Clause 19.1, no further payments or delivery shall be made in respect of an open Customer Contract maturing on or after the settlement date and each open Customer Contract shall immediately be settled by establishing the settlement amount in respect of that Customer Contract in accordance with Clause 19.3 below and by discharging the

-12-

settlement amount through its conversion into United States Dollars (if appropriate) and payment in the manner specified in Clause 19.4 below.

19.3 The settlement amount in respect of each open Customer Contract shall be calculated by us (whose calculation shall, in the absence of manifest error, be conclusive) as the difference between:

(i) the value of the Customer Contract at the contract price or, in the case of an option, at the premium ; and

(ii) its value at the market price or premium on the settlement date, as determined by us in our absolute discretion, having due regard to, among other prices, official settlement prices set by the relevant exchange or its clearing house (if any).

In the case of an open Customer Contract under which you are a buyer, the settlement amount calculated as above shall be positive if the value under Clause 19.3(i) above is lower than the value under Clause 19.3(ii) above and negative if it is higher than the value under Clause 19.3(ii). In the case of an open Customer Contract under which you are a seller, the settlement amount shall be negative if the value under Clause 19.3(i) above is lower than the value under Clause 19.3(i) above and positive if it is higher than the value under Clause 19.3(ii) above.

19.4 If the settlement amount calculated under Clause 19.3 above is positive, you will be entitled to receive the settlement amount. If the settlement amount is negative, you will pay the settlement amount to us on demand.

You and we agree that the settlement amount payable under this Clause 19 represents a reasonable pre-estimate of the loss which would have been suffered as a result of the occurrence of events specified in Clauses 16.1.4, 16.1.5 or 16.1.6 and is not a penalty. No proof or evidence of actual loss will be required in respect of the settlement amount.

19.5 You will give us notice of an event specified in Clauses 16.1.4 to 16.1.6 inclusive as soon as you become aware of its occurrence.

## 20   Default Remedies

### 20.1   Default Interest

If you default in paying any amount when due, interest will be payable by you to us on demand as follows:

#### 20.1.1   Accrual

Interest will accrue on such sum until you do pay it (before as well as after judgement).

#### 20.1.2   Rate of Interest

Such interest will be calculated at such rate as may be set out in any relevant special terms or other additional documents or, where not so set out, at the rate of 3% per annum above our cost of funding such default as certified by us. If such rate cannot be ascertained for any reason or is insufficient to compensate us for our loss or expense, as determined solely by us, such interest will be

calculated at the rate per annum conclusively determined by us to be equal to the loss of interest suffered by us or, as applicable, the cost to us at prevailing market rates of funding the amount of such default from such sources and for such periods as we may at our discretion and from time to time decide.

## 21    Exemptions from Liability and Indemnity

### 21.1    Extent of liability

Except to the extent that the same results from our or their negligence, wilful default or fraud, we, our directors, officers, employees and agents shall not be liable for:

(a)    any loss of opportunity whereby the value of any contracts purchased, held, sold or not purchased by us on your behalf or which we have advised you to purchase, hold, sell or not to purchase, might have been increased; or

(b)    any decline in the value of any contracts purchased, held or sold by us on your behalf or which we have advised you to purchase hold or sell howsoever arising; or

(c)    loss (including any taxation or increase in taxation incurred by you or for any failure to insure) resulting from any act or omission made under or in relation to or in connection with this Agreement or the services provided thereunder or as contemplated therein; or

(d)    acting or omitting to act as provided or contemplated in Clause 12 above; or

(e)    any delay or change in market conditions before any transaction is effected; or

(f)    for any errors of fact or judgment howsoever.

### 21.2    Limitation of exclusion

Nothing in this Agreement will exclude or restrict to an extent prohibited by FSA's rules any duty or liability we may have to you under the regulatory system (as defined in FSA's rules).

### 21.3    No liability for your errors

We shall not be liable to you for any loss you may incur as a result of any error by you or your representatives and agents in transmitting an order or an instruction to us.

### 21.4    Indemnity

You (and your personal representatives, successors and assigns, as the case may be) will indemnify us, our associates and our and their directors, officers, employees and agents (each in this sub-paragraph an "**Indemnified Party**") against any loss, liability, cost (including legal fees), claims and demands whatsoever which may be suffered or properly incurred by an Indemnified Party directly or indirectly in connection with or as a result of any service performed or action permitted under this Agreement or in the performance of the powers or duties of any such Indemnified Party or in connection with any claim, action, proceeding or investigation arising out of or in connection with this Agreement or any transactions hereunder (including in any such case any costs of

enforcing the same), except as caused by our and/or their gross negligence, wilful default or fraud.

Nothing in this Agreement will require you to indemnify or compensate us to any extent prohibited by FSA's rules.

### 21.5   Judgement Currency Indemnity

The obligation of each party to make payments in the currency in which they are due will be enforceable as an alternative or additional cause of action to the extent (if any) by which such actual receipt falls short of the full amount of the appropriate currency and will not be affected by judgement being obtained for any other sums due under this Agreement and/or any relevant transaction or contract.

## 22   Representations and Warranties

You represent and warrant to us and agree with us that the following are and will be true as of the date of these Terms of Business and on the date you accept any additional documents and as of the date of each order, contract or transaction:

### 22.1   Capacity

You have duly executed and delivered, and you have all requisite power, authority and approvals to enter into and perform your obligations under, this Agreement.

### 22.2   Authority

You have, and any person designated by you has, and you and they will at all times have, due authorisation to act in all respects in relation to this Agreement and each transaction and contract.

### 22.3   Licences and Consents

You have obtained and made and you will maintain in effect all necessary authorisations, consents or approvals, exemptions, licences, notifications and filings and you will comply with the terms of the same and with all applicable law.  You will provide us with copies or other proof of the same as we may reasonably require. No other action by or in respect of, or filing with, any governmental body, agency or official is required in connection with the execution, delivery and performance referred to in Clause 22.1 above.

### 22.4   Validity

This Agreement and each transaction or contract is your valid and legally binding obligation, enforceable against you in accordance with its terms except for the effect of bankruptcy, insolvency, reorganisation, moratorium and other similar laws relating to or affecting creditors' rights generally and to general equitable principles.

### 22.5   Violations

Your execution, delivery and performance of this Agreement and each transaction or contract does not and will not violate, contravene, conflict with or constitute a default under any provision of your Memorandum and Articles of Association (or equivalent constituent documents) or any law, regulation, rule, decree, order, judgement or charge, contract, trust deed or other instrument binding on you or any of your assets.

### 22.6   Other statements by us

In relation to your acceptance of this Agreement, we have not made, and you are not relying upon, any statements, representations, promises or undertakings whatsoever that are not contained herein.

### 22.7   Provision of Information

You will provide us promptly upon request with a copy (certified or notarised where we reasonably so request) of all such documents referred to in Clause 22.3 and 22.5 above and all such other information (and verification thereof) as we may reasonably require from time to time.

### 22.8   Taxation

You will inform us in writing if any acts or omissions of ours contemplated by this Agreement could adversely affect your taxation position. In the absence of any such written notice, we will assume that there are no such constraints on our services under this Agreement.

### 22.9   Absence of security

You confirm and undertake to us that, subject to this Agreement, and unless we otherwise agree, your account is, and all cash and investments therein and all rights in relation thereto are, and will be, so long as this Agreement is in force, free from any charge, lien, pledge, encumbrance or other security interest and beneficially owned by you.

### 22.10  Accuracy of statements made

You confirm that any information given to us is complete, accurate and not misleading.

## 23   Overseas business

We may conduct designated investment business with or for you or give an introduction or advice, or make arrangements, with a view to overseas brokers or other third parties carrying on designated investment business from an office outside the United Kingdom. Designated investment business may include transactions executed by us or such parties on overseas exchanges. In such cases, the regulatory regime applying, including any compensation arrangements, may be different from that of the United Kingdom.

## 24   General

### 24.1   Commencement

This Agreement shall take effect upon our receipt of all the necessary documents we require.

### 24.2   Amendment

#### 24.2.1   Amendment by us

We may amend this Agreement by sending you written notice of the amendments, or a revised Agreement. We will give you at least 10 business

days (as that term is defined in FSA's rules) notice of any change before conducting designated investment business with or for you on the amended terms unless it is impracticable in the circumstances to do so.

### 24.2.2   Amendment by you

You will notify us in writing from time to time of any changes to your investment objectives and restrictions. Such amendment will only take effect upon receipt by our employee dealing with your account provided that we shall have a reasonable time to react to such notification. We shall not be obliged to follow any amended investment objectives or restrictions of yours which in our reasonable opinion are unlawful, or not reasonably capable of being given effect or are outside the normal scope of our business. We shall use reasonable endeavours to give you prompt notice of our rejection of your instructions and shall have no responsibility to you for such rejection.

Any other alteration which you may wish to make to this Agreement must be agreed in advance by us in writing.

## 24.3   Termination

### 24.3.1   Power to terminate

Either party may terminate this Agreement without penalty by giving the other party written notice. The minimum period of notice which must be given for this purpose is 30 days.

### 24.3.2   Effect of termination

Termination shall be without prejudice to the completion of transactions already initiated and will not affect outstanding rights (including our right to collateral) or actual, future or contingent liabilities and this Agreement will apply to these rights and liabilities until all transactions and contracts have been closed out, settled or delivery effected and all liabilities finally, unconditionally and irrevocably discharged.

Transactions already initiated shall be settled in the normal way except to the extent that this Agreement provides for close out of transactions whether automatically or at the option of either party and (if at the option of a party, that party has exercised such option). To such extent, transactions shall be dealt with in accordance with those close out provisions.

### 24.3.3   Survival

Termination will not affect any provision of this Agreement which is intended to survive termination.

## 24.4   Incidental matters

We may do whatever we consider necessary or desirable for or incidental to the provision of our services.

24.5   Market Custom etc.

We shall be entitled, at any time and from time to time and without notice to you, to take any action we think appropriate to ensure compliance with, and shall not be required to take any action in violation of, the rules and customs of the exchange, market and/or any clearing house or clearing system from time to time in force (**"applicable rules"**) through which any transaction is executed so that if there is any conflict between the provisions of this Agreement and the applicable rules the latter will prevail. Whatever we do or do not do to comply with applicable regulations shall be binding on you.

24.6   Laws and regulations

We shall be entitled, at any time and from time to time and without notice to you to take any action we think appropriate to ensure compliance with, and shall not be required to take any action in violation of, any laws, rules and/or regulations of any jurisdiction (**"applicable regulations"**) so that if there is any conflict between the provisions of this Agreement and the applicable regulations the latter will prevail. Whatever we do or do not do to comply with applicable regulations shall be binding on you.

24.7   Entire Agreement

This Agreement supersedes any previous written or oral agreement between the parties in relation to the matters dealt with in this Agreement and, except as expressly stated, contains the entire agreement between the parties relating to the subject matter of this Agreement at the date hereof to the exclusion of any terms implied by law which may be excluded by contract. You acknowledge that you have not been induced to enter into this Agreement by any representation, warranty or undertaking not expressly incorporated into this Agreement. So far as permitted by law and except in the case of fraud, you agree and acknowledge that your only rights and remedies in relation to any representation, warranty or undertaking made or given in connection with this Agreement shall be for breach of the terms of this Agreement, to the exclusion of all other rights and remedies (including those in tort or arising under statute). For the avoidance of doubt, in this Clause 24.7 **"this Agreement"** includes all documents entered into pursuant to this Agreement.

24.8   Assignment

24.8.1   Right to Assign

(i)   Assignment by us

We may assign this Agreement to any person or associate without your consent, provided that we give you at least seven business days prior written notice.

(ii)   Assignment by you

Your rights under this Agreement are personal to you and not capable of assignment

24.8.2   Successors and assigns

The obligations under this Agreement bind, and the rights will be enforceable by, you and us and our respective successors, permitted assigns and personal representatives.

## 24.9   Waiver of immunity

To the extent that you may be entitled in any jurisdiction to claim for you, or for your property or assets, immunity in respect of your obligations under this Agreement from service of process, jurisdiction, suit, judgement, execution, attachment (whether before judgement, in aid of execution or otherwise) or legal process or to the extent that in any such jurisdiction there may be attributed to you or to your property or assets such immunity (whether or not claimed), you hereby waive such immunity to the fullest extent permitted by the laws of such jurisdiction.

## 24.10   Confidentiality and Disclosure of information

### 24.10.1   Confidentiality

We and you will each treat as confidential (both during and after the termination of the relationship between you and us) any information learned about the other, its investment strategy or holdings or its products or services in the course of the relationship under this Agreement and, except in accordance with Clause 24.10.2 (Permitted Disclosure) below, will not disclose the same to any third party without the other's written consent.

### 24.10.2   Permitted Disclosure

We are authorised by you, either during or after termination of our relationship hereunder, to do anything or disclose any matters which we consider to be required by, or desirable in relation to, any law, rule or regulation or authority in any part of the world.

### 24.10.3   Data Protection

You warrant that you will ensure that all of your employees, agents and sub-contractors are aware of, and consent to, the use of their personal data by us or our affiliates for the purposes of this Agreement, including the use of personal data for regulatory purposes and the transfer of data to non-EEA countries.

## 24.11   Severability

Each provision of this Agreement is severable and if any provision becomes invalid, void, voidable or unenforceable or contravenes any applicable regulations the remaining provisions will not be affected.

## 24.12   Time of the Essence

Time shall be of the essence in relation to the performance of all obligations under this Agreement.

## 24.13   No Waivers

The failure to exercise or delay in exercising a right or remedy under this Agreement shall not constitute a waiver of the right or remedy or a waiver of any other rights or

remedies and no single or partial exercise of a right or remedy under this Agreement shall prevent any further exercise of the right or remedy or the exercise of any other right or remedy.

### 24.14 Force Majeure

We shall not be liable for taking or not taking and shall not be obliged to take or refrain from taking any action which it is beyond our power to take or refrain from taking wholly or partly as a result of a state of affairs (including any change of applicable regulations or any directive or policy whether in the United Kingdom or elsewhere) which it was beyond our control to prevent and the effect of which is beyond our power to avoid.

We will not be liable to you for any delay in performance, or for the non-performance of any of our obligations hereunder by reason of any cause beyond our reasonable control, or for any losses caused by the occurrence of any contingency beyond our reasonable control. This includes without limitation any breakdown or failure of transmission, communication or computer facilities, postal or other strikes or similar industrial action and the failure of any relevant exchange, clearing house and/or broker for any reason to perform its obligations.

### 24.15 Complaints

If you have a complaint about us you should raise it in the first instance with our employee acting for you. If you are not satisfied with the response of our employee (or if you prefer not to raise the matter with our employee) you may raise the matter with our compliance officer.

## 25 Notices

### 25.1 Form

Any notices, instructions, demands, confirmations, contract notes or requests ("Notices") may be given orally unless required in writing by this Agreement. References to writing include electronic mail.

### 25.2 Method of transmission

Any Notice in writing may be given as follows:

(a) by posting (first class or, where appropriate, by air mail) and it will be deemed delivered seven Business Days after posting. Proof that the Notice was correctly addressed and was posted first class or, where appropriate, air mail will be sufficient proof of delivery;

(b) by delivering and it will be deemed delivered upon delivery. Proof that it was delivered to the correct address will be sufficient proof of delivery;

(c) by sending by telex, facsimile transmission or any other instantaneous electronic transmission and it will be deemed delivered upon transmission. Proof that it was transmitted to the correct number or destination and the proper answer back was received (in the case of telex) will be sufficient proof of delivery; or

(d)   by sending by electronic mail and it will be deemed delivered 12 hours after transmission.  Proof that it was sent to the correct electronic mail address will be sufficient proof of delivery.

### 25.3   Conclusivity

Any contract note, confirmation, account or other statement which we give in writing will, in the absence of manifest error, be deemed correct, conclusive and binding on you if not objected to in writing within five Business Days of despatch by us.

## 26   Governing Law and Jurisdiction

### 26.1   Governing Law

This Agreement is governed by, and shall be construed in accordance with, the Laws of England.

### 26.2   Jurisdiction

Both parties irrevocably agree that the courts of England are to have jurisdiction to settle any dispute which may arise out of this Agreement and that, accordingly, any proceedings arising out of this Agreement may be brought in such courts. Both parties irrevocably submit to the jurisdiction of such courts and waive any objection to proceedings in any such court on the grounds of venue or on the grounds that the proceedings have been bought in an inconvenient forum. Your submission is made for our benefit and our submission is made for your benefit and shall not limit the right to take proceedings in any other court of competent jurisdiction nor shall the taking of proceedings in one or more jurisdictions preclude the taking of proceedings in any other jurisdiction whether concurrently or not.

### 26.3   Consent to choice of jurisdiction

If you are domiciled in Luxembourg, you confirm that you specifically and expressly consent to Clause 26.2 (Jurisdiction) above for the purposes of Article 1135-1 of the Civil Code and Article 1 of the Protocol annexed to the Convention on Jurisdiction and the Enforcement of Judgements in Civil and Commercial Matters signed in Brussels on 27th September, 1968.

Signed:

### 26.4   Appointment of Process Agent

You irrevocably agree that in the event that we are required to serve process on you in connection with any proceedings hereunder: (i) you shall not attempt to avoid or obstruct the service of process upon you by us or our employees or any agents of any such process and shall co-operate with us or our agents or employees, as the case may be, in the service of such process, (ii) you shall indemnify in full and hold us harmless against any and all losses, costs and expenses as a result whether directly or indirectly, of your failure to appoint a process agent. You irrevocably consent to any process in any proceedings anywhere being served in accordance with the provisions of this

agreement relating to the service of notices. Service shall become effective 21 days after despatch.

Nothing in this Agreement shall affect the right to serve process in any other manner permitted by law.

In witness whereof the parties have executed this Agreement the day and year first above written:

ED & F MAN COMMODITY ADVISERS LIMITED

By:

Name:          T. SLACK            Name:          IGOR PLACET

Title:          DIRECTOR           Title          DIRECTOR

~~COMPANY~~ CANE INTERNATIONAL CORP. LTD.

By: CANE INTERNATIONAL CORPORATION LTD.

Name: MANOEL FERNANDO GARCIA     Name:

Title: ATTORNEY-IN-FACT          Title:

## Schedule 1
## Interpretation

In these Terms of Business:

(a)   Unless the context otherwise requires, words importing the singular shall be deemed to include the plural and vice versa.

(b)   References to "we" are to ED&F Man Commodity Advisers Limited and related terms shall be construed accordingly.

(c)   References to "you" are to Cane International Corp. Ltd..

(d)   "This Agreement" and "Customer Agreement" shall mean the agreement between us and you and either contained in or evidenced by these Terms of Business or any other relevant documents or covering letter.

(e)   "Customer Contract" shall mean any specific transaction entered into or dealing from time to time between us and you.

(f)   "Business Day" shall mean any day which is not a Saturday or Sunday, Christmas Day, Good Friday or a bank holiday in the United Kingdom.

(g)   "event of default" means any of the events listed in Clause 16.1.