IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Fluxo-Cane Overseas Ltd.,

    Plaintiff,

v.

E.D. & F. Man Sugar Inc., et al.,

    Defendants.

Case No. 08-cv-356 (WDQ)

**ED & F MAN SUGAR INC.'S OPPOSITION TO FLUXO-CANE
OVERSEAS LTD.'S MOTION FOR RECONSIDERATION**

Defendant ED & F Man Sugar, Inc. ("Man"), through undersigned counsel, respectfully submits this response to the motion to reconsider filed by Plaintiff Fluxo-Cane Overseas Ltd.'s ("Fluxo-Cane") (Docket No. 53), which asks this Court to reconsider its ruling denying Fluxo-Cane's motion for summary judgment.

### INTRODUCTION

Fluxo-Cane asks this Court to reconsider its summary-judgment ruling on six grounds. Fluxo-Cane presented most of these arguments previously in the extensive summary judgment briefing submitted before this Court denied the parties' cross-motions for summary judgment. Fluxo-Cane's arguments continue to be erroneous and none warrants reconsideration of the Court's summary-judgment ruling. The dispositive legal and factual issues are disputed. In the light of this Court's summary-judgment ruling, none is ripe for summary determination as a matter of law. This Court should therefore deny Fluxo-Cane's motion for reconsideration. Furthermore, the Court has scheduled the pre-trial conference later this month. The proper course is for Fluxo-Cane to try its claims on the merits once the Court has set a trial date.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure set a high threshold for motions for reconsideration. Under Fed. R. Civ. P. 59(e), a court may grant a motion for reconsideration only to: (a) accommodate an intervening change in controlling law; (b) account for new evidence previously unavailable; or (3) correct a clear error of law or prevent manifest injustice. *See Johns Hopkins Univ. v. Datascope Corp.*, 513 F. Supp. 2d 578, 585 (D. Md. 2007) (citing *Bogart v. Chapell*, 396 F.3d 548, 555 (4th Cir. 2005)).

## ARGUMENT

### A. *Fluxo-Cane Misstates the Meaning of Fed. R. Civ. P. 44.1, Which Expressly Envisions The Taking of Testimony.*

Fluxo-Cane first argues that, under Fed. R. Civ. P. 44.1, this Court should have decided issues of foreign law on summary judgment, rather than at trial. (*See* Fluxo-Cane's Mem. in Support of Motion for Reconsideration ("Recon. Mem.") at 3.) The third sentence of Fed. R. Civ. P. 44.1 cited by Fluxo-Cane states, however, that the Court's determination of foreign law "shall be treated *as a ruling* on a question of law," and not of fact. (Emphasis added.) This sentence does not require, as Fluxo-Cane suggests, that all cases involving foreign law must be decided on summary judgment, rather than adjudicated at trial. It simply means that, *for appellate purposes*, decisions by district courts on matters of foreign law are conclusions of law subject to *de novo* review, not findings of fact subject to clearly-erroneous review.

That meaning is unmistakable in the light of the advisory committee notes to Fed. R. Civ. P. 44.1, which state, in relevant part, that "[u]nder the third sentence, the court's determination of an issue of foreign law is to be treated as a ruling on a question of 'law,' not 'fact' so that appellate review will not be narrowly confined by the 'clearly erroneous' standard of Rule 52(a)." *See* Fed. R. Civ. P. 44.1, advisory comm. note to 1966 adoption. The fact that the third

sentence refers only to the appellate standard of review is made clear by the second sentence of Fed. R. Civ. P. 44.1, which states that "[i]n determining foreign law, the court may consider any relevant material or source, *including testimony*, whether or not submitted by a party or admissible under the Federal Rules of Evidence" (emphasis added). Thus, Fed. R. Civ. P. 44.1 expressly envisions the taking of testimony, if appropriate, in determining any issue of foreign law.

The single Fourth Circuit case cited by Fluxo-Cane, *SEC v. Dunlap*, 253 F.3d 768, 777 (4th Cir. 2001), shows that Fed. R. Civ. P. 44.1 is not related to summary adjudication and actually directs the trial court to make findings that could be made only during a trial or hearing. In *Dunlap*, the Court of Appeals remanded the action back to the district court for a hearing on the issue of the impact of Costa Rican law because the trial court had failed to make findings with respect to that issue. *Dunlap*, 253 F.3d at 777. In so doing, the Court interpreted the third sentence of Fed. R. Civ. P. 44.1, consistently with the advisory committee note, to mean that district court decisions are "subject to de novo review on appeal." *Id.* In addition, the Court interpreted the second sentence of Fed. R. Civ. P. 44.1 as actually requiring findings through use of testimony or other "relevant material or source." *Id.* In sum, the third sentence of Fed. R. Civ. P. 44.1, contrary to Fluxo-Cane's assertions, merely sets forth the procedural posture for review on appeal; it does not govern this Court's adjudication of any foreign-law issue.

### B. *Man is a Proper Assignee.*

Fluxo-Cane next argues that the assignment was invalid under English law. This is a new argument—one that Fluxo-Cane did not present in its Motion for Summary Judgment. (*See* Mem. in Support of Fluxo-Cane's Motion for Summary Judgment; Docket No. 31). For this

3

reason alone, this Court should not permit Fluxo-Cane to raise this issue by way of motion for reconsideration.

Even if this Court were to consider this argument, however, Fluxo-Cane is wrong as a matter of law. In its summary-judgment filings, Man submitted the declaration of its London solicitor Michael Swangard to explain that the distinction between legal and equitable assignment relates only to enforcement and is necessary to avoid the double jeopardy that would result if a debtor were sued twice by both the assignor and assignee. (*See* Decl. of Michael Swangard, ¶¶ 9-11, attached as Ex. 1 to Man's Reply; Docket No. 41.) Fluxo-Cane responded by seeking and receiving leave to file a sur-reply memorandum. In that memorandum Fluxo-Cane again did not assert this argument.

In its motion for reconsideration, however, Fluxo-Cane now suggests that *Deposit Protection Board and Another v. Barclays Bank Plc*, [1994] 2 AC 367 (House of Lords and Court of Appeal) sets forth some "basic propositions" regarding equitable assignments that should have been considered on summary judgment. (Recon. Mem. at 3-5.) Based on these purported "basic propositions," Fluxo-Cane suggests that this Court should reconsider its summary-judgment ruling.[1] In a supplemental declaration, Mr. Swangard has explained the error in Fluxo's latest submission. *See* Supplemental Declaration of Michael Swangard ("Supp. Swangard Decl.."), attached as Ex. 1 hereto.

First, Fluxo-Cane selectively and incompletely quotes the "basic propositions." Supp. Swangard Decl. ¶ 7. Specifically, Fluxo-Cane omits the fourth proposition, which states:

---

[1]   Fluxo-Cane also cites a few United States decisions concerning the ability of equitable assignees to bring causes of action. (*See* Fluxo-Cane's Recon. Mem. at 5). Insofar as this Court has already ruled that English law concerning equitable assignments is controlling, those decisions are irrelevant.

> Once notice of an equitable assignment has been given to the debtor, he cannot deal inconsistently with the assigned interest for instance making payment to the assignor. *Id.*

This is a significant, indeed telling, omission. It refutes Fluxo-Cane's assertions. As Mr. Swangard notes, "the fourth proposition makes clear that upon receiving notice of the equitable assignment, the Debtor must pay the Assignee not the Assignor." *Id.* ¶ 8. This rule confirms the validity and enforceability of MCA's equitable assignment to Man.

Second, Fluxo-Cane ignores controlling English case law that "confirm[s] the validity of equitable assignments." Supp. Swangard Decl. ¶ 9. Mr. Swangard cites *Central Ins. v. Seacalf Shipping Corp. (The Ailos)*, [1983] 2 LLR 25 (Ct. App.), supporting the proposition that Man has an unconditional right to sue on the assigned obligation. Supp. Swangard Decl. ¶ 3. In that case, Lord Justice Oliver considered whether an assignor was required to be joined in circumstances when the parties disputed whether certain documents were effectively assignments. *Central Ins.*, [1983] 2 LLR at 32-34 (attached as Supp. Swangard Decl. Ex. B). In his judgment Lord Justice Oliver found joinder of the assignor to be a "purely procedural requirement" (*id.* at 34) that could be dispensed with at the discretion of the court and which had no impact on the validity of the underlying claim.

The following quotation from Lord Justice Oliver's judgment demonstrates that under English law the joinder of an assignor is not a precondition of the right equitably assigned to the assignee:

> [T]he insistence upon joinder of the assignor under an equitable assignment as a party ... is dictated simply by the desirability of having him before the court and thus bound by the order. *It is not because his presence as a plaintiff is essential to the prosecution by the assignee of the cause of action assigned to him. The purpose of joining him is equally well served by his being a defendant and, indeed, if he refuses to join as plaintiff, he can and should be made a defendant simply in order to be bound by the result.*

5

*Central Ins.*, [1983] 2 LLR at 32 (emphasis added)

\* \* \*

> [T]here is a long-standing practice that, before giving judgment in an action at the suit of an equitable assignee, the court will normally require him to bring his assignor before the court is beyond doubt. *But it does not follow from that there is no cause of action vested in the assignee and capable of being asserted by him alone or, indeed, that the assignor has in all cases, and necessarily, to be a party. The reason for the requirement is not that the assignee has no right which he can assert independently, but that the debtor ought to be protected from the possibility of any further claim by the assignor who should therefore be bound by the judgment.*

*Id.* at 33 (emphasis added). The purported need to join MCA, "a purely procedural requirement" ([1983] 2 LLR at 34), viewed in the light of English procedural rules (Supp. Swangard Decl. ¶ 10), is of no moment because Man and MCA have consistently disavowed any intention to collect from Fluxo-Cane twice and this Court could always wield its equitable power to ensure that result were it ever necessary for it to do so. Furthermore, the governing procedural rules are those of this Court, where Man has exercised its set-off right, not those of the English court, where Man is not enforcing its set-off right. In the light of the equitable assignment in favor of Man, the real party in interest, in accordance with Fed. R. Civ. P. 17(a), is Man, not MCA. Fluxo-Cane has also never asserted that MCA is a necessary party whose joinder would be required under Fed. R. Civ. P. 19(a).

Mr. Swangard also cites persuasive authority (like *Snell's Equity*) noting that equitable assignees have the substantive and procedural right to assert causes of action on their own behalf. Supp. Swangard Decl. ¶ 11. Specifically, paragraph 3.20(b) of *Snell's Equity* (31st ed.) reaffirms that there is only a "procedural" requirement of including both assignor and assignee and that courts do not view the failure to include either entity as a "nullity." This approach is consistent

6

with the description of equitable assignments provided by Mr. Swangard in his first declaration. (*See* Swangard Decl. ¶¶ 9-11, attached as Ex. 1 to Man Sugar's Reply; Docket No. 41.)

Finally, as noted, there can be no risk of prejudice to Fluxo-Cane because Man has consistently said Fluxo-Cane will be credited in the English action with the amount of any set-off realized by Man in any final judgment (following appeal, if any) in the U.S. proceedings. *See* Supp. Swangard Decl. ¶ 11. To the extent this might ever present a true concern, Man and MCA will execute a suitable stipulation to that end. *Id.* In accordance with *Central Ins.*, [1983] 2 LLR at 32-34, and this Court's equitable powers, that is all that could possibly be required. In sum, English case law and persuasive secondary authority demonstrate that an equitable assignee has the substantive right to maintain causes of action on the assigned obligation on its own behalf—and here, in all events, there is and will be no risk of prejudice to Fluxo-Cane.

### C.     *The Declaration of Trust Was Necessary Because of the Partial Assignment.*

Fluxo-Cane also repeats an argument made previously concerning the description of the assignment as a "declaration of trust." (*See* Recon. Mem. at 5-6.) Specifically, Fluxo-Cane disputes Mr. Swangard's explanation of how the description of the assignment as a "declaration of trust" reflects English procedural law concerning partial assignments. *Id.*

This is the second time that Fluxo-Cane has addressed Mr. Swangard's opinion without providing any support for any alternative rule. Fluxo-Cane sought and received leave to file a sur-reply to address this point, but in that sur-reply it provided only a one-paragraph argument directed to that point that included no authority. (*See* Fluxo-Cane's Sur-Reply to Man's Motion for Summary Judgment at 4-5.) Now, Fluxo-Cane now attempts to raise this issue in its motion for reconsideration—once again without supporting authority.

To the extent this Court requires additional authority, *Snell's Equity* (31st ed.) confirms Mr. Swangard's statements. It recognizes that "a bare legal trust is one which property is invested in one person on trust for another, the nature of the trust imposing no active powers of management on the trustee." (Snell's Equity, ¶ 19.11, attached as Supp. Swangard Decl. Ex. C.) This is the trust relationship that is being referred to in the English action.

D. *Fluxo Cane Has Offered No New Arguments for Why It Believes The Debt Is Not Liquidated for Purposes of Set-Off.*

Fluxo-Cane has already presented its arguments as to why it believes Man's set-off is not liquidated. (*See* Fluxo-Cane's Motion for Summary Judgment at 9-10; Fluxo-Cane's Opposition to Man's Motion for Summary Judgment at 14-16.) Man has likewise explained why the debt is liquidated for set-off purposes. (*See* Man Sugar's Motion for Summary Judgment at 14-17; Man Sugar's Reply in Support of Motion for Summary Judgment at 11-13.) As Fluxo-Cane has presented no new argument on this issue, reconsideration is unwarranted. To the extent necessary, Man respectfully refers this Court to Man's submissions in the summary-judgment briefing and the Court's decision (*See* Memorandum Opinion at 12).

E. *Fluxo-Cane Has Identified No Conflict of Law Warranting Reconsideration of the Conversion Claim.*

This Court rejected Fluxo-Cane's conversion claim based on the fact that Fluxo-Cane did not possess title to the sugar at the time that Man allegedly converted it. (*See* Memorandum Opinion at 13 to 15 and n.7 (applying the Domino Rules incorporated into the parties' purchase-and-sale contract)).[2] Fluxo-Cane has identified no conflict of law warranting a finding that the

---

[2] A copy of the Domino Rules are attached as Exhibit 8 to the Affidavit of Luis P. Cipriani, which Fluxo-Cane filed with its Motion for Summary Judgment.

8

application of federal general maritime law or the common law of a state other than Maryland would require a different result, i.e., afford a party such as Fluxo-Cane a right to claim conversion of a chattel it did not own. Fluxo-Cane identifies no difference between relevant Maryland and New York law, nor does it explain why federal maritime law would govern payment and set-off rights in the non-maritime purchase-and-sale contract at issue here. Moreover, in its Opposition to Man's Motion for Summary Judgment, Fluxo-Cane cited to only one case – *Fleet Capital Corp. v. Yamaha Motor Corp.*, USA, 2002 WL 31174470 (Sept. 26, 2002) – and that court actually applied the law of New York in adjudicating the conversion claim. (Fluxo-Cane's Opposition to Man's Motion for Summary Judgment at 16.) As previously explained, the common-law rule that a party cannot claim conversion in respect of a chattel to which it does not have title is one of widespread application, regardless of which state law applies. (*See* Man's Reply to Motion for Summary Judgment at 14-15.)

In addition, the N.Y.U.C.C. provisions newly cited by Fluxo-Cane (§§ 2-507(2) and 2-702)) (*see* Recon. Mem. at 7-8) are irrelevant. Fluxo-Cane did not have a right to repossess the sugar, it did not seek to repossess the sugar, and Man in all events did not convert the sugar to which it acquired title once the MV *Tina Litrico* lifted the sugar at the Brazilian loading port. Among other things, Fluxo-Cane continues to ignore the fact that in accordance with the FOB Brazilian port terms of the purchase-and-sale contract, Man was responsible for chartering the *Tina Litrico* to take delivery of the sugar at the Brazilian loading port. At Man's direction the vessel duly lifted the sugar at the Brazilian loading port—thereby transferring possession and title to the sugar to Man. Fluxo-Cane, in short, never controlled or had a right to control either the *Tina Litrico* or the sugar after the sugar was loaded on board Man's-chartered vessel in Brazil.

### F.   *There Is No Manifest Injustice In This Case Warranting Reconsideration.*

Of the three bases upon which a court may grant reconsideration, *see Johns Hopkins*, 513 F. Supp. 2d at 585 (citing *Bogart*, 396 F.3d at 555), Fluxo-Cane argues only the existence of a "manifest injustice." (Recon. Mem. at 8-9.) Far from establishing any injustice, much less at this summary-judgment stage, Fluxo-Cane misstates the limited nature of the English Court's decision denying the motion for summary judgment filed by ED & F Man Commodity Advisors ('MCA") and Man in the English action. As Mr. Swangard's first declaration notes, the summary-judgment ruling in the English action, now appealed by MCA and Man (with the Court of Appeal decision expected presently), concerns a narrow issue relating to whether the parties agreed to defer the liquidation of Fluxo-Cane's futures account with MCA for a 24-hour period. (*See* Declaration of Michael Swangard ¶¶ 9-11, attached as Ex. 1 to Man Sugar's Reply, at 4-6.) Fluxo-Cane's latest submissions continue to misstate events in London. *See* Supp. Swangard Decl. ¶¶ 13-15. Furthermore, Man has never "conceded it owes" money to Fluxo-Cane. (Recon. Mem. at 8-9.) Rather, Man has always asserted that it owes Fluxo-Cane nothing because Fluxo-Cane's claim for the balance of the purchase price of the sugar have been lawfully set-off.

## CONCLUSION

For these reasons, Man respectfully urges this Court to deny Fluxo-Cane's Motion for Reconsideration. The action should proceed to trial in accordance with the Court's scheduling orders.

Respectfully submitted,

_____/s/_____
Robert A. Gaumont
DLA Piper LLP (US)
6225 Smith Avenue
Baltimore, Maryland 21209

Stanley McDermott III
(admitted *pro hac vice*)
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, NY 10020-1104

Attorneys for Defendant,
E.D. & F. Man Sugar Inc.