Accordingly, with very considerable diffidence in view of the great experience in these matters of the learned umpire and the learned Judge, and with every desire to give full weight to the reasons given by Lord Justice Greer in *Monroe Bros. Ltd. v. Ryan* at pp. 181 and 35 why the drafting of charter-parties hardly accords with what those trained in other disciplines of law would expect, I would hold that the owners are protected by cl. 13 against liability in damages for breach of the warranties in cl. 26, and I would accordingly allow this appeal.

**Sir DENYS BUCKLEY:** I also would allow this appeal, and would do so for the reasons given in the judgment of Sir John Donaldson, M.R.

[*Order: Appeal allowed with costs in this Court. Each side to pay their own costs below. Application for leave to appeal to the house of Lords granted.*]

## COURT OF APPEAL
Feb. 1 and 2, 1983

---

CENTRAL INSURANCE CO. LTD.
v.
SEACALF SHIPPING CORPORATION

(THE "AIOLOS")

Before Lord Justice ACKNER and
Lord Justice OLIVER

Practice — Leave to amend — Subrogation — Insurers settled claim for short delivery — Insurers sued carriers in own name — Writ and summons struck out — Whether amendment to include all insured buyers should be allowed — Whether action reasonably arguable and therefore ought not to be struck out.

The plaintiff insurers effected in 1978, with 28 Taiwanese buyers, 30 policies of insurance covering quantities of soya bean meal which had been consigned to the buyers on board the defendants' vessel *Aiolos* and which were the subject matter of 30 separate bills of lading which were subject to the Hague Rules, art. III, r. 6 of which provided inter alia:

> In any event the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods . . .

The total quantity loaded was 18,923.245 tonnes but on discharge at destination in April, 1978, the cargo was found to be 682.901 tonnes short and the plaintiffs settled the claim brought by the buyers. They obtained from each buyer a formal document which was headed "Loss Subrogation Receipt" which acknowledged the receipt of the insurance money and stated inter alia:

> In consideration of this payment we hereby relieve [the plaintiffs] . . . from any liability in regard to such loss and abandon to [the plaintiffs] . . . all our rights title and interest in the . . . goods. We also undertake and agree to allow any proceedings to be taken in our name in respect of the loss . . . of the . . . goods . . . and to assist in such proceedings in any form that may be required of us.

On June 28, 1979, an extension of time having been granted until July 3, 1979, the plaintiffs issued a writ in rem the only claim endorsed on the writ being the plaintiffs' claim for 8,127,681 Taiwanese dollars, being the amount due to the plaintiffs from the defendants in respect of rights of subrogation under contracts of insurance. A statement of claim was served on Aug. 20, 1979. No title to sue appeared on the face of the pleadings although the plaintiffs specifically pleaded their subrogation rights.

On Oct. 5, 1979, the defendants served their defence and expressly denied that the plaintiffs had title to sue the defendants.

On Oct. 30, 1980, the defendants applied to strike out the writ and statement of claim. The Admiralty Registrar granted the application.

On Dec. 5, 1980, the plaintiffs gave notice of appeal and also notified their intention of seeking leave to reamend their writ and amend the statement of claim to add the 28 buyers entitled to the 30 policies as plaintiffs and the addition of (i) a claim by the plaintiffs as assignees of the rights of the cargo-owners and (ii) claims for damages in the alternative by the 28 buyers.

———*Held*, by SHEEN, J., that the application to amend would be refused and the plaintiffs' appeal dismissed.

On appeal by the plaintiffs:

———*Held*, by C.A. (ACKNER and OLIVER, L.JJ.), that (1) the learned Registrar was right to order the claim to be struck out since it was not seriously argued that the only way in which that claim could be exerted was by action in the name of the insured; any claims which the insured themselves had were clearly now long since barred by art. III, r. 6 of the Hague Rules, for "suit" in the rules meant relevant suit, i.e., one in which the right to sue was vested in the plaintiffs; the right of subrogation entitled the insurer to call upon the insured to permit his name to be used in a suit for the benefit of the insurer but it did not vest the cause of action in him; an amendment which joined the insured as parties so that they could assert their right of action and which had the effect of relating that assertion back to the date of the original writ had the effect of depriving the defendants of a vested right to plead that the claim was time barred under r. 6 and could not on ordinary principles be allowed (*see* p. 30, col. 2);

(2) the learned Judge was right to refuse leave to amend under R.S.C., O. 20, r. 5 (2) and (3); here there was no error either as to the name or as to the identity of the party which fell to be corrected but simply an error of law as to the rights possessed by the correctly identified party and O. 20, r. 5 (3) did not extend to that sort of error and the application under this rule failed (*see* p. 30, col. 2; p. 31, col. 1);

(3) on the evidence the receipt arguably was an effective assignment in Taiwanese law (*see* p. 32, col. 1);

(4) if it were essential to have the buyers before the Court they could quite properly be joined as defendants without that joinder having the consequences of depriving the defendants of the right which had accrued to them of resisting the claim by relying on art. III, r. 6 of the Hague Rules (*see* p. 32, col. 1);

(5) subrogation was concerned solely with the mutual rights of the parties to a contract of insurance and it conferred no right and imposed no liability on any third party; it was not itself and did not create a cause of action against the debtor and to succeed the plaintiff had to prove that he had the right to make the claim; the reference to subrogation did not of itself show that the right to bring the action was not vested in the plaintiff; it merely failed to demonstrate that it was so vested (*see* p. 33, col. 1);

(6) there could be no doubt at all about what the claim was that was being asserted and what was missing from the statement of claim and what made it demurrable and liable to be struck out was any allegation of fact showing how the cause of action became vested in the plaintiffs (*see* p. 33, col. 1);

(7) the absence of any specification of the plaintiffs' title to sue in the writ in no way rendered the writ a nullity; there was nothing whatever to prevent the plaintiff from serving a statement of claim showing how the right to sue had become vested in them or if they had failed to do so in the statement to apply to amend to introduce the necessary averments (*see* p. 33, cols. 1 and 2);

(8) in a case where there was a dispute between the parties as to whether the documents relied upon constituted assignments at all, the ordinary requirement that the assignors should be before the Court was not one which could be dispensed with; the joinder was a purely procedural requirement and on the assumption that the receipts were effective assignments, the cause of action thus vested in the plaintiffs was effectively asserted by the writ and no question of depriving the defendants of any vested right to rely on the time bar therefore arose, the suit having been properly begun within the period permitted by the rule (*see* p. 34, cols. 1 and 2);

(9) this was not a case in which the defendants had been in any way misled as to the nature of the claim made nor had any evidence been adduced to suggest that they had been prejudiced by the delay in any way which could not be compensated in costs; in these circumstances it was appropriate that the discretion of the Court be exercised in favour of allowing the proceedings to be amended so that the real issue between the parties could be determined; subject therefore to the plaintiffs bringing in revised amendments to the writ and statement of claim to plead the assignment only and to join the buyers as defendants the appeal would be allowed (*see* p. 34, col. 2).

———

The following cases were referred to in the judgment of Lord Justice Oliver:

Actien-Gesellschaft für Cartonnagen Industrie A.G. v. Temler, (1899) 16 R.P.C. 447;

*Aries*, The, (H.L.) [1977] 1 Lloyd's Rep. 334;

Bowden's Patents Syndicate Ltd. v. Herbert Smith & Co., [1904] 2 Ch.D. 86;

Brandt's (William) Sons & Co. Ltd. v. Dunlop Rubber Co. Ltd., (H.L.) [1905] A.C. 454;

| C.A.] | LLOYD'S LAW REPORTS | 27 |
|---|---|---|
| Oliver, L.J.] | The "Aiolos" | [1983] Vol. 2 |

Durham Brothers v. Robertson, [1898] 1 Q.B. 765;

Evans Construction Co. Ltd. v. Charringtons & Co. Ltd., (C.A.) [1983] 2 W.L.R. 117;

Hill v. Luton Corporation, [1951] 2 K.B. 387;

King v. Victoria Insurance Co. Ltd., (H.L.) [1896] A.C. 250;

Lucy v. Henley's Telegraph Works Co. Ltd., (C.A.) [1970] 1 Q.B. 393;

Mabro v. Eagle Star and British Dominions Insurance Co. Ltd., [1932] 1 K.B. 485;

Performing Right Society Ltd. v. London Theatre of Varieties Ltd., [1924] A.C. 1;

Pontin v. Wood, (C.A.) [1962] 1 Q.B. 594;

Steel Wing Co. Ltd. In re, [1921] 1 Ch. 349;

Sweet v. Cater, (1841) 11 Simon's Rep. 572;

Vandervell's Trusts, In re, [1974] Ch. 269;

Wilson v. Ragosine & Co. Lim., (1915) 84 L.J.K.B. 2185;

Yorkshire Insurance Co. Ltd. v. Nisbet Shipping Co. Ltd., [1961] 1 Lloyd's Rep. 479; [1962] 2 Q.B. 330.

---

This was an appeal by the plaintiffs, Central Insurance Co. Ltd. from the decision of Mr. Justice Sheen dismissing their appeal and refusing their application to amend their writ and statement of claim in the action brought by the plaintiffs against the defendants, Seacalf Shipping Corporation, the Admiralty Registrar having granted the defendants' application to strike out the writ and statement of claim.

Mr. Jeffrey Gruder (instructed by Messrs. Ince & Co.) for the plaintiffs; Mr. Peter Irvin (instructed by Messrs. Clyde & Co.) for the defendants.

The further facts are stated in the judgment of Lord Justice Oliver.

Judgment was reserved.

Thursday, Feb. 17, 1983

### JUDGMENT

**Lord Justice ACKNER:** I will ask Lord Justice Oliver to deliver the first judgment.

**Lord Justice OLIVER:** This is a case in which we are asked for leave to appeal and we have decided to give leave. Before I deliver judgment I ought to ask the appellants' Counsel for an undertaking that the appeal will be set down to come before the Court on motion.

Mr. Gruder: Certainly, my Lords: I will give that undertaking.

**Lord Justice OLIVER:** This is an application for leave to appeal from an order made on Dec. 10, 1982, by Mr. Justice Sheen in Chambers in an Admiralty action, whereby he dismissed the plaintiffs' appeal from an order of the Admiralty Registrar of Dec. 2, 1980, striking out the writ and statement of claim on the ground that they disclosed no reasonable cause of action and refused leave to amend.

Although the initial application was for leave only, we indicated that if leave were given we would proceed straightaway with the hearing of the substantive appeal, and we have in fact heard full argument on the matter which arises in this way. The plaintiffs, Central Insurance Co. Ltd., are, as their name suggests, insurers and are incorporated in Taiwan. In the course of their business there they effected in 1978, with 28 Taiwanese buyers, 30 policies of insurance covering quantities of soya bean meal which had been consigned to the buyers on board the defendants' vessel, *Aiolos*, and which were the subject-matter of 30 separate bills of lading. The total quantity loaded was 18,923.245 tonnes, but on discharge at destination in April, 1978, the cargo was found to be 682.901 tonnes short and the plaintiffs were thus called upon to pay, and did pay to the buyers, a total of 8,127,681 Taiwanese dollars. Upon doing so, they of course became subrogated to the buyers' rights and, in addition to relying upon the ordinary insurers' rights of subrogation, they obtained from each buyer a formal document which was headed "Loss Subrogation Receipt", which acknowledged the receipt of the insurance money and contained this provision:

> In consideration of this payment, we hereby relieve the above mentioned insurance company, its agents and/or representatives from any liability in regard to such loss, and abandon to the above mentioned insurance company, its agents and/or representatives all our rights title and interest in the said goods. We also undertake and agree to allow any proceedings to be taken in our name in respect of the loss or recovery of the said goods, if required, and to assist in such proceedings in any form that may be required of us.

The bills of lading were subject to the Hague Rules and in particular to art. III, r. 6 which is in the following terms, so far as material to the questions which have arisen in this case:

> . . . In any event the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered.

Following the payment of the claims by the insurers, claims were pursued by loss adjusters on their behalf against the shipowners. The claims were resisted and in April, 1979, Messrs. Clyde & Co., the solicitors acting for the P. and I. club to which the defendants belonged, wrote granting an extension of time under the Hague Rules to July 3, 1979.

On June 28, 1979, that is to say, some five days before the extended time for instituting a suit ran out, the plaintiffs, through solicitors in London, issued a writ in rem, the only claim endorsed on which was in the following terms:

> The plaintiffs' claim is for the sum of 18,923,245 New Taiwan Dollars being the amount due to the Plaintiffs from the Defendants in respect of rights of subrogation under contracts of insurance relating to goods shipped on a voyage from Brazil to Kaohsiung on the ship M.V. Aiolos and lost due to the default of the Defendants full particulars whereof have been delivered and exceed three folios.

That was subsequently amended to correct certain errors in the sums claimed.

A statement of claim was served on Aug. 20, 1979, claiming damages for breach of contracts of carriage by sea and it is important to note that the statement of claim followed precisely the specification of the cause of action adumbrated in the writ. It identified the plaintiffs as insurers, referred to the 30 policies, the shipping of the goods and the short delivery on arrival, and in par. 6 pleaded that the plaintiffs had suffered damage as a result of the defendants' failure to deliver. No title to sue appears on the face of the pleadings, but par. 5 is in these terms:

> In the premises the said thirty separate consignees suffered loss and damage and the Plaintiff duly indemnified the said thirty separate consignees under the said thirty insurance contracts, in the sum of New Taiwan Dollars 8,127,681.00 and thereby the Plaintiffs became subrogated to all rights and entitlements possessed by the said thirty separate consignees against third parties including the Defendants (defendant vessel is the unit in rem).

A defence was served on Oct. 5, 1979, which put the short delivery and damage in issue and which contained the following paragraph:

> 6. It is expressly denied that the Plaintiff has title to sue the Defendant.

An unexplained delay for a year ensued and then on Oct. 30, 1980, the defendants issued a summons to strike out the writ and statement of claim. That came before the Admiralty Registrar on Dec. 2, 1980, and, perhaps not altogether surprisingly, it succeeded, for it is well established that an insurer has no right, in English law at any rate, to sue under his right of subrogation in his own name, but must bring his action in the name of the insured and the only fact relied on by the plaintiffs was their payment of the insured loss.

On Dec. 5, 1980, however, the plaintiffs gave notice of appeal and also notified their intention of seeking leave to reamend their writ and to amend the statement of claim. The amendments to the writ consisted of an addition of the 28 insured buyers entitled to the 30 policies as plaintiffs, and the addition of (i) a claim by the plaintiffs as assignees of the rights of the cargo-owners and (ii) claims for damages in the alternative by the 28 buyers. The amendments to the statement of claim reflect these amendments and in particular par. 10 sought to plead the loss subrogation receipts as effective legal and equitable assignments of the buyers' rights to claim against the defendants for loss of cargo.

This burst of activity at the end of 1980 was, however, illusory and a period of uninterrupted peace and calm appears to have ensued for the next two years which remained unbroken until November, 1982, when the plaintiffs changed their solicitors.

The appeal and the application to amend finally came on for hearing before the Judge and on Dec. 10, 1982, he dismissed the plaintiffs' appeal and refused their application for leave to amend. The learned Judge was not asked for leave to appeal, but it is accepted that the application fell to be treated as an interlocutory one and that leave is required.

On behalf of the plaintiffs Mr. Gruder puts his case in two ways. He accepts that the general rule is that an insurer relying upon his right of subrogation must sue in the name of his insured and therefore by inference that he needs leave to amend, although he argues that the leave required is not in fact as extensive as the leave which has been sought because, he claims, the plaintiffs were and are entitled to sue in their own names as assignees and do not strictly need to join the buyers as co-plaintiffs or as substitute plaintiffs. He submits: (1) that, on the basis of evidence put before the learned Judge, he should have come to the conclusion that there was at least an arguable case for saying that the loss subrogation receipts constituted assignments under Taiwanese law of the buyers' rights to sue for damages, Taiwanese law being the law governing the contractual relationships between the buyers and the insurers; (2) that if this is right the insurers were in fact entitled to sue in

| C.A.] | LLOYD'S LAW REPORTS | 29 |
|---|---|---|
| Oliver, L.J.] | The "Aiolos" | [1983] Vol. 2 |

their own name. While he accepts that, there having been no notice to the defendants prior to the action of any assignment, the documents relied on cannot qualify as anything but equitable assignments and, while he also accepts, as he has to, that the general rule is that an equitable assignee must join his assignor as a party in any action, either as plaintiff or defendant, he submits that this rule is a procedural rule only, evolved to protect the defendant from the possibility of subsequent claims by the assignor and that there are exceptions where it is clear that the assignee is solely and beneficially entitled and that there is no possibility of any claim by the assignor against the debtor.

Since in this case the *beneficial* claims of the 28 buyers must all be long since extinguished as a result of art. III, r. 6 of the Hague Rules, there can be no possibility of any such claim against the defendants, so the rationale of the procedural rule does not apply and, accordingly, the instant case is one of the exceptional cases in which an equitable assignee will be permitted to sue without joining his assignor.

At any rate, even if he eventually turns out to be wrong, Mr. Gruder argues that the proposition is a reasonably arguable one and therefore that the action should not be struck out. Mr. Gruder's second point, which assumes that it is essential to have the 28 shipowners as co-plaintiffs, both for a subrogation claim and for a claim on the basis of assignment, is that the addition of these persons as parties is something that the Court ought to allow under O. 20, r. 5 of the Rules of the Supreme Court. The relevant portions of the rule for present purposes are sub-rr. (1), (2) and (3) which are in these terms:

> Subject to Order 15, rules 6, 7 and 8 and the following provisions of this rule, the Court may at any stage of the proceedings allow the plaintiff to amend his writ, or any party to amend his pleading, on such terms as to costs or otherwise as may be just and in such manner (if any) as it may direct. (2) Where an application to the Court for leave to make the amendment mentioned in paragraph (3), (4) or (5) is made after any relevant period of limitation current at the date of issue of the writ has expired, the Court may nevertheless grant such leave in the circumstances mentioned in that paragraph if it thinks it just to do so. (3) An amendment to correct the name of a party may be allowed under paragraph (2) notwithstanding that it is alleged that the effect of the amendment will be to substitute a new party if the Court is satisfied that the mistake sought to be corrected was a genuine mistake and was not misleading or such as to cause any reasonable doubt as to the identity of the person intending to sue or, as the case may be, intended to be sued.

Now of course it is clear that there was not in fact any mistake about the name of the person originally named as plaintiff, nor about the capacity in which he sued as plaintiff. The company was rightly described and was made plaintiff as the insurer of the goods. The mistake which was made was the mistake of thinking that the cause of action was vested in that plaintiff and in that capacity. Mr. Gruder's submission under O. 20, r. 5 (3) can, I think, only apply to the subrogation claim. So far as a claim as assignee is concerned, the party named was, if there was an assignment, rightly a plaintiff and the appropriate application is therefore one under O. 20, r. (1) to add the claim of assignment and under O. 15, r. 6 to add the necessary party and not an application under O. 20, r. 5 (3). So one comes to the question, can the subrogation claim be saved by substituting the names of the 28 buyers for the name of the insurance company? Mr. Gruder argues that it was always intended to bring the action on behalf of the insurers, and the mistake made was in attributing to the insurers a quality which they did not in fact have, namely, that of being able to sue in their own name. He relies on the recent case of *Evans Construction Co. Ltd. v. Charringtons & Co. Ltd.*, [1983] 2 W.L.R. 117, and in particular the following passage from the judgment of Lord Justice Donaldson at p. 126 where his Lordship says this:

> In applying Ord. 20, r. 5 (3) it is, in my judgment, important to bear in mind that there is a real distinction between suing A in the mistaken belief that A is the party who is responsible for the matters complained of and seeking to sue B, but mistakenly describing or naming him as A and thereby ending up suing A instead of B. The rule is designed to correct the latter and not the former category of mistake. Which category is involved in any particular case depends upon the intentions of the person making the mistake and they have to be determined on the evidence in the light of all the surrounding circumstances. In the instant case I have not the slightest difficulty in accepting Mr. Greenwood's assertion that he intended to sue the relevant landlord under the Act. After all, he was responding on behalf of his lessee client to a notice to quit given on behalf of the landlord and it would have been surprising, to say the least, if he had thought that it was appropriate to respond by claiming a new lease from the managing agent or any other stranger to the landlord and tenant relationship. Accordingly I would conclude that he made a genuine

mistake of a character to which Ord. 20. r. 5 (3) can apply.

In the instant case Mr. Gruder submits there is no question of anyone being misled: the defendants can never have thought anything but that the action was intended to be an action for the benefit of the insurers under their right of subrogation and therefore the learned Judge should have allowed the amendment.

Those then are the plaintiffs' principal contentions. The contrary argument of Mr. Irvin on behalf of the defendants can be summarized briefly in three propositions. (1) The action as originally framed was plainly demurrable and necessarily had to be struck out, for it provided no case to answer. Once struck out there was not, and is not, any cause of action at all on the bills of lading, for the effect of the lapse of time under r. 6 is to extinguish not merely the remedy but the cause of action itself (see *The Aries*, [1977] 1 Lloyd's Rep. 334). (2) No amendment can be made under R.S.C., O. 15, r. 6, because it is well established that you cannot add a party if the effect of doing so is going to be to deprive the defendant of a defence based on the expiry of a relevant period of limitation. In this context he refers to the judgment of Lord Justice Scrutton in *Mabro v. Eagle Star and British Dominions Insurance Co. Ltd.*, [1932] 1 K.B. 485, at p. 487. It is a short passage:

> In my experience the Court has always refused to allow a party or a cause of action to be added where, if it were allowed, the defence of the Statute of Limitations would be defeated. The Court has never treated it as just to deprive a defendant of a legal defence. If the facts show either that the particular plaintiff or the new cause of action sought to be added are barred, I am unable to understand how it is possible for the Court to disregard the statute. [See also *Lucy v. Henley's Telegraph Works*, [1970] 1 Q.B. 393, per Lord Justice Megaw at pp. 411-412.]

(3) Therefore the application, to succeed at all, must do so by virtue of O. 20, r. 5 (2) and (3). As to this (a) the mistake here made is not a relevant mistake for the purpose of allowing that rule to operate and (b) the expiry of the contractual period allowed by the Hague Rules for bringing suit is a substantive contractual provision on which any cause of action depends and is not a relevant period of limitation for the purposes of r. 5 (2), that phrase being restricted to limitation in the procedural sense of a limitation on the period within which an action can be brought. There is, therefore, nothing in O. 20, r. 5 which would enable the Court to permit an amendment which would not simply allow the revival of a time barred remedy for a subsisting right, but would actually revive a right which has already been effectively extinguished.

We have had extensive and wide-ranging arguments from Counsel on both sides and I hope that I shall not be thought disrespectful of them if I do not rehearse them in extenso here. I have found them of great value in clarifying and isolating the points with which we have had to deal on this appeal, but on the view that I take of the matter many of them become immaterial. Let me first deal with the plaintiffs' claim so far as it rests solely upon the automatic right of subrogation arising from their payment of insured losses. Here, quite plainly, the learned Registrar was right to order the claim to be struck out, for it is not seriously contested that the only way in which that claim could be exerted is by action in the name of the insured. Any claims which the insured themselves may have are clearly now long since barred by art. III, r. 6 of the Hague Rules, for "suit" in the rules must mean a relevant suit, that is, one in which the right to sue on the contract is vested in the plaintiffs. The right of subrogation entitles the insurer to call upon the insured to permit his name to be used in a suit for the benefit of the insurer, but it does not vest the cause of action in him. An amendment, therefore, which joins the insured as parties so that they can assert *their* right of action and which has the effect of relating that assertion back to the date of the original writ does therefore in a very real way have the effect of depriving the defendants of a vested right to plead that the claim of the insured is time barred under r. 6 of the Hague Rules and could not, on ordinary principles, be allowed. If such an amendment is to be permitted at all, it can only be by virtue of O. 20, r. 5 (2) and (3) and the plaintiffs' claim, so far as this part of the case is concerned, stands or falls on the application of those provisions.

In my judgment the learned Judge was quite right in refusing leave to amend under this rule. For my part, I find it unnecessary to consider whether the Hague r. 6 period is or is not a relevant period of limitation for the purposes of r. 5 (2), for in my judgment the case is not one which falls within r. 5 (3). The analogy which Mr. Gruder seeks to draw with the *Charrington* case is not, in my judgment a permissible one. No doubt if the fact were that the actual insurer was not the plaintiff, but, say, a subsidiary company, there could or might be a true analogy with that case. But the instant case was not a case, as was the *Charrington* case, of a mistaken belief that the person made party to the proceedings fulfilled a particular description, videlicet that of landlord or insurer, but a case of an erroneous belief that the plaintiff, because he

| C.A.] | LLOYD'S LAW REPORTS | 31 |
|---|---|---|
| Oliver, L.J.] | The "Aiolos" | [1983] Vol. 2 |

was in fact what he was thought to be, that is, the insurer, had as a result of that certain legal rights which he did not in fact have. There was therefore no error either as to the name or as to the identity of the party which fell to be corrected, but simply an error of law as to the rights possessed by the correctly identified party. Order 20, r. 5 (3) simply does not extend to this sort of error and the application under this rule must, therefore, fail.

The critical question therefore appears to me to be whether the learned Judge was right to refuse to allow an amendment by pleading an assignment of the rights of the insured. It is not entirely clear from the notes of his judgment, but it seems that his grounds for doing so were: (a) that the documents relied on, that is, the subrogation loss receipts, clearly did not constitute statutory assignments under the Law of Property Act, 1925; (b) that if they had constituted equitable assignments they might support the plaintiffs' claim; (c) that whether they did or not was a question of Taiwanese law; but (d) that he preferred the view of the defendants' expert that they did not constitute assignments and therefore the amendment proposed was fruitless and led nowhere.

The two central questions which have been argued before us and upon which the appeal depends so far as this part of the case is concerned are, first, whether the learned Judge was right in his assessment of the evidence of Taiwanese law and, secondly, whether, even assuming an equitable assignment, an amendment to plead it is permissible having regard to the expiry of the time limit prescribed by r. 6 of the Hague Rules.

Now, as regards the first question, the learned Judge was clearly disposed to treat the subrogation loss receipt as in effect a notice of abandonment vesting in the insurers the title to the undelivered goods, if they ever turned up, and not as a document transferring to the insurers any right to damages created by the breach of the contract constituted by the bills of lading. Indeed Mr. Gruder was himself strongly resistant to the suggestion that, if it falls to be tested by English law, the receipt constitutes an equitable assignment of the buyer's rights of action. Whilst it may not be immediately apparent to the untutored mind why a document which purports to transfer the right to recover goods from a bailee does not constitute in English law an assignment of the right to sue for their non-delivery, I am certainly not prepared to dissent from the views of those very much more familiar than I with documents of this type. However, the principal question is not what is the effect of the document in English law, but its effect under Taiwanese law by reference to which both insurer and insured may be thought to have been contracting and which would appear to be the proper law governing the construction and effect of the document. In this connection Mr. Gruder has referred the Court to r. 82 on p. 573 of the 10th ed. of Dicey & Morris from which that proposition emerged.

There was no sworn evidence of Taiwanese law before the learned Judge, but there were two telexes from lawyers instructed by the plaintiffs and the defendants respectively, a Mr. Chiang and a Mr. Huang. Both agree that the law of Taiwan recognizes assignments of choses in action and that they are regulated by art. 297 of the Civil Code under which notification to the debtor is a prerequisite to a valid assignment. Both agree that, under a judgment of the Republic of China Supreme Court no. 1162 of 1933, the assertion of the right assigned by litigation can itself constitute the essential notification. It is however at this point that they part company. Mr. Huang says that, for litigation itself to constitute the requisite notice, the fact of assignment must be stated expressly in the pleadings, and he goes on to say (a) that "abandon" (the phrase used in the receipt) does not in Taiwanese law mean "assign" or "transfer" and (b) that the receipt does not in his view constitute an assignment.

Mr. Chiang, perhaps predictably, expresses the opposite view. On what is perhaps the critical point of notification he is rather less definite than Mr. Huang, saying only that—

. . . if the assignee demands the performance of the debtor's obligation in its pleading, the demand could also be construed as having the effect of notification.

However, he treats assignment and subrogation as largely interchangeable so far as their consequences are concerned and asserts that the receipt could have the effect in Taiwanese law of transferring the right of action and enabling the transferee to sue in its own name.

Now, while I accept that the evidence is not particularly satisfactory — and I think that that applies to both telexes — I would not, for myself, have thought it right, as the learned Judge appears to have done, to decide the application on the basis of what he considered, without further investigation or cross-examination, to be the preferable view. He was of course perfectly right to say that there was no point whatever in giving leave to amend if the claim as amended must fail, but this was a striking out application and, whichever might appear to be the view more likely to be accepted at a trial, the telexes appear to me clearly to raise a triable issue which could not be, and ought not

to have been, decided then and there. For my part, I am persuaded by the plaintiffs' evidence, not that the receipt *was* an effective assignment in Taiwanese law, but at least that it arguably was.

If that is right, can there then be any objection to an amendment of the proceedings so as to bring that issue before the Court?

Mr. Irvin argues that there can be and that there is, for two reasons. First, he says that the amendment necessarily involves joining the 28 buyers as plaintiffs because this is, on any analysis at all, only an equitable assignment and the cause of action cannot be asserted without joining them as plaintiffs. Whatever effect that may have as regards the assignment, it will have the effect, retrospectively to the date of the writ, of joining as plaintiffs those very parties to the proceedings who were necessary for the assertion of the claim based simply on subrogation at law and will thus deprive the defendants of the right which has already accrued to them to resist that claim by reliance upon r. 6 of the Hague Rules. At the moment those proposed plaintiffs cannot assert their rights which have been extinguished; if they are joined as plaintiffs, they will be able to do so. Indeed, their presence as co-plaintiffs claiming the relief claimed will, without more, constitute such an assertion. On ordinary principles, therefore, this amendment ought not to be allowed. Secondly, and regardless of any question of joinder of parties, the amendment to plead an assignment constitutes the assertion of a new and different cause of action and is thus objectionable on the same principle.

I do not, speaking for myself, find Mr. Irvin's first point a persuasive one, although I entirely agree that the learned Judge was right to decline, and I would myself decline, to join the buyers as co-plaintiffs in the manner suggested by the proposed amendments. But, as I understand the practice of the Court, the insistence upon joinder of the assignor under an equitable assignment as a party — the reason and necessity for which I will consider in a moment — is dictated simply by the desirability of having him before the Court and thus bound by the order. It is not because his presence as a plaintiff is essential to the prosecution by the assignee of the cause of action assigned to him. The purpose of joining him is equally well served by his being a defendant and indeed, if he refuses to join as plaintiff, he can and should be made a defendant simply in order to be bound by the result. If therefore it be essential, which Mr. Gruder claims that it is not, to have the buyers before the Court, they can quite properly be joined as defendants without that joinder involving the consequences which Mr. Irvin fears.

It is Mr. Irvin's second point that is, to my mind, the critical one: does the pleading of a title by assignment, whether or not accompanied by the joinder of the assignors, constitute the assertion, retrospectively, of some new or different cause of action which, were it not contained in a writ issued prior to the expiry of the limitation period, would otherwise be barred? Mr. Irvin puts his case in this way. The writ in the action was a writ based expressly upon the plaintiffs' right of subrogation. That was the cause of action asserted and that cause of action never was vested in the plaintiffs, so that the writ, although issued timeously, was manifestly demurrable and not a relevant suit for the purposes of r. 6 because it was commenced by the wrong plaintiff. To permit, therefore, an amendment which will convert, after the time bar period has expired, a cause of action not vested in the plaintiff into a cause of action which *is* vested in the plaintiff will be to transgress the rule of practice which inhibits the granting of amendments which destroy a vested right to rely upon a defence of limitation. A limitation defence is always unattractive, but I confess that, at first, I found Mr. Irvin's argument an attractive one. I think, however, that it requires some analysis and that upon analysis it ceases to carry conviction. It rests upon two propositions, neither of which in my judgment will stand the test of close examination. First, it is said that the framework of the general indorsement on the writ dictates once and for all the way in which the claim could be put in the future. Secondly, and in any event it is said that the absence of essential parties at the date of the writ precludes any assertion that the claim now sought to be asserted by amendment is a claim which at the date of the writ it was open to the plaintiffs to assert. These two propositions are in fact separate facets of what is essentially the same point, namely, that a cargo claim vested in the plaintiffs is not the subject-matter of a suit commenced within the time permitted by r. 6.

Looking first at the indorsement, what is said is that the statement that the claim was "in respect of rights of subrogation under contracts of insurance" conclusively shows (a) that the only way in which the plaintiffs can claim title to sue is by reliance upon their right of subrogation in law and (b) that that demonstrates that what they are purporting to assert is a right not vested in them but in the insured. That, it is said, is supported by par. 5 of the statement of claim. Thus, the argument continues, what was asserted on June 25, 1979, was a cause of action subsisting in someone else, entitling that person to damages together with an unsustainable claim by the plaintiff to be paid those damages. It is not then open to the plaintiff to rely upon a

| C.A.] | LLOYD'S LAW REPORTS | 33 |
|---|---|---|
| Oliver, L.J.] | The "Aiolos" | [1983] Vol. 2 |

cause of action subsisting in himself. His writ is and was defective and is incapable of cure, save by an amendment which pleads a new and different cause of action.

I find myself unable to accept this argument for three reasons. In the first place, it seems to me that it attributes altogether too much force to the words "in respect of rights of subrogation". Subrogation is concerned solely with the mutual rights of the parties to a contract of insurance and it confers no right and imposes no liability on any third party (see the analysis of Mr. Justice Diplock (as he then was) in *Yorkshire Insurance Co. Ltd. v. Nisbet Shipping Co. Ltd.*, [1961] 1 Lloyd's Rep. 479; [1962] 2 Q.B. 330). It is not itself and does not create a cause of action against the debtor. To say, therefore, that the plaintiff sues "in respect of rights of subrogation", while it explains why it is that this plaintiff is making a cargo claim at all, is a wholly immaterial averment so far as the defendants' liability is concerned. It in no way alters the nature of the claim made against him. To succeed the plaintiff must prove that he has the right to make the claim, but he does not have to demonstrate that in his writ. It is not, for instance, unknown for the insured, instead of suing at the behest of the insurer, to implement the insurer's right of subrogation by assigning his right of action (see *King v. Victoria Insurance Co. Ltd.*, [1896] A.C. 250). Nor is the matter carried further by the statement of claim. All that it seems to me that the statement of claim does is to include a similarly immaterial averment and to omit an essential averment showing how the plaintiff is entitled to sue. To put it another way, the reference to subrogation does not of itself show that the right to bring the action is *not* vested in the plaintiff: it merely fails to demonstrate that it *is* so vested.

Secondly, there could not be any doubt at all about what the claim was that was being asserted. It was a claim for short delivery of cargo, full particulars of which had already been delivered and are referred to in the indorsement. That was the breach of contract in respect of which the suit was commenced and the plaintiffs were entitled to put their case for the payment to them of damages in law in any way open to them on the facts that they chose to plead (see *Re Vandervell*, [1974] Ch. 269 at p. 321). What was missing from the statement of claim and what made it demurrable and liable to be struck out was any allegation of fact showing how the cause of action became vested in them.

Thirdly, the absence of any specification of the plaintiffs' title to sue in the writ in no way rendered the writ a nullity. Order 6, r. 2, requires the indorsement to contain "a concise statement of the nature of the claim made". This indorsement was defective no doubt in several respects, although when taken in conjunction with the particulars I do not think that the defendants can have been under any illusion about what was being claimed. This was a cargo claim even if insufficiently specified and the writ would have been good unless and until an application was made to set it aside — an application which had to be made within a reasonable time. The cases of *Hill v. Luton Corporation*, [1951] 2 K.B. 387, and *Pontin v. Wood*, [1962] 1 Q.B. 594, are instructive in this context, for there defective writs were cured by the subsequent delivery of statements of claim even after the limitation period had expired. I am prepared to assume that this writ was in fact defective on its face, but, even as it stood, there was in my judgment nothing whatever to prevent the plaintiffs from serving a statement of claim showing how the right to sue had become vested in him or, if he failed to do that in his statement of claim, to apply to amend to introduce the necessary averments.

This brings me to Mr. Irvin's second point which, if I understand it aright, is merely another way of saying that what the plaintiffs were asserting by their writ was not their own cause of action but somebody else's. The argument runs thus: an equitable assignee *can* only assert his cause of action in a suit to which his assignor is a party. The plaintiffs did not make the buyers party to the action. Therefore they were not asserting a cause of action vested in them, but a cause of action vested in someone else, and the suit was not a relevant suit for the purposes of r. 6. Thus to allow the plaintiffs now to assert a right vested in them would deprive the defendants of a time bar which has already operated in their favour.

Whether or not the conclusion follows from the middle term, I have found myself unable to accept the major premise. That there is a long-standing practice that, before giving judgment in an action at the suit of an equitable assignee, the Court will normally require him to bring his assignor before the Court is beyond doubt. But it does not follow from that that there is no cause of action vested in the assignee and capable of being asserted by him alone or, indeed, that the assignor has in all cases, and necessarily, to be a party. The reason for the requirement is not that the assignee has no right which he can assert independently, but that the debtor ought to be protected from the possibility of any further claim by the assignor who should therefore be bound by the judgment. A further reason given by Lord Justice Chitty in *Durham Brothers v. Robertson*, [1898] 1 Q.B. 765, is that the assignor ought to be given the opportunity to challenge the assignment if he wishes, though

| 34 | LLOYD'S LAW REPORTS | [C.A. |
|---|---|---|
| [1983] VOL. 2] | The "Aiolos" | [ACKNER, L.J. |

this probably comes to the same thing. The concept behind the rule is that the debtor should not be put in double jeopardy.

Mr. Gruder has referred us to a number of authorities for the proposition that the presence of the assignor is not universally necessary and can be dispensed with by the Court. To begin with there are numerous cases in which an equitable assignee has been permitted to proceed on his own to protect his interest interlocutorily, even though he may subsequently be required to amend by bringing his assignor before the Court. (See *Sweet v. Cater*, (1841) 11 Simon's Rep. 572, *Actien-Gesellschaft für Cartonnagen Industrie A.G. v. Temler*, (1899) 16 R.P.C. 447, *Bowden's Patents Syndicate Ltd. v. Herbert Smith & Co.*, [1904] 2 Ch. 86, per Mr. Justice Warrington at p. 91.) These cases by themselves demonstrate the subsistence of a cause of action in the assignee, but in fact the authorities go further. In *William Brandt's Son & Co. Ltd. v. Dunlop Rubber Co. Ltd.*, [1905] A.C. 454, judgment was given for the assignee although the assignor was not made party to the action. The case was, it is true, an exceptional one, for the debtor had in fact settled with the assignor and disclaimed any desire to have him there. Nevertheless, it demonstrates that the requirement is a procedural and not a substantive one upon which the assignee's cause of action depends. Similarly, in *Wilson v. Ragosine & Co. Lim.*, (1915) 84 L.J.K.B. 2185, judgment was given in favour of an equitable assignee on the Courts being satisfied that he had in fact got the sole beneficial interest in the chose in action assigned and that it was not practically possible to join the assignor. (See also *Re Steel Wing Co.*, [1921] 1 Ch. 349, per Mr. Justice P. O. Lawrence at pp. 356-357.) The existence of the power of the Court to dispense with the presence of the assignor in exceptional circumstances was in fact recognized by the House of Lords in *Performing Right Society v. London Theatre of Varieties*, [1924] 1 A.C. 1, see pp. 13, 19 and 30.

As I have already mentioned, Mr. Gruder submits that the instant case is an exceptional one where the presence of the assignors could properly be dispensed with, for, having regard to the fact that their claims have been discharged, their undertakings to assist in the proceedings in any way possible and the lapse of time, they can have no possible interest in the rights assigned nor any ability to sue the debtor on their own account, so that there is no possible question of double jeopardy. Were the documents upon which he relies undoubted assignments governed by English law, I would for my part have much sympathy with that submission, but, in a case in which there is a dispute between the parties as to whether the documents relied on constitute assignments at all, the ordinary requirement that the assignors should be before the Court is not one which I feel could be dispensed with and they should in my judgment be before the Court as defendants, even though no relief is claimed against them, save possibly a declaration as to the effect of the documents. The necessity of their joinder does not, however, affect the validity of Mr. Gruder's point that the amended claim does no more than assert the position existing at the date of the writ.

The joinder is a purely procedural requirement and, on the assumption that the receipts were effective assignments, the cause of action thus vested in the plaintiffs was effectively asserted by the writ. No question of depriving the defendants of any vested right to rely on the time bar therefore arises, the suit having been properly begun within the period permitted by the rule.

The only other point is whether, having regard to the unexplained lapse of time, amendment to plead an assignment should be refused as a matter of discretion. This is not a case in which the defendants have been in any way misled as to the nature of the claim made, nor has any evidence been adduced to suggest that they have been prejudiced by the delay in any way which cannot be compensated in costs. In these circumstances I would think it appropriate therefore that the discretion of the Court should be exercised in favour of allowing the proceedings to be amended so that the real issue between the parties can be determined. Subject therefore to Mr. Gruder bringing in revised amendments to the writ and statement of claim to plead the assignment only and to join the buyers as defendants, I would allow this appeal.

**Lord Justice ACKNER:** I have had the advantage of reading the judgment of my Lord in draft. I agree with his conclusions and the reasons which he has given for those conclusions. There is nothing that I would wish to add.

[*Order: Appeal allowed; costs reserved to trial Judge; case to be transferred to the Commercial Court and tried by a Judge other than Mr. Justice Sheen; application for leave to appeal to the House of Lords refused.*]