*TRUSTS, WILLS AND PROBATE LIBRARY*

# SNELL'S EQUITY

THIRTY-FIRST EDITION

**General Editor**

JOHN MCGHEE Q.C.
*M.A. (Oxon.)*
*of Lincoln's Inn, Barrister*

**Contributors**

MATTHEW CONAGLEN

TIMOTHY DUTTON

DAVID FOX

TIMOTHY HARRY

EDWIN JOHNSON

THOMAS LEECH

ADAM SMITH

THOMSON™
SWEET & MAXWELL

AUSTRALIA
Law Book Co.
Sydney

CANADA AND USA
Carswell
Toronto

HONG KONG
Sweet & Maxwell Asia

NEW ZEALAND
Brookers
Wellington

SINGAPORE AND MALAYSIA
Sweet & Maxwell Asia
Singapore and Kuala Lumpur

ISBN 0-421-85260-7

9 780421 852600

## Page 38 — CHAPTER 3—ASSIGNMENT OF CHOSES IN ACTION

is given to the debtor.[1] And as a trustee in bankruptcy takes subject to all equities affecting the property in the hands of the bankrupt, the assignment will prevail against the subsequent title of the assignor's trustee in bankruptcy, even though the notice required to perfect the assignment as against third parties is not given until after the trustee in bankruptcy has given notice to the debtor of his claim to the debt.[2] The same principle applies to a judgment creditor of the assignor; he can only make the debt available for payment of the judgment subject to all equities affecting it. Accordingly, if he attaches the debt after the assignment has been made, and the debtor pays the money to him despite receiving notice of the assignment, the assignee can compel the debtor to pay again.[3]

Notice of the assignment should, however, always be given to the debtor or trustee for four reasons:

(i) The debtor or trustee will be under no liability to the assignee if before receiving notice of the assignment he pays or settles with the original creditor[4] or gives him a negotiable instrument, e.g. a cheque or promissory note;[5] but if he disregards the notice he must pay again.[6]

(ii) Notice to the debtor or trustee prevents him from setting up against the assignee any new and independent equities which may arise between the debtor and the assignor.[7]

(iii) Notice in writing is necessary to preserve the assignee's priority against subsequent assignees under the rule in *Dearle v Hall*.[8]

(iv) Notice, if in writing, may convert the assignment into a statutory assignment, giving the assignee the status of a person entitled to the debt at law, and not merely in equity.

### 3. Effect of equitable assignment

3-20   The effect of an equitable assignment depends upon whether or not the whole interest in the chose has been vested in the assignee.

---

[1] *Donaldson v Donaldson* (1854) Kay 711; *Gorringe v Irwell India Rubber and Gutta Percha Works* (1886) 34 Ch.D. 128; *Ward and Pemberton v Duncombe* [1893] A.C. 369 at 392.
[2] *Re Wallis, Ex p Jenks* [1902] 1 K.B. 719; *Re Anderson* [1911] 1 K.B. 896.
[3] *Yates v Terry* [1902] 1 K.B. 527.
[4] *Stocks v Dobson* (1853) 4 De G.M. & G. 11; *Donaldson v Donaldson* (1854) Kay 711; *Re Lord Southampton's Estate* (1880) 16 Ch. D. 178 at 186; *Herkules Piling v Tilbury Construction* (1992) 61 B.L.R. 107.
[5] *Bence v Shearman* [1898] 2 Ch. 582.
[6] *Brice v Bannister* (1878) 3 Q.B.D. 569 (where the assignment was equitable despite references to the statute: see *Durham Bros. v Robertson* [1898] 1 Q.B. 765 at 773–774); *Yates v Terry*, above; *Walter & Sullivan Ltd v J. Murphy & Sons Ltd* [1955] 2 Q.B. 584 at 588; *Deposit Protection Board v Dalia* [1994] 2 A.C. 367 at 381 *per* Simon Brown L.J., at 386–387, *per* Russell L.J. See above at 382 where Simon Brown L.J. took the view that even after notice had been given the debtor was to be regarded as liable to the assignor.
[7] See below, para 3-22.

## Page 39 — EQUITABLE ASSIGNMENT

(a) *Whole interest assigned.* When the chose is merely equitable and the whole interest in it has been vested in the assignee, equity has always permitted him to sue in his own name without joining the original creditor;[9] for the chose existed only in equity, and so equity was free to hold that the assignee was the sole owner and that no interest remained in the original creditor.[10] As has been seen, there is a similar result on a statutory assignment, which is necessarily of the whole chose.[11]

(b) *Some interest outstanding.* The rule is otherwise if the assignment leaves some interest outstanding. This occurs where there is an equitable assignment of part of the chose, or an equitable assignment of a legal chose; for in the latter case, even if the whole chose is assigned, the original creditor still owns the chose in law,[12] holding it in trust for the assignee.[13] In such cases, neither the assignee[14] nor the original creditor[15] can sue for the chose without joining the other, as claimant if he consents and as defendant if he does not.[16] The court must have before it all parties interested in the chose so that there may be a final adjudication binding them all.[17]

This requirement is only procedural however and proceedings will not be treated as a nullity where the assignor and assignee are not both joined.[18] The court may at any stage remedy the defect by ordering that a person be added as a party.[19] In special circumstances (*e.g.* where it is clear that the assignor has no further interest in the matter[20]) the court may even dispense with the requirement that both assignor and assignee are joined.[21]

Further, an equitable assignee of a legal chose in action cannot exercise contractual rights such as an option conferred on the original creditor.[22] Nor

---

[9] See, e.g. *Cator v Croydon Canal Co* (1843) 4 Y. & C.Ex. 593; *Fulham v M'Carthy* (1848) 1 H.L.C. 703; *Donaldson v Donaldson* (1854) Kay 711.
[10] See *McMurchie v Thompson* (1906) 8 O.L.R. 637 at 639.
[11] Above, paras 3–07, 3–10.
[12] *Cator v Croydon Canal Co* (1843) 4 Y. & C.Ex. 593 at 594.
[13] *Fulham v M'Carthy* (1848) 1 H.L.C. 703 at 722; and see *DiGuilo v Boland* [1958] O.R. 384 at 397.
[14] *Performing Right Society Ltd v London Theatre of Varieties Ltd* [1924] A.C. 1.
[15] *Walter & Sullivan Ltd v J. Murphy & Sons Ltd* [1955] 2 Q.B. 584.
[16] See *Holt v Heatherfield Trust Ltd* [1942] 2 K.B. 1 at 5, citing the substance of this with approval; *Deposit Protection Board v Dalia* [1994] A.C. 367.
[17] *Re Steel Wing Co Ltd* [1921] 1 Ch. 349 at 357; *Deposit Protection Board v Dalia* [1994] A.C. 367 at 381 *per* Simon Brown L.J.
[18] *Weddell v Pearce & Major* [1988] Ch. 26.
[19] See CPR, Pt 19.
[20] See, e.g. *William Brandt's Sons & Co v Dunlop Rubber Co Ltd* [1905] A.C. 454 at 462 *per* Lord Macnaghten.
[21] *Performing Rights Society v London Theatre of Varieties* [1924] A.C. 1 at 19, 30; *The Aiolos* [1983] 2 Lloyds 25; *Weddell v Pearce & Major* [1988] Ch. 26 at 43; *Three Rivers DC v Bank of England* [1996] Q.B. 292.
[22] *Warner Bros Records Inc v Rollgreen Ltd* [1976] Q.B. 430. For criticism of this decision see Kloss (1975) 39 Conv. (N.S.) 261; *Chitty on Contracts* (28th ed.), para.20–005; Treitel, *The Law of Contract* (10th ed., 1999) p.628 and *Three Rivers DC v Bank of England* [1996] Q.B.

can he give an effective discharge to the debtor unless authorised to do so by the assignor.[23]

## 4.—EFFECT OF ASSIGNMENT ON EQUITIES

### 1. The rule

3-22  Whether the assignment is legal[24] or equitable,[25] the assignee takes subject to equities having priority over the right of the assignee.[26] The assignee of a chose in action cannot acquire a better right than the assignor had, and the assignee takes the chose in action subject to all the equities affecting it in the hands of the assignor which are in existence before notice is received by the debtor.[27] Notice of the assignment thus fixes the rights of the parties; thereafter the assignor cannot alter them. It is this date, and not that of the assignment, that is decisive.

### 2. Debtor's rights to set aside the transaction

3-23  If the contract under which the debt arose is voidable by reason of the assignor's fraud,[28] misrepresentation,[29] or non-disclosure[30] the debtor may set up the plea in answer to an action brought by the assignee, even though the assignee gave value for the assignment. However, it has been held that the debtor cannot rely on the fraud of the assignor if he does not seek to set aside the transaction he was induced to enter with the assignor but merely to claim damages since the damages claim is personal to the assignor.[31]

---

[23] *Durham Bros v Robertson* [1898] 1 Q.B. 765 at 770; and see *Jones v Farrell* (1857) 1 De G. & J. 208 at 218.
[24] LPA 1925, s.136; *E. Pfeiffer Weinkellerei-Weineinkauf GmbH & Co v Arbuthnot Factors Ltd* [1988] 1 W.L.R. 150.
[25] *Mangles v Dixon* (1852) 3 H.L.C. 702, 731; *Phipps v Lovegrove* (1873) L.R. 16 Eq. 80, 88.
[26] *Quaere* whether this includes equitable tracing rights: see D. W. McLauchlan (1980) 96 L.Q.R. 90. For tracing see below, paras 28–35 *et seq.*
[27] *Roxburghe v Cox* (1881) 17 Ch.D. 520.
[28] *Turton v Benson* (1718) 1 P.Wms. 496.
[29] *Graham v Johnson* (1869) L.R. 8 Eq. 36; *Birchal v Birch, Crisp & Co* [1913] 2 Ch. 375 at 379.
[30] *William Pickersgill & Sons Ltd v London & Provincial Marine and General Insurance Co Ltd* [1912] 3 K.B. 614.
[31] *Stoddart v Union Trust Ltd* [1912] 1 K.B. 181 (criticised in Treitel, *Law of Contract* (10th ed., 1999), p.636 but followed in *Provident Finance Corp v Hammond* [1978] V.R. 312). See also *Banco Santander S.A. v Bayfern Ltd* [2000] 1 All E.R. (Comm) 776 at 780–781.

### 3. Debtor's rights of set off

The debtor has the same rights of set-off against the assignee as against the original creditor. Thus in *Re Knapman*[32] certain legatees, who were also the testator's next-of-kin, brought an action in the Probate Division against the executor claiming revocation of the probate, and pending the action assigned their rights under the will or intestacy. When, subsequently, their action was dismissed with costs, the court held that the executor had a right to set off the costs against the legacies, and that the assignees took subject to this right.

If the set-off arises directly out of or is closely connected with the same contract or transaction as the subject-matter of the assignment, the defendant may set it up against the assignee whether it accrued to him before or after notice of the assignment.[33] But if a claim arises out of a contract which is independent of that in which the assigned debt arose (as where L is liable to T on a bond, and T owes L arrears of rent[34]), he can set off that claim against the assignee only if the claim arose before notice of the assignment, whether or not it is payable before that date.[35]

A claim by the debtor against the assignee may be the subject of a set off even though it would not have been available as a set off against the assignor.[36] There is authority that in the case of successive assignments the debtor cannot set off a claim which he had against the intermediate assignee.[37] However, this exception has been criticised and it has been suggested that a set off should be available in such circumstances where it arose after the first assignment.[38]

### 4. Amount of claim by assignee

An assignee generally cannot recover more from the debtor than the assignor could have recovered had there been no assignment.[39] But where the owner of a building sells it together with the benefit of the owner's claims

---

[32] (1881) 18 Ch.D. 300; and see *Re Jones, Christmas v Jones* [1897] 2 Ch. 190, but *cf. Re Pain* [1919] 1 Ch. 38 where *Re Knapman* was distinguished where the action was commenced after the assignment had taken place and been notified to the trustees.
[33] *Young v Kitchin* (1878) 3 Ex. D.127; *Government of Newfoundland v Newfoundland Ry* (1888) 13 App.Cas. 199; *Lawrence v Hayes* [1927] 2 K.B. 111; *Business Computers Ltd v Anglo-African Leasing Ltd* [1977] 1 W.L.R. 578 at 585; *The Raven* [1980] 2 Lloyds 266; *Muscat v Smith* [2003] EWCA Civ 962.
[34] *Watson v Mid-Wales Ry* (1867) L.R. 2 C.P. 593.
[35] *Watson v Mid-Wales Ry* (1867) L.R. 2 C.P. 593; *Christie v Taunton, Delmard, Lane & Co* [1893] 2 Ch. 175; *Re Pain* [1919] 1 Ch. 38; *Re Pinto Leite* [1929] 1 Ch. 221; *Biggerstaff v Rowatt's Wharf Ltd* [1896] 2 Ch. 93; *Business Computers Ltd v Anglo-African Leasing Ltd* [1977] 1 W.L.R. 578, 585; *Rother Iron Works Ltd v Canterbury Precision Engineering Ltd* [1974] Q.B. 1; *The Kian Captain (No.2)* [1986] 1 Lloyds 429; *Marathon Electrical v Mashregbank* [1997] 2 B.C.L.C. 460.
[36] *The Raven* [1980] 2 Lloyds 266.
[37] *The Raven* [1980] 2 Lloyds 266 at 273; *Re Milan Railways Co* (1884) 25 Ch.D. 587 at 593.
[38] Treitel, *Law of Contract* (10th ed., 1999), p.637; *Derham Set Off*, 2nd ed., p.589 *et seq.*
[39] *Dawson v Great Northern & City Ry Co* [1905] 1 K.B. 260.

It has been argued that resulting trusts arise to reverse unjust enrichment, the situations where a recipient of money is liable in a personal action in money had and received for unjust enrichment, such as mistake or coercion, are those where the payer lacks an intention to pass his beneficial interest in the money to the recipient. It is said therefore that a resulting trust should arise in those situations.[50] This argument has not yet been accepted in the decided cases.[51] Accordingly, it is not relied upon in arranging the description of trusts in this book.

### 3. Bare and special

19–11 A bare (or simple)[52] trust is one in which property is vested in one person on trust for another, the nature of the trust imposing no active duties or powers of management on the trustee. An example is where property is transferred to T "on trust for B absolutely." In such a case, T's sole duty is to B to enjoy the property and to obey any direction he may give as to how the property should be disposed of.

Many constructive trusts arising in response to a person's wrongful conduct are bare trusts. The effect of imposing a bare trust on the wrongdoer is that the claimant may compel the trustee to restore the proceeds of his wrong to the claimant.[53]

If B in turn becomes a bare trustee of his equitable interest for C, T will hold directly in trust for C:[54] whereas if B holds for C on a special trust for which the legal estate is requisite, B can call for the legal estate from T. A custodian trustee[56] is not a bare trustee, as he is not a mere name or "dummy" for the managing trustees or for the beneficiaries.[57]

A special trust, on the other hand, is one where the trust itself imposes duties of active management on the trustees, e.g. a trust for sale, or a trust for a life tenant and remainderman. The great majority of express trusts are thus "special". Such trusts may be either fixed or discretionary. In a fixed trust the settlor defines in the instrument the entitlements of the beneficiaries. In a discretionary trust, the settlor defines a range of potential objects of the trust but allows the trustee a discretion to select which of them should receive property from the trust.

---

[50] See R. Chambers, *Resulting Trusts* (1997); Millett (1998) 114 L.Q.R. 399 at 408–411.
[51] *Westdeutsche Landesbank Girozentrale v Islington LBC* [1996] A.C. 669 at 708–709 *per* Lord Browne-Wilkinson.
[52] See *Re Cunningham and Frayling* [1891] 2 Ch.567 at 572; *Tomlinson v Glyns Executor and Trustee Co* [1970] Ch.112 at 125, 126.
[53] See Ch.24.
[54] *Head v Lord Teynham* (1783) 1 Cox Eq. 57.
[55] *Angier v Stannard* (1834) 3 My. & K. 566; *Poole v Pass* (1839) 1 Beav. 600; *Onslow v Wallis* (1849) 1 Mac. & G. 506; and see *Grey v IRC* [1958] Ch.375 at 382 (in CA at 690; in HL [1960] A.C. 1) where this distinction does not appear to have been taken.
[56] Trustee Act 2000, s.17.
[57] *IRC v Silverts Ltd* [1951] Ch.521.

---

### 4. Private and public

19–12 Trusts may also be divided, according to their purpose, into private and public. A trust is private if it is for the benefit of an individual or class with standing to enforce the trustee's duties, irrespective of any benefit which may incidentally be conferred on the public at large. The only public trusts which are valid are those which are charitable, according to the legal definition of charity.[58] It must also promote the public welfare, even if incidentally it confers a benefit on an individual or class. A charitable trust is enforced by the Attorney-General or the Charity Commissioners.

### 5. Perfect and imperfect obligation

19–16 The distinction here is between a trust which is enforceable by or on behalf of a beneficiary or object, and one which has no person with standing to enforce the trustee's duties. In English law, it is taken that a trust must generally have human beneficiaries with standing to enforce the trustee's duty to account for his trusteeship.[59] Trusts which are not enforceable by a person are therefore known as trusts of imperfect obligation.[60]

In some anomalous cases, the courts have upheld testamentary trusts limited in duration to the perpetuity period[61] for the maintenance of individual animals,[62] or a tomb.[63] In all such trusts the obligations of the trustee are imperfect since there is no human beneficiary to enforce them, unless perhaps a residuary beneficiary.[64] They may not be saved by being construed as mere powers to carry out the specified purpose, subject to a resulting trust in favour of the settlor, residuary legatee or next-of-kin.[65]

Charitable trusts are not trusts of imperfect obligation as they are enforceable by the Attorney-General.[66] The same is true of those purpose trusts recognised in other jurisdictions which have a nominated enforcer with standing to enforce the trustee's duties.[67]

---

[58] *Re Diplock* [1948] Ch.465.
[59] *Morice v Bishop of Durham* (1804) 9 Ves. 399, affd. (1805) 10 Ves. 522; *Re Denley's Trust Deed* [1969] 1 Ch.373.
[60] See *Hunter v Bullock* (1872) L.R. 14 Eq. 45; *Dawson v Small* (1874) L.R. 18 Eq. 114.
[61] See *Re Clifford* (1911) 106 L.T. 14 (omitted from [1912] 1 Ch.29); *Re Wightwick's W.T.* [1950] Ch.260.
[62] *Re Dean* (1889) 41 Ch.D. 552; *Pettingall v Pettingall* (1842) 11 L.J.Ch.176.
[63] *Re Hooper* [1932] 1 Ch.38; *Mussett v Bingle* [1876] W.N. 170 (£300 to be applied in erecting monument to first husband of testator's wife held good though gift of interest of £200 to maintain it was admittedly bad); and consider *Re Conner* [1960] I.R. 67.
[64] *Re Thompson, Public Trustee v Lloyd* [1934] Ch.342.
[65] *IRC v Broadway Cottages Trust* [1955] Ch.20 at 36; *Re Endacott* above, at 246. The overruling of *IRC v Broadway Cottages Trust* by *McPhail v Doulton* [1971] A.C. 424 (below, para.20–24) does not affect this dictum: purpose trusts were not there under consideration. Careful drafting might allow the creation of a mere power which would serve the same purpose as the trust. See Matthews, above, at p.7.
[66] See below, para.21–38 *et seq.*
[67] See Underhill and Hayton, *Law of Trusts and Trustees* (16th ed) at pp.114–116.