## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| _____ ) | |
| Fluxo-Cane Overseas Ltd.,                                   ) | |
|                                                                           ) | |
|                                        Plaintiff,              ) | |
|                      v.                                              ) | |
|                                                                           )   Case No. 08-cv-356 (WDQ) | |
| E.D. & F. Man Sugar Inc., et al.,                      ) | |
|                                                                           ) | |
|                                        Defendants.         ) | |
| _____) | |

## REPLY MEMORANDUM
## TO E.D. & F. MAN SUGAR INC.'S OPPOSITION TO
## FLUXO-CANE OVERSEAS LTD.'S
## <u>MOTION FOR RECONSIDERATION AND HEARING</u>

Plaintiff Fluxo-Cane Overseas Ltd. ("Fluxo-Cane") respectfully submits this Reply to the

Opposition of E.D. & F. Man Sugar Inc. ("Man Sugar") to Fluxo-Cane's Motion for Reconsideration

and Hearing.

## ARGUMENT

### A.      *Pursuant to Rule 44.1, the determination of U.K. law is a matter of law, not of fact.*

Man Sugar does not dispute that it was required under Fed. R. Civ. P. 44.1 to give notice of its

intent to raise an issue of foreign law, and that it failed to do so.  Man Sugar also concedes that a court's

determination of foreign law is a question of law, but seemingly feigns ignorance of what that means.

Contrary to Man Sugar's argument, identification of an issue as a matter of law, rather than one

of fact, does not relate solely to appellate review.  Rule 44.1 does indeed govern the Court's adjudication

of foreign law issues, and a dispute over an issue of foreign law cannot stand in the way of summary

judgment.  As explained in WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE:

> In the past some courts had been reluctant to resolve issues of foreign law on a motion for summary judgment if there was a conflict in the papers presented on the motion or among the foreign-law experts or if any doubt existed about the tenor of the foreign law. This reluctance stemmed from the belief that questions of foreign law were questions of fact and from the provision in Rule 56 barring summary judgment if there is any genuine issue of material fact.

> Not all federal courts shared that reluctance, however, and there were cases in which these questions were decided on a summary judgment motion.

> [The authors then cite with approval the opinion by District Judge Walter Hoffman in *Caribbean S.S. Co. v. La Societe Navale Caennaise*, 140 F.Supp. 16, 20-21 (D.Va. 1956), *aff'd* 239 F.2d 689 (4th Cir. 1956), in which he held that "[a] disputed interpretation of a foreign law does not raise a material issue of fact sufficient to preclude action on a motion for summary judgment."]

> Judge Hoffman's attitude was strengthened greatly by Rule 44.1's adoption in 1966, since the rule did away with the view that foreign law is a question of fact. If the proof before the district court on a summary judgment motion is not harmonious or is unpersuasive or inconclusive, the court should request a further showing by counsel, or engage in its own research, or direct that a hearing be held, with or without oral testimony, to resolve the issue. A combination of these courses will ensure as detailed a foreign-law presentation as might be anticipated at a full trial on the merits. Once foreign law is ascertained to the judge's satisfaction, the court should proceed to decide the summary judgment motion as it would in any other context.

9 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D §

2444, at 643-49 (1995).  Similarly, in an article concerning Rule 44.1, the late Judge John R. Brown,

Chief Judge of the Fifth Circuit Court of Appeals from 1967 to 1979, wrote as follows:

> Partial summary judgment solely on the issue of the content of the foreign law is an appropriate method for decision of the foreign law issue when the controlling facts are uncontradicted or have been stipulated.  This conclusion seems obvious in light of Rule 44.1's mandate that such a determination "shall be treated as a ruling on a question of law." Thus, even differences of opinion on the content, applicability or interpretation of the foreign provision may not be characterized as a "genuine issue as to any material fact" under Rule 56.

John R. Brown, '*44.1 Ways to Prove Foreign Law*,' 9 *Mar. Law.* 179, 195 (1984).  The conclusions set

forth by Judge Brown and Wright and Miller are beyond dispute.  *See, e.g.*, *Henry v. S/S Bermuda Star*,

863 F.2d 1225, 1229 n. 11 (5th Cir. 1989) (because the interpretation of foreign law is a question of law,

not fact, matters involving such interpretations may be resolved by summary judgment); *Compania Sud*

*Americana De Vapores, S.A. v. I.T.O. Corp. of Baltimore*, 940 F. Supp. 855, 860-61 (D. Md. 1996) (in

light of Rule 44.1, plaintiff's "motion for summary judgment will not be denied on the basis of any

alleged deficiencies in its presentation of [foreign] law").[1]

Thus, we respectfully submit that this Court's earlier conclusion that the effect of the assignment

claimed by Man Sugar under U.K. law was a dispute of fact should be reconsidered in light of Fed. R.

Civ. P. 44.1.

**B.**    ***The assignment was not a completed transfer of interest under U.K. law.***

In its Motion for Reconsideration and Hearing, Fluxo-Cane pointed out that the alleged

"assignment" could not have been a "completed transfer of interest" under U.K. law, even assuming for

the sake of argument that the assignment was valid.  Man Sugar does not dispute that conclusion;

indeed, the authorities cited by Man Sugar confirm the point.  *See Snell's Equity*, § 3.20(b) (in the event

of an equitable assignment of a partial debt, "the original creditor still owns the chose in law, holding it

in trust for the assignee"); *Central Ins. v. Seacalf Shipping Corp. (the Ailos)*, [1983] 2 LLR 25, 33 (Ct.

---

[1] S*ee also Republic of Ecuador v. ChevronTexaco Corp.*, 499 F. Supp.2d 452, 454 (S.D.N.Y. 2007) (foreign law is a question of law, not fact, which means that it may be determined at the summary judgment stage of litigation) (citing Louise Ellen Teitz, *The Use of Evidence in Admiralty Proceedings*, 34. *J. Mar. L. & Com.* 97, 104 (Jan. 2003) (discussing the Federal Rules of Civil Procedure and methods of proof of foreign law)), *aff'd*, 296 Fed. Appx. 124, 2008 WL 4507422 (2d Cir. Oct. 7, 2008); *United States v. BCCI Holdings (Lux.), S.A*., 977 F. Supp. 1, 6 (D.D.C. 1997) ("Any difference of opinion that the parties or their experts may have regarding the interpretation of a provision of foreign law does not create a genuine issue of material fact."); *Matter of Arbitration Between Trans Chemical Ltd. and China Nat. Machinery Import and Export Corp.*, 978 F. Supp. 266, 274-75 (S.D. Tex. 1997), *aff'd*, 161 F.3d 314 (5th Cir. 1998) ("Differences of opinion among experts on the content, applicability, or interpretation of foreign law do not create a genuine issue as to any material fact under Rule 56.").

App.) ("That there is a long-standing practice that, before giving judgment in an action at the suit of an equitable assignee, the Court will normally require him to bring his assignor before the Court is beyond doubt.").

In a transparent attempt to confuse the issue, Man Sugar instead misrepresents Fluxo-Cane's argument.[2]   In its Memorandum in Support of the Motion, Fluxo-Cane did not challenge the general validity of equitable assignments under U.K. law.  Fluxo-Cane instead showed what Man Sugar has now confirmed — that the "equitable assignment" claimed by Man Sugar *cannot* divest the assignor of all right, control and interest in the property assigned, as required to render the allegedly assigned partial debt "mutual" under New York law.  *See Mem. in Support* [Dkt. # 53-2] at 4.  Man Sugar does not challenge that point, because it cannot.

Similarly, Man Sugar cannot, and does not, challenge the "basic propositions" set forth in the case of *Deposit Protection Board and Another v. Barclay's Bank Plc*. [1994] 2 AC 367 (House of Lords and Court of Appeals) cited by Fluxo-Cane.[3]   Rather, Man Sugar merely complains that Fluxo-Cane omitted a single (and immaterial) proposition– that a debtor cannot deal inconsistently with an assignee after notice of an assignment.  Of course, that point is not at issue here, and is therefore not relevant.

What is notable is that Man Sugar acknowledges that under U.K. law, the assignor of an equitable assignment of a partial debt must be joined to any claim brought by the assignee based on that assignment.  Man Sugar relies heavily on *Central Ins. v. Seacalf Shipping Corp. (the Ailos)*, [1983] 2

---

[2] Man Sugar also asserts that this Court allowed Fluxo-Cane to file a Sur-Reply, but of course the Court did not so permit. Fluxo-Cane therefore had no opportunity to present a full briefing of U.K. law in response to the issues raised by Man Sugar in its Reply on its Motion for Summary Judgment.

[3] With regard to the accuracy of Fluxo-Cane's representations regarding U.K. law, we respectfully call this Court's attention to the authoritative statement of U.K. law governing equitable assignments of partial debts provided by the Right Honorable Sir Simon Tuckey, attached to Fluxo-Cane's pending Motion to Dismiss [Dkt. No. 59-4].  Unlike Mr. Swangard, Sir Simon Tuckey is a not an advocate for either party.  He is a long-standing Queen's Counsel, and a former Lord Justice of the Court of Appeal for England and Wales.

LLR 25 (Ct. App.) in its discussion of equitable assignments. *Central Ins*. concerned a subrogration claim by an insurer who had paid the claims of its insureds and then asserted a claim based on subrogation of their cause of action, but failed to join them in the action. Under U.K. law, the subrogee is required to join the subrogors with whom the cause of action originated and who equitably assigned the cause of action to the subrogee. The issue presented in *Central Ins*. was whether the subrogee had stated a valid claim at the outset of the action, and therefore would be able to amend the claim to join the subrogors, or whether the claim was void *ab initio*, in which case the limitation period would have run.

However, the timing of the assignee's claim that was the central issue in *Central Ins*. has not been raised in this matter. Thus, the only point from that case that may be relevant here is that the U.K. court, in accordance with U.K. law, required the plaintiff to join the subrogors/assignors to the claim. *Id*. at 34. Man Sugar has not done so here.

### C.    *Man Sugar conceded that the assignment would create a trust.*

Man Sugar continues to attempt to equivocate about its concession that the alleged assignment creates a trust relationship. Its U.K. solicitor Michael Swangard complains that Fluxo-Cane has made inaccurate statements concerning MCA and Man Sugar's position as to whether the alleged assignment created a trust, and Man Sugar's Opposition complains that Fluxo-Cane raised the issue too concisely and without authority. However, the fact is that Swangard has admitted that the assignment, if valid, creates a trust.

According to Swangard, "MCA has described the assignment as a 'declaration of trust' because, under English law, (a) this was necessarily an 'equitable assignment,' (b) MCA retained the 'legal chose' as bare trustee to bring the English Action, and (c) a 'bare legal trust' was therefore given to Man." *Swangard Decl*. [Dkt. # 41-2] at ¶ 11. He then attempts to minimize the import of the foregoing

sentence by asserting that "[t]hese factors do not establish a trustee or agency relationship between assignor or assignee, but rather reflect English-law procedural requirements due to the fact MCA assigned to Man only part of Fluxo-Cane's debt under the Customer Agreement." *Id.*

However, the authority that Swangard cites, *Snell's Equity*, confirms that an equitable assignment, as MCA identifies its alleged assignment, does in fact create a trust. It states

> When the chose is merely equitable and the whole interest in it has been vested in the assignee, equity has always permitted him to sue in his own name without joining the original creditor. . . .
>
> (b) *Some interest outstanding*. The rule is otherwise if the assignment leaves some interest outstanding. This occurs where there is an equitable assignment of part of the chose, or an equitable assignment of a legal chose, for in the latter case, even if the whole chose is assigned, the original creditor still owns the chose in law, ***holding it in trust for the assignee***.

*Snell's Equity*, § 3.20(a)-(b) (emphasis added).

Because Fluxo-Cane was merely noting Man Sugar's admission that a trust relationship had been created, there was little need to cite to additional authority. To the extent that some authority is required, such authority is cited herein. Despite Man Sugar's repeated obfuscation, if one assumes that the assignment was valid, it would necessarily have given rise to a trust relationship, as set out by the authorities to which Man Sugar itself refers.

### D.      The claim of MCA against Fluxo-Cane is not liquidated.

The Court's Memorandum Opinion did not explain the basis of its conclusion that MCA's claim was liquidated, and we respectfully submit that the decision should be reconsidered. As noted in the Memorandum in Support of the Motion, reconsideration is appropriate when, among other things, it is necessary to correct a clear error of law or prevent manifest injustice. *See, e.g., Johns Hopkins Univ. v.*

*Datascope Corp.*, 513 F. Supp. 2d 578, 585 (D. Md. 2007) (citing to *Bogart v. Chapell*, 396 F.3d 548, 555 (4th Cir. 2005)).

A claim cannot be deemed "liquidated" if it requires the court to resolve the underlying dispute and adjudicate the claim.  For this Court to allow Man Sugar to setoff its claim against its debt to Fluxo-Cane, it must necessarily find that Fluxo-Cane owes the setoff amount to MCA.  That very issue is being adjudicated in the U.K. action.

As plainly shown by the pleadings from that action, which have been submitted to this Court by both parties (and which are a part of the summary judgment record here), Fluxo-Cane's obligations to MCA, *if any*, will depend upon judicial determinations of whether MCA was entitled under its Customer Agreement to liquidate Fluxo-Cane's accounts under the circumstances present on January 17, 2008, whether MCA breached its agreement of January 17, 2008 to refrain from action to liquidate the accounts pending further exploration of alternatives (as the U.K. Court has already held), whether each of the numerous individual transactions made by MCA in the course of its liquidation were proper, and if not, the extent to which MCA is itself responsible for the shortfall that its precipitous action caused.  As a consequence, the claim cannot be a liquidated one.  MCA's blithe calculation of what it seeks from Fluxo-Cane is not a substitute for a liquidated right to collect it.

In the venerable case of *Hough v. Kugler*, 36 Md. 186 (Md. 1872), the Court of Appeals of Maryland held that although the plaintiff had set forth a claim purporting to show a precise calculation of amounts owed, in fact the contract was "not of that fixed or definite kind which may be recovered by attachment.  It is in its nature a claim for unliquidated damages, where the contract furnishes no measure or standard for their computation, and the true amount of which cannot be verified by affidavit."  *Id.* at 194; *see also McGinn v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 1985 U.S. Dist. LEXIS 18861 (D.

Minn. June 17, 1985) (a claim could not be liquidated where jury had to consider each and every transaction related to the claim).

MCA's claim against Fluxo-Cane, and the corresponding counter-claim of Fluxo-Cane, have been pending in the U.K. Court for over a year now, and they still pend the adjudication of MCA's conduct, including an analysis of the propriety of hundreds of individual transactions. Such a situation is the epitome of an unliquidated claim. Accordingly, we respectfully submit that the assumption that the claim was a liquidated one should be reconsidered in the interests of justice.

### E. The Conversion claim should be reconsidered.

Man Sugar is unable to offer any rebuttal to the law cited by Fluxo-Cane showing that Fluxo-Cane had the right to repossess the cargo of sugar upon Man Sugar's failure to make the payment it had promised to make. As a result, Man Sugar is reduced to merely complaining that the applicable law is "irrelevant." Of course, the law applicable to a claim cannot be irrelevant.

The question before the Court is whether Fluxo-Cane had a superior right of possession as against Man Sugar, who had defaulted on its obligation to pay for the sugar on delivery. The earlier Memorandum Opinion distinguished the maritime law cited by Fluxo-Cane to conclude that once Man Sugar had taken possession of the cargo, Fluxo-Cane lost any right to recover it. However, the Court did not consider the import of the Uniform Commercial Code provisions noted in the Memorandum in Support of the Motion. Under that law, Fluxo-Cane had a superior right to re-possession of the cargo as a consequence of Man Sugar's failure to pay for it. *See* NY CLS UCC § 2-507(2); NY CLS UCC § 2-702(3)(c). Under maritime law, Man Sugar's actions in violation of Fluxo-Cane's superior right to possession constitute the maritime tort of conversion.

**F.**     ***The continued withholding of payment on Man Sugar's acknowledged debt constitutes a manifest injustice.***

Finally, Man Sugar has no substantive response to Fluxo-Cane's statement of the manifest injustice it has suffered.  Instead, Man Sugar attempts to minimize the meaning of the U.K. Court's finding that it had formed an agreement not to take precipitous action to liquidate Fluxo-Cane's accounts on January 17, 2008, no doubt because MCA and Man Sugar have admitted to taking unilateral action in disregard of such agreement.

Fluxo-Cane's point is straightforward.  As noted by this Court, "[t]he right of set-off... allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A.  Set-off is appropriate only when the debts between parties are liquid and mutual."  *Mem. Op.* [Dkt. # 50] at 9 (citing to *Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138 (2d Cir. 2002)).

Here, Man Sugar has grossly abused the principles of setoff, delaying payment owed to Fluxo-Cane for over 15 months to date, on the basis of an uncertain and specious claim asserted on behalf of its affiliate MCA.  That is plainly unjust, and we respectfully urge this Court to remedy that injustice.

## CONCLUSION

We respectfully request that this Court reconsider its earlier ruling, order such hearings as may be necessary to satisfy itself with regard to the U.K. law governing the alleged assignment, and grant Fluxo-Cane summary judgment.

Dated:  April 21, 2009

Respectfully submitted,


By: /s/ _____
H. Allen Black, III (No. 024542)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, DC  20006
hblack@winston.com
(202) 282-5821
*Counsel for Fluxo-Cane Overseas, Ltd.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true copy of the foregoing Motion for Reconsideration and Hearing were served on this 21st day of April, 2009, on Robert A. Gaumont of DLA Piper, counsel of record for Defendant, by the Court's Electronic Filing System.


_____/s/_____
H. Allen Black III