IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| Fluxo-Cane Overseas Ltd., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | Case No. 08-cv-356 (WDQ) |
| E.D. & F. Man Sugar Inc., et al., ) | |
| ) | |
| Defendants. ) | |

**FLUXO-CANE OVERSEAS LTD.'S REPLY MEMORANDUM
IN SUPPORT OF ITS MOTION TO DISMISS
E.D. & F. MAN SUGAR INC.'S AFFIRMATIVE DEFENSES
OF SETOFF AND RECOUPMENT**

Plaintiff Fluxo-Cane Overseas Ltd. ("Fluxo-Cane") respectfully submits this Reply to the Opposition of E.D. & F. Man Sugar Inc. ("Man Sugar") to Fluxo-Cane's Motion to Dismiss E.D. & F. Man Sugar, Inc.'s Affirmative Defenses of Setoff and Recoupment.

The central issue presented by the Motion and Man Sugar's Opposition is whether Man Commodity Advisors Limited ("MCA") can assert its claim against Fluxo-Cane through its surrogate Man Sugar, where it is unable to do so directly due to a lack of subject matter jurisdiction. For the reasons discussed below, MCA cannot avoid this Court's jurisdictional limitations by such means.

**ARGUMENT**

**A.    *Man Sugar concedes that its affirmative defenses of setoff and recoupment were improperly pled.***

Man Sugar does not dispute that its affirmative defenses of setoff and recoupment actually state a claim of setoff, and not recoupment. *Man Opp. Mem.* [Dkt. # 61] at 1-2, 4-6. Man Sugar also does not dispute that its claim of setoff is a permissive counterclaim. *Id.* Finally, Man Sugar does not deny that its permissive counterclaim of setoff was not properly pled. *Id.*

**B.    *Dismissal of Man Sugar's claim is necessary under Rule 8(a) due to a failure to plead necessary elements and jurisdiction, not due to mislabeling.***

Man Sugar echoes Fluxo-Cane's point that under Fed. R. Civ. P. 8(c)(2), a court may treat a counterclaim mistakenly designated as an affirmative defense as though it had been correctly designated. However, Man Sugar ignores the consequence of that Rule – that regardless whether a counterclaim is pled correctly or misidentified as an affirmative defense, it must still satisfy the pleading requirements of Rule 8(a). *See, e.g., White v. Potocska*, 589 F. Supp. 2d 631, 641 (E.D. Va. 2008) (counterclaim dismissed because counter-claimants failed to properly plead claim).

Man Sugar's counterclaim of setoff must be dismissed, not because it was mislabeled, but rather (among other reasons) because it has not satisfied the most basic requirements of pleading a claim. Under Fed. R. Civ. P. 8(a), to properly maintain its counterclaim, Man Sugar is required to plead: (1) grounds for the court's jurisdiction over the counterclaim; (2) a short and plain statement of the claim showing that it is entitled to relief; and (3) a demand for relief. Man Sugar has not done so.

Man Sugar's reference to *Reiter v. Cooper*, 507 U.S. 258, 263 (1993), adds nothing; that case merely noted Rule 8(c)'s authorization for a court to overlook the mislabeling of a counterclaim, a point

not in dispute.[1]  Here, Man Sugar seeks to assert setoff as an affirmative defense, but has not pled any of the necessary predicates needed to assert that claim, and has not joined the party, MCA, that Man Sugar acknowledges to be the legal owner of that claim.  Accordingly, the counterclaim of setoff must be dismissed.

### C. *Man Sugar does not dispute the applicable standard or procedure for evaluating the Motion to Dismiss under Rule 19.*

Man Sugar does not dispute that *National Union Fire Ins. Co. v. Rite ex rel. S.C.*, 210 F.3d 246, 249 (4th Cir. 1999), sets out the proper procedure to evaluate the Motion to Dismiss.  *Man Sugar's Opp'n.* [Dkt. # 61] at 6.

### D. *MCA is the legal owner of the claim asserted by Man Sugar.*

In Sections B(1) and B(2) of its Opposition, Man Sugar tries to conflate the procedural requirements of Rule 19 with the applicable underlying substantive U.K. law in an effort to paint the U.K. law as "procedural" and therefore inapplicable.  However, Man Sugar does not dispute Sir Simon Tuckey's expert opinion that the assignor of an equitable assignment of a partial debt remains the legal owner of the whole of the debt, and cites no source whatsoever to support its claim that the U.K. law governing the equitable assignment of a partial debt is "procedural."  *See Man Sugar's Opp'n* [Dkt. # 61] at 6-7.

Moreover, Man Sugar has admitted that MCA is the legal owner of the claim being asserted by Man Sugar, and that Man Sugar claims only an equitable interest in the claim.  *Man Sugar Mem. in Reply re. Sum. Jud.* [Dkt. # 41] at 10.  As detailed in Fluxo-Cane's motion to dismiss and in Sir Simon Tuckey's Expert Opinion, under the governing U.K. law, MCA, as the legal owner of the chose in

---

[1] In *Reiter*, the Supreme Court addressed the question of whether a statutory cause of action supporting recoupment could be plead as a defense.  507 U.S. at 263.

action, is a necessary and indispensable party to any claim based on the alleged partial equitable assignment made by the alleged equitable assignee, Man Sugar. *Tuckey Op*. [Dkt. # 59-4] at ¶¶ 6, 11. *See also Deposit Protection Board and Another v. Barclays Bank Plc*, [1994] 2 AC 367 (House of Lords and Court of Appeal).

This Court itself noted in its Memorandum Opinion on the cross-motions for summary judgment that U.K. law is the proper substantive law regarding the validity and extent of the alleged equitable assignment. *See Mem. Op.* [Dkt. # 50] at p. 11.

Rather than acknowledge the indisputable law noted by this Court and Sir Simon Tuckey, Man Sugar instead erroneously refers to Wright & Miller and *Provident Tradesmens Bank & Trust Company v. Patterson*, 390 U.S. 102 (1968) to suggest that this Court may disregard the U.K. law governing equitable assignments. *See Man Sugar's Opp'n.* [Dkt. # 61] at 7.[2] However, Wright & Miller expressly note that "if state substantive law indicates that plaintiff does not have a particular right of action unless certain persons are joined, then a federal court properly may decide under Rule 19 that plaintiff should not proceed alone in a federal diversity action." Wright & Miller, 7 Fed. Prac. & Proc. Civ.3d § 1603 (2009).

The example offered by Wright and Miller is on point with the facts in this matter. Here, U.K. law provides that an equitable assignee of a partial debt may not maintain a cause of action based upon the equitable assignment unless it joins the assignor, who remains the legal owner of the claimed debt. *Tuckey Op*. [Dkt. # 59-4] at ¶ 6. Thus, this Court "may decide under Rule 19 that [the counterclaimant] should not proceed alone" in this diversity action.

---

[2] Man Sugar's brief erroneously cited to "**5** Wright & Miller § 1603" when it should have cited "**7** Wright & Miller § 1603."

Man Sugar also misrepresents *Provident Tradesman*. Contrary to Man Sugar's argument, the case did not hold that analysis under Rule 19 was merely procedural. Rather, the case held that "Rule 19 does not prevent the assertion of compelling substantive interests; it merely commands the courts to examine each controversy to make certain that the interests really exist." 390 U.S. at 119.

In any event, Man Sugar's suggestion that the U.K. law governing equitable assignments (which it first raised in this matter) is irrelevant as an "English procedural rule" is a red herring. Whether under the substantive U.K. law regarding the rights of parties in the chose in action of an equitable assignment of a partial debt, or under the procedural U.S. law regarding the requirement to join the real party in interest under Rule 17, and to join an indispensable party or dismiss the claim under Rule 19, the result is the same – MCA must be joined to this action for Man Sugar to pursue its claim based on the alleged equitable assignment of an alleged partial debt.

### E.     *Man Sugar does not dispute that MCA is a real party in interest under Rule 17.*

As explained in the Memorandum in Support of the Motion, MCA is a real party in interest under Fed. R. Civ. P. 17(a)(1) with regard to the claim being asserted as a setoff by Man Sugar. *Mem. in Support* [Dkt. # 59-2] at 10. Man Sugar does not dispute that fact. *Man Sugar's Opp'n.* [Dkt. # 61].

Rule 17(a)(1) requires that "[a]n action must be prosecuted in the name of the real party in interest"; Man Sugar therefore cannot dispute that Rule 17 requires that MCA be a party to the counterclaim.

Although a court's finding that a "real party in interest" has not been joined to the case does not allow immediate dismissal under Rule 17, such a finding can show that a party is an indispensable party under Rule 19. *Johnson v. Price*, 191 F.Supp.2d 626, 630 (D. Md. 2001). If the real party in interest cannot be joined, dismissal of the claim must follow. Fed. R. Civ. P. 17(a)(3), 19(b)(2).

### F.     *Man Sugar is a necessary party under Rule 19(a).*

Rule 19 is intended to provide for the joinder of:

> those persons in whose absence the court would be obliged to grant partial or "hollow" rather than complete relief to the parties before the court.  The interests that are being furthered are not only those of the parties, but also that of the public in avoiding repeated lawsuits on the same essential subject matter.

Advisory Committee Notes to Fed. R. Civ. P. 19 ("The Amended Rule").  As the Advisory Committee Notes comment, "the court can make a legally binding adjudication <u>only</u> between the parties actually joined in the action."  *Id*. ("1966 Amendment, General Considerations") (emphasis added).

Man Sugar's counsel argues that there is no threat of a double judgment against Fluxo-Cane because MCA has represented in the pending U.K. case that it will credit Fluxo-Cane with the amount of any setoff obtained by Man Sugar in this action.  *See Man Sugar's Opp'n* [Dkt. # 61] at 2 n.1, 7-8.  However, that argument is both legally meaningless and misapprehends the purpose of Rule 19.

The notion of a "credit" does nothing to resolve the underlying fact of MCA's legal ownership of, and interest in, the counterclaim being asserted by Man Sugar.  Under U.K. law, MCA would still be the legal owner of the claim, and under U.S. law, MCA would remain the real party in interest with regard to the counterclaim.  MCA retains a direct interest in the counterclaim, because under the terms of the alleged equitable assignment on which Man Sugar relies, any setoff allowed by this court (less a small commission) is to be paid over to MCA.  *MCA-Man Sugar Assignment* [Dkt. # 39-14] at ¶ 2.

Man Sugar does not dispute that MCA cannot bring its counterclaim directly against Fluxo-Cane in this Court because this Court would lack subject matter jurisdiction to hear the matter.  *Man Sugar's Opp'n.* [Dkt. # 59-2] at 12.  What MCA cannot do directly, it cannot do indirectly – Man Sugar and MCA cannot avoid the requirements of subject matter jurisdiction and Rules 17 and 19 by the second-

hand representation of a promise to give "credit," or any similar device. *See Johnson*, 191 F.Supp.2d at 630.

In *Johnson*, a co-holder of a claim against the defendant waived her claim and refused to join as plaintiff. *Id.* at 630. The court held that when a party is found to be a real party in interest, the real issue is whether the party can be joined to the action, declaring "[t]his Court may not allow [the real party in interest] to determine, merely by choosing whether or not to execute a waiver, whether the Court has diversity jurisdiction." *Id.* The court went on to note that "[g]iving effect to this waiver would be tantamount to allowing the parties to manufacture jurisdiction, which courts have long forbidden." *Id.* at 630-31. *See also Bankston v. Burch*, 27 F.3d 164, 168 (5th Cir. 1994) ("The inquiry into the existence of complete diversity requires considering the citizenship even of absent indispensable parties. The parties may not manufacture diversity jurisdiction by failing to join a non-diverse indispensable party."); *State Sec. Ins. Co. v. Frank B. Hall & Co.*, 109 F.R.D. 99, 103 (N.D. Ill. 1986) (where a real party in interest has not been joined to the action, and the plaintiff cannot sue for the whole claim on its own, the court must dismiss the claim for lack of subject matter jurisdiction); 13B Charles A. Wright, Arthur R. Miller, Federal Practice & Procedure § 3606 (2d ed. 1984) (same); *cf. Rawoof v. Texor Petroleum Co., Inc.*, 521 F.3d 750, 760 (7th Cir. 2008) (affirming district court's holding that a party could not use a belated ratification argument to make an end-run around federal rules requiring a real party in interest to be a party to the case).

Notably, Man Sugar does not even tender any formal contract or ratification, but merely offers counsel's representation of an "undertaking" by MCA in pleadings for a case pending in a foreign

court.[3] Even if MCA had tendered a formal undertaking, this Court would not have jurisdiction to enforce it, since MCA is not a party to this action.

Man Sugar also argues that Rule 19 is inapplicable because MCA is not claiming an "interest" in this action. *Man Sugar's Opp'n.* [Dkt. 61] at 8. That assertion is flatly contradicted by its own earlier admissions regarding the nature of the alleged equitable assignment, in which it argued that under the alleged equitable assignment, "MCA retained the 'legal chose' to bring the legal action … Should this Court enforce Man's set-off right, then MCA's claim in the English action would necessarily be reduced by the amount set-off." *Man Sugar Mem. in Reply re. Sum. Jud.* [Dkt. # 41] at 10.[4]

### G. MCA is an indispensable party under Rule 19(b).

Section B(2) of Man Sugar's Opposition merely rehashes the arguments from Section B(1). The only case cited by Man Sugar to argue against dismissal is plainly distinguishable. In *Rosengarten v. Buckley*, the Court denied dismissal after finding that the party was not indispensable, precisely because the party did not retain any ownership interest in the property that was the subject of the dispute. 565

---

[3] Even if a party could somehow dispense with jurisdictional prerequisites, Man Sugar's representations of what its affiliate may do provides no comfort to Fluxo-Cane, since MCA broke an agreement regarding the sale of commodities futures at issue in the U.K. case, and Man Sugar broke an agreement prior to taking possession of the sugar that it would pay for the sugar.

[4] Man Sugar also seems to suggest that MCA need not be joined because MCA has not affirmatively attempted to seek relief in this case. Such an argument is premised on a false and circular interpretation of Rule 19(a)(1)(B). The purpose of the Rule is to **compel** joinder of parties who have **not** willingly entered the litigation. The fact that MCA has not willingly tried to assert its rights through this case does not mean that it does not "claim[] an interest relating to the subject of the action." Fed. R. Civ. P. 19(a)(1)(B). Indeed, if the Rule required as much, it would be rendered meaningless. To the contrary, because MCA retains the ownership of the legal chose of the alleged debt at issue under well-established U.K. law, it falls within Rule 19(a)(1)(B). *See Sykes v. Hengel et al.*, 220 F.R.D. 593, 596 (S.D. Iowa 2004) (in determining if a party claims an "interest" under Fed. R. Civ. P. 19(a), court must consider "whether the presence of a party 'is essential to the litigants' complete relief' or if a party 'must be present to protect its own or another party's interests.'") (quoting *De Wit v. Firstar Corp.*, 879 F. Supp. 947, 991 (N.D. Iowa 1995)); *Int'l Union of Op. Engineers, Local 103 v. Irmscher & Sons, Inc.*, 63 F.R.D. 394, 398 (N.D. Ind. 1973) ("The determination of whether the absentee claims an interest in the subject matter and whether his ability to protect that interest will be impeded or whether the existing parties will face multiple litigation in his absence is determined in the context of the dispute which forms the basis of the case…. The court, under Rule 19(a)(2), focuses on the practical consequences to the parties of non-joinder rather than on the legal or res judicata effect.") (citing *Haas v. Jefferson Nat'l Bank of Miami Beach*, 442 F.2d 394, 398 (5th Cir. 1971); *Window Glass Cutters League of America, AFL/CIO v. American St. Gobain Corp.*, 428 F.2d 353 (3d Cir. 1970)).

F.Supp. 193, 199 (D. Md. 1983). By contrast, under the applicable law, and as conceded by Man Sugar, MCA is the legal owner of the chose in action of the claim that Man Sugar seeks to assert, while Man Sugar merely asserts an equitable interest in the claim.

Man Sugar cites 7 Wright & Miller, Federal Practice & Procedure § 1609 to argue that dismissal for nonjoinder should be granted sparingly, but misses the more significant point of that section. The treatise explains that "when an initial appraisal of the facts reveals the possibility that an unjoined party whose joinder is required under Rule 19 exists, the burden devolves on the party [who opposes joinder] to negate this conclusion and a failure to meet that burden will result in the joinder of the party or dismissal of the action." 7 Wright & Miller, Federal Practice & Procedure § 1609. Because MCA is the legal owner of the claim that Man Sugar seeks to assert, if MCA cannot be joined, the claim must be dismissed.

Finally, Man Sugar argues that the Court can avoid any prejudice to Fluxo-Cane by fashioning relief that is conditioned upon an "undertaking" by MCA and Man Sugar to forego recovery in the U.K. action of any sum set off in this case. A fundamental flaw in that Sugar's suggestion is that this Court would have no ability to enforce any such conditions against MCA–a non-party, non-citizen over which it has no jurisdiction–with regard to a proceeding in a foreign court. Moreover, such "conditions" would do nothing to relieve Fluxo of the burden of defending itself against MCA's claims in both this forum and the U.K. Court, including not only the expense of duplicative litigation, but also the risks of inconsistent obligations and potential double-recovery. Thus, Man Sugar's proposed conditions are at best illusory.

### H. This Court may not exercise supplemental jurisdiction over Man Sugar's permissive counterclaim of setoff.

Man Sugar does not dispute that the joinder of MCA would destroy this Court's diversity jurisdiction, as noted by Fluxo-Cane. *Compare Fluxo-Cane's Mem.* [Dkt. 59-2] at 12; *Man Sugar's Opp'n.* [Dkt. 61] at 10. Instead, Man Sugar erroneously invokes 28 U.S.C. § 1367 as an alternate basis for this Court's possible subject matter jurisdiction over a setoff counterclaim brought jointly by Man Sugar and MCA, given that diversity jurisdiction would be destroyed by MCA's presence. Man Sugar focuses exclusively on § 1367(b) but fails to acknowledge that supplemental jurisdiction is inapplicable under § 1367(a) and this District's precedents.

Under § 1367(a), the Court has supplemental jurisdiction over only "claims that are so related … that they form part of the same case or controversy." 28 U.S.C. § 1367(a). As Judge Motz recently explained:

> In cases such as this one, where neither diversity nor federal question jurisdiction exists over defendant's counterclaims, the counterclaims' status as "compulsory" or "permissive" determines whether the court has jurisdiction over them. A compulsory counterclaim arises out of the transaction or occurrence that is the subject matter of the opposing party's claim, while a permissive counterclaim does not. Accordingly, a compulsory counterclaim is within the ancillary jurisdiction of the court to entertain and no independent basis of federal jurisdiction is required. <u>By contrast, a permissive counterclaim that lacks its own independent jurisdictional basis is not within the jurisdiction of the court.</u>

*Williams v. Long*, 558 F. Supp. 2d 601, 602-03 (D. Md. 2008) (emphasis added) (citing *Painter v. Harvey*, 863 F.2d 329, 331 (4th Cir. 1988) and Fed. R. Civ. P. 13(a)-(b), internal quotes omitted). The court went on to explain that when a counterclaim is permissive, as opposed to compulsory, then supplemental jurisdiction is, by definition, inapplicable.

> This result follows from the Fourth Circuit's reasonable conclusion that Fed. R. Civ. P. 13's requirement that the claim and counterclaim "arise[] out of the [same] transaction or occurrence" is equivalent to 28 U.S.C. § 1367(a)'s requirement that the claim and

10

counterclaim be "so related . . . that they form part of the same case or controversy under Article III of the United States Constitution." In other words, if a court determines that a counterclaim that lacks an independent jurisdictional basis did not arise from the same transaction as the original federal claim (and thus is not compulsory), it is also concluding that the claim and counterclaim did not "derive from a common nucleus of operative fact" (and thus that the court lacks supplemental jurisdiction over the counterclaim).

*Id. at* 603 n.1 (citing *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164-65 (1997)).

As noted above, Man Sugar does not, and indeed cannot, dispute that its claim of setoff is a permissive counterclaim, utterly unrelated to the sugar sale transaction at issue in the complaint. Accordingly, this Court cannot exercise supplemental jurisdiction over Man Sugar's permissive counterclaim of setoff.[5]

### I.    *This Court may not exercise maritime jurisdiction over Man Sugar's permissive counterclaim of setoff.*

Man Sugar's last-ditch suggestion of admiralty jurisdiction is equally specious. The counterclaim of setoff arises from the MCA-Fluxo-Cane Customer Agreement, relating to futures trading brokerage services. The suggestion that MCA's claim under its Customer Agreement is a

---

[5] Even if Man Sugar's counterclaim of setoff were "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy," as required by § 1367(a), supplemental jurisdiction would still be precluded by § 1367(b). Although that section deals expressly with the assertion of supplemental jurisdiction by plaintiffs, courts have held that its principles apply equally to a party seeking to join an action as a defendant for the purpose of asserting a claim against a non-diverse plaintiff when the would-be defendant cannot be held liable on the claims pled in the plaintiff's complaint. *Siteworks Contr. Corp. v. W. Sur. Co.*, 461 F. Supp. 2d 205, 211 (S.D.N.Y. 2006) (citing 16 Moore's Federal Practice, § 106.46). *Siteworks* noted that:

> Allowing a party to identify itself as a defendant, when it cannot be held liable on the claims pled in a plaintiff's complaint, and to permit it to maintain a cause of action against a non-diverse party for the sole purpose of seeking monetary relief when it would otherwise be prohibited from bringing the suit in federal court in the first instance because it could not meet the diversity requirement in § 1332(a), is just as troubling as the situation in *Owen Equipment* [437 U.S. 365 (1978)], the precursor to Congress' enactment of § 1367(b).

*Id*. Because the counterclaim of setoff is a permissive counterclaim, MCA's joinder is not involuntary. MCA would be joining this case solely for the purpose of asserting a cause of action for monetary relief (to wit, its claim under the Customer Agreement) against a non-diverse plaintiff; MCA has no connection to the sugar sale transaction raised by the complaint, and its interests were not put at issue by the original action. Accordingly, this Court would be barred from asserting jurisdiction over the counterclaim of setoff by § 1367(b) as well as § 1367(a).

maritime one is obviously absurd; but for the sake of good order, we note that the Supreme Court has clarified the scope of maritime contract jurisdiction, stating that "the boundaries of admiralty jurisdiction over contracts—as opposed to torts or crimes—[are] conceptual rather than spatial." *Norfolk Southern Ry. v. James N. Kirby, Pty Ltd.*, 543 U.S. 14, 23 (2004). The court went on to rule that "the fundamental interest giving rise to maritime jurisdiction is the protection of maritime commerce. The conceptual approach vindicates that interest by focusing our inquiry on whether the principal objective of a contract is maritime commerce." *Id.* at 25. Plainly, the principal objective of the Customer Agreement was the provision of brokerage services for futures trading, not maritime commerce. The counterclaim of setoff therefore does not come within this Court's maritime jurisdiction.

### J. Rule 19 addresses counterclaims as well as actions.

Incredibly, Man Sugar argues that if a defendant has failed to join an indispensable party to a permissive counterclaim, the Court's only alternative is to dismiss the entire action, including, in this instance, Fluxo-Cane's underlying breach of contract claim against Man Sugar. Of course, Rule 19(b) does not permit a defendant to obtain dismissal of a complaint by failing to join a non-diverse necessary party to a permissive counterclaim. Because this Court has jurisdiction to hear Fluxo-Cane's complaint against Man Sugar, the complaint need not be dismissed. In this case, only the permissive counterclaim over which this Court lacks jurisdiction must be dismissed.

Numerous courts have recognized that Rule 19(b) authorizes the dismissal of a counterclaim when the counterclaim requires the joinder of an indispensable party that cannot be joined. *See, e.g., Zurn Industries, Inc. v. Acton Constr. Co.*, 847 F.2d 234, 237 (5th Cir. 1988) ("usually, the absence of federal jurisdiction over the permissive counterclaim or party brought in under Rule 19 or 20 will result only in the dismissal of that claim or party"); (*Maritimes & Northeast Pipeline, L.L.C. v. 16.66 Acres of*

*Land*, 190 F.R.D. 15, 21 (D. Me. 1999) (permissive counterclaims dismissed for failure to join indispensable parties); *Stafford Trading, Inc. v. Lovely*, 2007 U.S. Dist. LEXIS 37140 (N.D. Ill. May 21, 2007) (counterclaims dismissed for failure to join indispensable parties, subject to amendment of counterclaim); *Church & Dwight Co. v. Abbott Labs.*, 2006 U.S. Dist. LEXIS 76464 (D.N.J. Oct. 18, 2006) (counterclaim dismissed for failure to join indispensable party under Rule 19); *Electro Med. Equip. Ltd. v. Hamilton Med. AG,* 2000 U.S. Dist. LEXIS 3830 (E.D. Pa. Mar. 28, 2000) (noting that a court may dismiss a counterclaim if unable to join a necessary party, pursuant to Rule 19(b)).

The complaint in this matter is a simple one—Man Sugar failed to pay for a cargo of sugar, then failed to return the cargo upon demand that it do so. None of the facts relevant to the complaint are in dispute. However, to adjudicate the permissive counterclaim would embroil this Court in a complex dispute over the interpretation of a futures brokerage agreement under U.K. law while the very same matters are being litigated in a case initiated by MCA and Man Sugar in a U.K. Court, the choice of forum set forth in the Customer Agreement in dispute. *MCA Particulars of Claim,* [Dkt. # 39-5]; *MCA Customer Agreement* [Dkt. # 39-5] at § 26.2. Dismissal of the permissive counterclaim here is particularly appropriate under these circumstances.

### K.     *The Motion is not untimely.*

As Man Sugar recognizes, a motion to dismiss for failure to join an indispensable party may be raised at any time, and thus cannot be untimely. *Man Sugar's Opp'n.* [Dkt. # 61] at 11. Wright & Miller notes that "the absence of an indispensable party is considered to be so significant a defect that most courts have indicated that it may be raised for the first time subsequent to the trial or on appeal." 7 Wright & Miller, Federal Practice & Procedure § 1609.

Oddly, Man Sugar refers only to *Barr-Rubber Prods. Co. v. Sun Rubber Co.*, 425 F.2d 1114, 1126-27 (2d Cir. 1970), to suggest otherwise. In that case, the Second Circuit merely upheld the trial court's exercise of discretion to decline permissive joinder of parties under Rule 20, "Permissive Joinder of Parties." *Id*. at 1126 ("The motion to join the B. F. Goodrich Company and the McNeil Corporation was made pursuant to Rule 20").

More to the point, the delay in raising this issue has not been undue. This Court's Memorandum Opinion on the Cross-Motions for Summary Judgment concluded that the validity of the equitable assignment claimed by Man Sugar was to be determined by reference to U.K. law. *Mem. Op*. [Dkt. # 50] at 11. Upon reviewing the applicable law, Fluxo-Cane was led to the inescapable conclusion, as set forth in the Memorandum in Support of the Motion and the accompanying Expert Opinion of Sir Simon Tuckey, that MCA was in fact the legal owner of the claim being asserted by Man Sugar, and was therefore a necessary party to any action to enforce that claim, in whole or in part. See *Mem. in Support* [Dkt. # 59-2] and *Tuckey Expert Op*. [Dkt. # 59-4]. In any event, Man Sugar has not incurred any prejudice from the timing of the Motion, and alleges none.

## CONCLUSION

Man Sugar does not dispute that its claim of setoff is a permissive counterclaim, and does not dispute that MCA is the legal owner of that claim. Under the U.K. law that governs the substantive claim and the interests of Man Sugar and MCA in it, MCA must be a party to any action to enforce the partial claim brought by its alleged equitable assignee. Under Rule 17, MCA is a real party in interest, and under Rule 19, MCA is an indispensable party, without whom the claim cannot proceed, but whose joinder cannot be accomplished. Accordingly, this Court may, and should, dismiss Man Sugar's claim of setoff and recoupment. Such dismissal would not prejudice Man Sugar, since it has brought the same

claim in an action it (and MCA) initiated in the U.K.  On the other hand, a denial of this motion would subject Fluxo-Cane to duplicative litigation, and the risks of inconsistent decisions and double judgments.

For all of the reasons noted above and in the Memorandum in Support of the Motion, we respectfully request that this Court dismiss Man Sugar's affirmative defenses of setoff and recoupment, and grant such further relief as the interest of justice require.

>Respectfully submitted,
>
>By: /s/
>H. Allen Black, III (No. 024542)
>WINSTON & STRAWN LLP
>1700 K Street, N.W.
>Washington, DC  20006
>hblack@winston.com
>(202) 282-5821
>*Counsel for Fluxo-Cane Overseas, Ltd.*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing Motion for Reconsideration and Hearing were served on this 4th day of May, 2009, on Robert A. Gaumont of DLA Piper, counsel of record for Defendant, by the Court's Electronic Filing System.

/s/
H. Allen Black III